UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD TIM **BOYCE**, individually and on behalf of all others similarly situated, | : | Civil Action No. 04cv2587 (Consolidated) |
| Plaintiff, | : | Judge Keith P. Ellison |
| vs. | : | |
| **A I M  MANAGEMENT GROUP, INC.**, et al., | : | |
| Defendants. | : | |

## MOTION TO DISMISS AND MEMORANDUM OF LAW

POLLACK & KAMINSKY
114 West 47th Street, Suite 1900
New York, New York 10036
Tel.  (212) 575-4700

MAYER, BROWN, ROWE & MAW LLP
700 Louisiana, Suite 3600
Houston, Texas 77002
Tel.  (713) 547-9634

GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.  (713) 751-5268

*Attorneys for Defendants A I M Management Group Inc., INVESCO Funds Group Inc., A I M Advisors, Inc., A I M Distributors, Inc., INVESCO Distributors, Inc., Robert H. Graham and Mark H. Williamson*

- and -

NICKENS KEETON LAWLESS FARRELL & FLACK LLP
600 Travis, Suite 7500
Houston, Texas 77002
Tel.  (713) 571-9191

*Attorneys for Defendants Frank S. Bayley, Bruce L. Crockett, Albert R. Dowden, Edward K. Dunn, Jack M. Fields, Carl Frischling, Prema Mathai-Davis, Lewis Pennock, Ruth H. Quigley, Louis Sklar, Fred Deering, Victor Andrews, Bob Baker, Lawrence Budner, James Bunch, Gerald Lewis, John McIntyre and Larry Soll*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................ i-v

PRELIMINARY STATEMENT .................................................... 1

THE SECOND CONSOLIDATED AMENDED COMPLAINT .......................... 1

POINT I --

    THE §§ 34(b), 36(a) OR 48(a) CLAIMS (COUNTS I, II AND IV)
MUST BE DISMISSED SINCE THERE IS NO EXPRESS OR IMPLIED
PRIVATE RIGHT OF ACTION UNDER ANY OF THOSE SECTIONS ....... 3

        A.  the Supreme Court test of an implied private right of action .......... 3

        B.  as to § 34(b) ........................................................... 4

        C.  as to § 36(a) ........................................................... 5

        D.  as to § 48(a) ........................................................... 6

POINT II –

    THE §§ 34(b), 36(a), 48(a) AND STATE LAW CLAIMS
(COUNTS I, II AND IV-VIII) ARE ALL DERIVATIVE IN NATURE,
AND, SINCE PLAINTIFFS HAVE FAILED TO SATISFY THE
DEMAND RULE, THE CLAIMS MUST BE DISMISSED ......................... 6

        A. the derivative nature of all claims ........................................ 6

        B. the demand rule ........................................................ 10

POINT III –

    THE § 36(b) CLAIM (COUNT III) IS DERIVATIVE, NOT INDIVIDUAL,
AND CANNOT BE THE BASIS OF A CLASS ACTION ........................... 14

POINT IV –

    THE STATE LAW CLAIMS (COUNTS VI-VIII) MUST BE
    DISMISSED UNDER PRINCIPLES OF SUPPLEMENTAL
    JURISDICTION AND PREEMPTION ................................................. 16

        A.  the Court should decline to exercise supplemental
            jurisdiction ................................................................. 16

        B.  in any event, the state law claims are preempted by SLUSA ........... 16

POINT V –

    IN ANY AND ALL EVENTS, PLAINTIFFS LACK STANDING
    TO SUE ON BEHALF OF ANY FUNDS IN WHICH THEY DO
    NOT OWN SHARES ................................................................. 18

CONCLUSION ......................................................................... 20

## TABLE OF AUTHORITIES

### CASES

Alexander v. Sandoval, 532 U.S. 275 (2001)..........................................................................3, 4, 5

In re Alger, Columbia, Janus, MFS, One Group, and Putnam Mutual Fund Litig.,
    320 F. Supp. 2d 352 (D.Md. 2004) ...............................................................................17, 18

Andreae v. Andreae, 1992 Del. Ch. LEXIS 44 (Del. Ch. Mar. 3, revised Mar. 5, 1992) ............13

Aronson v. Lewis, 473 A.2d 805 (Del. 1984) ...............................................................11, 13, 14

Atkins v. Tony Lama Co., Inc., 624 F. Supp. 250 (S.D.Ind. 1985) ...........................................12

In re Baxter Int'l, Inc. Shareholders Litig., 654 A.2d 1268 (Del.Ch. 1995)................................13

Beam v. Stewart, 845 A.2d 1040 (Del. 2004) ...................................................................11

Beneville v. York, 769 A.2d 80 (Del.Ch. 2000) .........................................................10

Burks v. Lasker, 441 U.S. 471 (1979)...........................................................................15

Chamberlain v. Aberdeen Asset Mgmt., 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005).................5

Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25 (2d Cir. 2005),
    cert. granted, ___ U.S. ___ (2005) .......................................................................18

Dacey v. Morgan Stanley Dean Witter & Co., 263 F. Supp. 2d 706 (S.D.N.Y. 2003)................17

Daily Income Fund v. Fox, 464 U.S. 523 (1984).....................................................................11

In re Davis Selected Mut. Funds Litig., 2005 U.S. Dist. LEXIS 23203
    (S.D.N.Y. Oct. 11, 2005)....................................................................1, 4, 5, 7, 11

Dorchester Investors v. Peak Int'l Ltd., 134 F. Supp. 2d 569 (S.D.N.Y. 2001) .............................4

Dudek v. Prudential Secs., Inc., 295 F.3d 875 (8th Cir. 2002) ....................................................17

Dull v. Arch, 2005 U.S. Dist. LEXIS 14988 (N.D.Ill. July 27, 2005) .........................................5

In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222 (S.D.N.Y. 2005) ............. passim

In re Eaton Vance Mut. Funds Fee Litig., 2005 U.S. Dist. LEXIS 32094
    (Dec. 6, 2005)...............................................................................................1, 15

<u>Engstrom</u> v. <u>First Nat'l Bank of Eagle Lake</u>, 47 F.3d 1459 (5th Cir.), cert. den.,
516 U.S. 818 (1995) .................................................................................. 16

<u>In re Enron Corp. Sec. Derivative & ERISA Litig.</u>, 284 F. Supp. 2d 511 (S.D.Tex. 2003) ........ 18

<u>Exxon Mobil Corp.</u> v. <u>Allapattah Services, Inc.</u>, _____ U.S. _____, 162 L. Ed. 2d 502 (2005) ....... 3

<u>In re Franklin Mut. Funds Fee Litig.</u>, 388 F. Supp. 2d 451 (D.N.J.
2005) .......................................................................... 1, 4, 5, 6, 7, 11, 14, 15

<u>G.F. Thomas Investments, L.P.</u> v. <u>Cleco Corp.</u>, 317 F. Supp. 2d 673 (W.D.La. 2004),
aff'd, 123 Fed. Appx. 155 (5th Cir. 2005) ................................................ 16

<u>Geer</u> v. <u>Cox</u>, 242 F. Supp. 2d 1009 (D.Kan. 2003) ............................................ 12

<u>Gollust</u> v. <u>Mendell</u>, 501 U.S. 115 (1991) ..................................................... 19

<u>Gonzaga Univ.</u> v. <u>Doe</u>, 536 U.S. 273 (2002) ............................................... 3, 4, 5

<u>Goodwin</u> v. <u>Live Entertainment, Inc.</u>, 1999 Del. Ch. LEXIS 5 (Del. Ch. Jan. 22, 1999),
aff'd, 741 A.2d 16 (Del. 1999) .................................................................. 14

<u>Green</u> v. <u>Ameritrade, Inc.</u>, 279 F.3d 590 (8th Cir. 2002) ....................................... 17

<u>Green</u> v. <u>Phillips</u>, 1996 Del. Ch. LEXIS 76 (Del.Ch. June 19, 1996) ............................. 14

<u>Grobow</u> v. <u>Perot</u>, 526 A.2d 914 (Del.Ch. 1987), aff'd, 539 A.2d 180 (Del. 1988) ................... 14

<u>Grossman</u> v. <u>Johnson</u>, 89 F.R.D. 656 (D.Mass. 1981), aff'd, 674 F.2d 115 (1st Cir.),
cert. den., 459 U.S. 838 (1982) ................................................................ 12

<u>Hamilton</u> v. <u>Allen</u>, 2005 U.S. Dist. LEXIS 23838 (E.D.Pa. Oct. 14, 2005) ...................... 5

<u>Hogan</u> v. <u>Baker</u>, 2005 U.S. Dist. LEXIS 16888 (N.D. Tex. Aug. 12, 2005) ..................... 7, 11

<u>In re ING Principal Prot. Funds Deriv. Litig.</u>, 369 F. Supp. 2d 163 (D.Mass. 2005) ................. 12

<u>In re J.P. Morgan Chase & Co. Shareholder Litig.</u>, 2005 Del. Ch. LEXIS 51 (Del.Ch.
Apr. 29, 2005) .................................................................................... 7

<u>Kamen</u> v. <u>Kemper Fin. Services</u>, 500 U.S. 90 (1991) ........................................ 6, 10

<u>In re Kauffman Mutual Fund Actions</u>, 479 F.2d 257 (1st Cir.), cert. den., 414 U.S.
857 (1973) ....................................................................................... 10

Kauffman v. Dreyfus Fund, 434 F.2d 727 (3rd Cir. 1970), cert. den., 401 U.S. 974 (1971) ........................................................................................................... 18, 19

Kaufman v. Safeguard Scientifics, Inc., 587 F. Supp. 486 (E.D.Pa. 1984) ................................ 12

Kircher v. Putnam Funds Trust, 403 F.3d 478 (7th Cir. 2005) ..................................................... 17

Kramer v. Western Pac. Indus., Inc., 546 A.2d 348 (Del. 1988) .................................................. 18

Krantz v. Fidelity Mgmt. & Research Co., 98 F. Supp. 2d 150 (D.Mass. 2000) ......................... 14

Krantz v. Prudential Investments Fund Mgmt., 305 F.3d 140 (3d Cir. 2002), cert. den., 537 U.S. 1113 (2003) ......................................................................................... 13

Lewis v. Anderson, 477 A.2d 1040 (Del. 1984) .......................................................................... 18

Lewis v. Casey, 518 U.S. 343 (1996) ........................................................................................... 19

In re Lord Abbett Mut. Funds Fee Litig., 385 F. Supp. 2d 471 (D.N.J. 2005) ................................................................................................................ 1, 4, 5, 15, 17

Massachusetts v. Mylan Labs, Inc., 357 F. Supp. 2d 314 (D.Mass. 2005) .................................... 5

In re Mastercard Int'l, Inc., 2003 U.S. Dist. LEXIS 13534 (E.D.La. July 30, 2005) ..................... 5

In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243 (S.D.N.Y. 2003) ................................................................................................................ 3, 4

Mieuli v. DeBartolo, 2001 WL 777447 (N.D.Cal. Jan. 16, 2001) ............................................... 13

Migdal v. Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001) ......................................... 12, 14

Miller v. Nationwide Life Ins. Co., 391 F.3d 698 (5th Cir. 2004) ......................................... 17, 18

Northern Nat. Gas Co. v. Munns, 254 F. Supp. 2d 1103 (S.D. Iowa 2003), aff'd, 377 F.3d 817 (8th Cir. 2004) .................................................................................................. 5

In re Nuveen Fund Litig., 1996 U.S. Dist. LEXIS 8071 (N.D. Ill. June 11, 1996) ........................ 4

Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429 (2d Cir. 2002) ..................... 4, 5, 15

Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580 (5th Cir. 1992) ..................... 16

Prager v. Knight/Trimark Group, Inc., 124 F. Supp. 2d 230 (D.N.J. 2000) ............................... 18

Prof'l Mgmt. Assocs. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800 (8th Cir. 2003), cert. den., 540 U.S. 1162 (2004)...................................................18

Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294 (3d Cir. 2005) ...............................17, 18

Smith v. Waste Management Inc., 407 F.3d 381 (5th Cir. 2005) ...........................................7, 10

Spector v. Sidhu, 2004 U.S. Dist. LEXIS 876 (N.D.Tex. Jan. 26, 2004) .....................................13

Spiegel v. Buntrock, 571 A.2d 767 (Del. 1990)........................................................................11

Stegall v. Ladner, 2005 U.S. Dist. LEXIS 24453 (D.Mass. Oct. 14, 2005)........................4, 5, 18

Summit Properties, Inc. v. Hoechst-Celanese Corp., 125 F. Supp. 2d 205 (S.D.Tex. 1999)...................................................................................................................................16

TWU Local 555 v. Southwest Airlines Co., 2002 U.S. Dist. LEXIS 18619 (N.D.Tex. Oct. 1, 2002) ...............................................................................................................5

Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004) ...................................6

In re UJB Fin. Corp. Shareholder Litig., 1991 U.S. Dist. LEXIS 20710 (D.N.J. Jan. 22, 1991), aff'd in part and rev'd in part o.g., 964 F.2d 272 (3d Cir.), cert. den., 506 U.S. 934 (1992) ...............................................................................11, 14

In re Van Wagoner Funds, Inc. Sec. Litig., 2004 U.S. Dist. LEXIS 24868 (N.D. Cal. July 27, 2004) ................................................................................................................4

Verkouteren v. Blackrock Fin. Mgmt., 37 F. Supp. 2d 256 (S.D.N.Y. 1999), aff'd, 208 F.3d 204 (2d Cir. 2000) ...............................................................................13, 14

White v. Heartland High Yield Mun. Bond Fund, 237 F. Supp. 2d 982 (E.D. Wis. 2002) ...........4

Williams v. Bank One Corp., 2003 WL 22964376 (N.D.Ill. Dec. 15, 2003)........................18, 19

## STATUTES

15 U.S.C. § 77p ......................................................................................................................16

15 U.S.C. §78bb(f) .............................................................................................................16, 17

15 U.S.C. § 80a-2(a)(19) ..........................................................................................................12

15 U.S.C. § 80a-35 ........................................................................................................... *passim*

28 U.S.C. § 1367(c)(3) ...................................................................................................16

Del. Statutory Trusts Act, 12 Del. C. § 3801 (h) .......................................................12

Fed. R. Civ. P. 23.1 ......................................................................................................10

## MISCELLANEOUS

SEC Release No. IC-26356, 2004 SEC LEXIS 418 (Feb. 24, 2004).........................................2, 9

SEC Release No. IC-26591, 2004 SEC LEX1S 2027 (Sept. 2, 2004) .........................................9

## PRELIMINARY STATEMENT

In September 2005, plaintiffs, after defendants had moved to dismiss the Consolidated Amended Complaint, withdrew the Consolidated Amended Complaint because of the Decision in In re Eaton Vance Mut. Funds Fee Litig.,[1] which dismissed, with prejudice, a complaint asserting the same claims, by the same plaintiffs' law firm (Milberg Weiss). Since that time, several other federal judges have dismissed complaints alleging the same type of wrongdoing, i.e. the alleged misuse of mutual fund assets to induce brokers to sell Fund shares. Further, the Court in Eaton Vance (on reargument) has now adhered to its earlier decision.[2]

Plaintiffs' Second Consolidated Amended Complaint (hereinafter "the Complaint") repeats the same claims, with the same allegations rejected by those courts, but now seeks to "stay alive" by alleging that the advisory and distribution fees paid by the Funds were "excessive".[3] All of the claims in the Complaint are legally insufficient.

## THE SECOND CONSOLIDATED AMENDED COMPLAINT

Plaintiffs allege that they are currently shareholders of nine mutual funds in the AIM mutual fund complex (Cplt. ¶¶ 20, 21, 23, 25, 38 and 42).[4] But, plaintiffs purport to sue on behalf of a putative class of thousands of shareholders of Funds in which they do not own shares

---

[1] 380 F.Supp.2d 222 (S.D.N.Y. 2005). See also: 2005 U.S. Dist. LEXIS 32094 (Dec. 6, 2005) (adhering to prior order on motion for reconsideration and denying motion for leave to file amended complaint).

[2] In re Franklin Mut. Funds Fee Litig., 388 F.Supp.2d 451 (D.N.J. 2005); In re Davis Selected Mut. Funds Litig., 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. Oct. 11, 2005), motion for reconsideration denied (Nov. 16, 2005); In re Lord Abbett Mut. Funds Fee Litig., 385 F.Supp.2d 471 (D.N.J. 2005).

[3] All parties, and (we believe) the Court, understood that advisory fee claims were going to be litigated in Berdat and directed brokerage claims were going to be litigated in Boyce. This separation will avoid duplicative litigation.

[4] Those Funds are: AIM Basic Value Fund, AIM Balanced Fund, AIM Constellation Fund, AIM European Growth Fund (formerly INVESCO European Fund), AIM Weingarten Fund, AIM Premier Equity Fund, AIM Large Cap Growth Fund, AIM Capital Development Fund, and INVESCO Technology Fund (now AIM Technology Fund) (Cplt. ¶¶ 20, 21, 23, 25, 38 and 42).

(i.e. 94 separate AIM Funds) (Exhibit A to Cplt.). Defendants are the investment advisers, distributors, and trustees of the AIM Funds and A I M Management Group Inc. ("AMG"), the parent company of A I M Advisors (Cplt. ¶¶ 48 through 65).

Plaintiffs contend that defendants made improper and excessive payments to brokers out of assets of the AIM Funds in order to induce the brokers to aggressively push the AIM Funds over other mutual funds, a practice referred to by plaintiffs as making "shelf space arrangements" (Cplt. ¶¶ 66 et seq.). The Fund assets referred to by plaintiffs were brokerage commissions on securities transactions in the Funds' portfolios (referred to as "directed brokerage"),[5] and distribution fees paid pursuant to SEC Rule 12b-1 for selling Fund shares and servicing the accounts of the shareholders.[6]

Plaintiffs contend (as they did in Eaton Vance and the other cited cases) that these practices violate §§ 34(b), 36(a), 36(b) and 48(a) of the Investment Company Act ("the ICA"), §§ 206 and 215 of the Investment Advisers Act (the "IAA") and duties under state law. Plaintiffs also contend that their claims under ICA §§ 34(b), 36(a), 36(b) and 48(a) and state law are individual claims, which can be asserted as class claims. However, those claims are derivative claims, not individual claims; accordingly, they cannot be class claims, and should be dismissed.

---

[5] These are the same allegations that were made in Eaton Vance. For example, in summarizing the claims, the Court there explained (380 F.Supp.2d at 226):

> The plaintiffs allege that the defendants used improper means to acquire "shelf‑space" at brokerage firms. The plaintiffs allege that Eaton Vance used the assets of its mutual fund investors to pay excessive commissions to brokers to induce the brokers to market aggressively Eaton Vance mutual funds to new investors.

[6] Plaintiffs also purport to challenge so-called "revenue-sharing arrangements" (see, e.g. Cplt. ¶¶ 3, 68, 117). Those, however, involve payments by investment advisers or principal underwriters themselves, out of their own assets, not payments by the mutual funds. The SEC has recognized that such revenue sharing arrangements are permissible and legal. See SEC Release No. IC-26356, 2004 SEC LEXIS 418 at **5, 21 and 28-30 (February 24, 2004).

**POINT I --**
## THE §§ 34(b), 36(a) AND 48(a) CLAIMS (COUNTS I, II AND IV) MUST BE DISMISSED SINCE THERE IS NO EXPRESS OR IMPLIED <u>PRIVATE RIGHT OF ACTION UNDER ANY OF THOSE SECTIONS</u>

Plaintiffs incorrectly contend that implied private rights of action exist under ICA §§ 34(b), 36(a) and 48(a).

**A.   <u>the Supreme Court test of an implied private right of action</u>**

In the past five years, the Supreme Court has radically altered the test for an implied private right of action.  In the landmark case of <u>Alexander</u> v. <u>Sandoval</u>, 532 U.S. 275, 286-89 (2001), the Supreme Court held that there is no implied private right of action for damages under a statute <u>unless</u> the text and structure of the statute contain clear and unambiguous evidence that Congress intended that one exist.  Specifically, a private right of action will be implied only if the text of the statute says that a specifically identified person or group of persons is <u>both</u> to be benefited <u>and</u> <u>also</u> to have a right and remedy under the statute, as opposed to the statute's merely prohibiting conduct or directing governmental action to redress it. 536 U.S. at 289. <u>Accord</u>:  <u>Gonzaga Univ.</u> v. <u>Doe</u>, 536 U.S. 273, 283-86 (2002).  <u>See also</u>:  <u>Exxon Mobil Corp.</u> v. <u>Allapattah Services, Inc.</u>, ____ U.S. ____, 162 L. Ed. 2d 502, 526 (2005); <u>In re Merrill Lynch & Co. Research Reports Sec. Litig.</u>, 272 F.Supp.2d 243, 256-58 (S.D.N.Y. 2003) ("the Supreme Court has unambiguously 'retreated from [its] previous willingness to imply a cause of action where Congress has not provided one'").

Where (as here) the language of the statute is clear (and does <u>not</u> contain the requisite "rights-creating language"), the text is dispositive that there is no private right of action. <u>Sandoval</u>, 532 U.S. at 286-87, 288 n.7 (the court's inquiry "begins with the text and structure of the statute ... and ends once it has become clear that Congress did not provide a cause of action").

3

**B.**   **as to § 34(b)**

Since Sandoval and Gonzaga, the Courts have uniformly concluded that there is no such

right under ICA § 34(b), since §34(b) does not contain "rights-creating" language.  As explained

in Eaton Vance, 380 F.Supp.2d at 232:

> The absence of rights-creating language, the existence of an
> alternative method of enforcement [through the SEC], and the
> existence of an explicit private right of action for another provision
> of the statute [i.e. § 36(b)] creates the strong presumption that
> Congress did not intend to create private rights of action under §§
> 34(b), 36(a), or 48(a).

Accord:  Franklin, 388 F.Supp.2d at 465-67; Davis, 2005 U.S. Dist. LEXIS 23203 at *9; Lord

Abbett, 385 F.Supp.2d at 486-87; Stegall v. Ladner, 2005 U.S. Dist. LEXIS 24453 (D.Mass. Oct.

14, 2005); Merrill Lynch, 272 F.Supp.2d at 257-59; In re Van Wagoner Funds, Inc. Sec. Litig.,

2004 U.S. Dist. LEXIS 24868 at **38-40 (N.D. Cal. July 27, 2004); White v. Heartland High

Yield Mun. Bond Fund, 237 F.Supp.2d 982, 987 (E.D. Wis. 2002); Dorchester Investors v. Peak

Int'l Ltd., 134 F.Supp.2d 569, 581 (S.D.N.Y. 2001).[7]

Further, support for that conclusion is found, as those courts have noted, by the inclusion

of an express private right of action in § 36(b), since that shows that when Congress wished to

provide a private right of action in the ICA, it knew how to do so, and did so expressly.  Eaton

Vance, 380 F.Supp.2d at 231-32; Merrill Lynch, 272 F. Supp. 2d at 256-57.  Accord:  Sandoval,

532 U.S. at 290 ("[t]he express provision of one method of enforcing a substantive rule suggests

that Congress intended to preclude others."); Olmsted v. Pruco Life Ins. Co. of New Jersey, 283

F.3d 429, 433-34 (2d Cir. 2002).

---

[7] Courts have also rejected and criticized the pre-Sandoval opinion, In re Nuveen Fund Litig., 1996 U.S. Dist.
LEXIS 8071 at *25 (N.D. Ill. June 11, 1996), which had implied a right of action under § 34(b).  See White, 237
F.Supp.2d at 986; Dorchester Investors, 134 F.Supp. 2d at 581.

**C. as to § 36(a)**

The courts addressing § 36(a) after <u>Sandoval</u> and <u>Gonzaga</u> have also held that there is no implied private right of action under § 36(a). <u>Eaton Vance</u>, 380 F.Supp.2d at 231-33; <u>Franklin</u>, 388 F.Supp.2d at 465-67; <u>Davis</u>, 2005 U.S. Dist. LEXIS 23203 at *9; <u>Lord Abbett</u>, 385 F.Supp.2d at 487-88; <u>Stegall</u>, 2005 U.S. Dist. LEXIS 24453 at **25-38; <u>Hamilton</u> v. <u>Allen</u>, 2005 U.S. Dist. LEXIS 23838 at **18-26 (E.D.Pa. Oct. 14, 2005); <u>Dull</u> v. <u>Arch</u>, 2005 U.S. Dist. LEXIS 14988 at **7-8 (N.D.Ill. July 27, 2005); <u>Chamberlain</u> v. <u>Aberdeen Asset Mgmt.</u>, 2005 WL 195520 at **2-4 (E.D.N.Y. Jan. 21, 2005) (vacated pursuant to settlement).

The text of § 36(a) does not contain the requisite benefits or rights-creating language. Rather, § 36(a) authorizes only <u>governmental</u> action by the SEC, stating that "[t]he <u>Commission</u> is authorized to bring an action...." (emphasis supplied). Thus, § 36(a) does not authorize a private action. <u>Eaton Vance</u>, 380 F.Supp.2d at 232.[8] Indeed, by providing for enforcement of § 36(a) by the SEC, not private parties, the statute itself shows that a private right of action is <u>not</u> intended. <u>Id</u>. Accord: <u>Sandoval</u>, 532 U.S. at 290; <u>Olmsted</u>, 283 F.3d at 435; <u>In re Mastercard Int'l, Inc.</u>, 2003 U.S. Dist. LEXIS 13534 at **12-13 (E.D.La. July 30, 2005); <u>TWU Local 555</u> v. <u>Southwest Airlines Co.</u>, 2002 U.S. Dist. LEXIS 18619 at **6-9 (N.D.Tex. Oct. 1, 2002).[9]

---

[8] Section 36(a)'s sole mention of "investors" authorizes the Court to give "due regard to the protection of investors" in formulating relief in actions by the SEC, but does not create an implied right of action. <u>Gonzaga</u>, 536 U.S. at 283-84 ("it is <u>rights</u>, not the broader or vaguer 'benefits' or 'interests', that may be enforced. . . ."); <u>Massachusetts</u> v. <u>Mylan Labs, Inc.</u>, 357 F.Supp.2d 314, 325-26 (D.Mass. 2005) (same); <u>Northern Nat. Gas Co.</u> v. <u>Munns</u>, 254 F.Supp.2d 1103, 1118 (S.D. Iowa 2003), aff'd, 377 F.3d 817 (8th Cir. 2004) ("'the question is not simply who would benefit from [a federal statute], but whether Congress intended to confer federal rights upon those beneficiaries'").

[9] The pre-<u>Sandoval</u> opinions which had allowed private actions under § 36(a) are no longer good law, since, as recognized in <u>Eaton Vance</u>, 380 F.Supp.2d at 233, those decisions did not apply the <u>Sandoval/Gonzaga</u> test (i.e. the requirement for "rights-creating" language). Rather, those decisions are premised on other factors that are no longer proper bases for an implied right of action.

**D.  as to § 48(a)**

For the same reasons discussed above as to §§ 34(b) and 36(a), there is also no private right of action to be implied under § 48(a). Eaton Vance, 380 F.Supp.2d at 231-33.[10]

**POINT II --**
**THE §§ 34(b), 36(a), 48(a) AND THE STATE LAW CLAIMS**
**(COUNTS I, II AND IV-VIII) ARE ALL DERIVATIVE IN NATURE,**
**AND SINCE PLAINTIFFS HAVE FAILED TO SATISFY THE**
**DEMAND RULE, THE CLAIMS MUST BE DISMISSED[11]**

**A.  the derivative nature of all claims**

Plaintiffs' claims (if legally cognizable) are derivative claims, not individual claims. This is so because the allegations of wrongdoing in the Complaint allege injury to the AIM Funds and seek recovery for the AIM Funds of moneys paid by the AIM Funds (see Addenda hereto and allegations of the misuse of Fund assets in Cplt. paras. 67, 91, 108, 128, 145, etc.).[12]

Under Delaware law, which controls here,[13] a claim asserting the misuse of a mutual fund's assets is a claim for the fund itself. A shareholder has no individual claim for such a harm done to the fund (e.g. to recover moneys improperly taken out of the fund), but rather can assert such a claim (if at all) only as a derivative claim. As explained in Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004):

> The analysis must be based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder

---

[10] Liability under § 48(a) is predicated upon a violation of another ICA section. Here, since the asserted bases for primary liability (i.e. §§ 34(b), 36(a) and 36(b)) should be dismissed, the § 48(a) claim must also be dismissed. Franklin, 388 F.Supp.2d at 469. In addition, allowing control person liability as to § 36(b) would impermissibly nullify § 36(b)(3)'s express limitation of liability to the recipients of the payments at issue.

[11] The § 36(b) claim is also derivative, but demand is not required and that claim is further dealt with in Point III.

[12] The issue here concerns plaintiffs' ICA and state law claims. Plaintiffs acknowledge that their claim under IAA § 206 is derivative; we agree.

[13] The law of the Funds' state of incorporation determines whether a claim is direct or derivative. Kamen v. Kemper Fin. Services, 500 U.S. 90, 97-99 (1991). The Funds in this case are all Delaware funds.

6

> individually—and who would receive the benefit of the recovery or
> other remedy.

and (at 1039):

> The proper analysis has been and should remain that ... a court
> should look to the nature of the wrong and to whom the relief should
> go. The stockholder's claimed direct injury must be independent of
> any alleged injury to the corporation. The stockholder must
> demonstrate that the duty breached was owed to the stockholder and
> that he or she can prevail without showing an injury to the
> corporation.

Accord: Smith v. Waste Management Inc., 407 F.3d 381, 384 (5th Cir. 2005) (Del. law); Hogan

v. Baker, 2005 U.S. Dist. LEXIS 16888 at **6-15 (N.D. Tex. Aug. 12, 2005) (claims by

shareholders of AIM Funds, including Funds in this action, must be derivative under Delaware

law where they seek recovery of Fund assets and where the only injury to an investor is the

indirect harm which results from the diminution in the value of his or her shares); In re J.P.

Morgan Chase & Co. Shareholder Litig., 2005 Del. Ch. LEXIS 51 at **19-24 (Del.Ch. Apr. 29,

2005).

Courts have held that claims by shareholders based on the allegedly improper use of

fund assets (fees and commissions) for "shelf-arrangements" are derivative, not individual.

Franklin, 388 F.Supp.2d at 463-64; Davis, 2005 U.S. Dist. LEXIS 23203 at **15-16 ("claims

arising from improper fees paid by the funds ... must be brought derivatively ...").

The Complaint itself confirms that any injury which allegedly resulted from the alleged

wrongdoing was suffered directly by the Funds since the contested commissions, fees, etc. were

paid by the Funds out of the Funds' assets. Other documents filed with the SEC and referred to

in the Complaint further establish that this is the case.

1. *as to advisory fees* — In their prayer for relief (item D at p. 101), plaintiffs request the

"recovery of all fees paid to the Investment Adviser Defendants" on behalf of the Funds. The

Statements of Additional Information ("SAI") for the Funds in which plaintiffs owned or own shares (referenced in Cplt. ¶¶ 161 and 166) make clear that the Funds, not the shareholders, paid those fees.  For example, the SAI states (see Addendum A[14] hereto):

> Pursuant to its advisory agreement with the Trust, AIM receives a monthly fee from each Fund calculated at the following annual rates, based on the average daily net assets of each Fund during the year.  (emphasis added)

and (at App. E thereof):

> For the last three fiscal years ended October 31, the management fees payable by each Fund, the amounts waived by AIM [Advisors, Inc.] and the net fees paid by each Fund were....  (emphasis supplied)

The financial statements for the Funds (which are contained in the SAIs) also list "advisory fees" as an expense of the Fund in its Statement of Operation. and state (in a Note entitled "Advisory Fees and Other Transactions with Affiliates"):  "... the Fund pays an advisory fee to AIM at the annual rate of ...." (emphasis supplied) (Addendum A hereto).  The Funds' prospectuses also state that such fees are paid "from fund assets" (see Addendum B[15] hereto); and they contain a chart explicitly showing that information (Id.).  This point, i.e. that the Funds pay the fees, not the shareholders, is also obvious from the investment advisory agreements which are a matter of public record as exhibits to the Funds' registration statements filed with the SEC.

   2. *as to distribution fees* — Pursuant to shareholder-approved plans and agreements adopted under SEC Rule 12b-1, funds pay fees for the sale of fund shares and shareholder services ("12b-1 fees").  As the SEC explained, "Rule 12b-1 permits funds to use their assets to pay distribution-related costs" and "'12b-1' fees are fees paid out of fund assets..." (emphasis

---

[14] Addendum A is the SAI of the AIM Constellation Fund.  The SAI of each of the other Funds contain the same statements with no material differences.

[15] Addendum B is the prospectus of the AIM Constellation Fund.  The prospectus of each of the other Funds contain the same statements with no material differences.

supplied).   SEC Release No. IC-26356, 2004 SEC LEXIS 418 at *7 (Feb. 24, 2004); SEC

Release No. IC-26591, 2004 SEC LEXIS 2027 at **29 and 5 (Sept. 2, 2004).

The SAI for the AIM Funds also states that the 12b-1 fees are paid from Fund assets (<u>see</u>

Addendum A hereto):

> The Trust has adopted distribution plans pursuant to Rule 12b-1
> under the 1940 Act . . . (collectively the "Plans").   <u>Each Fund</u>,
> pursuant to the Plans, <u>pays AIM Distributors compensation</u> at the
> annual rate, shown immediately below, of the Fund's average daily
> net assets of the applicable class.  (emphasis supplied)

Charts in the AIM Fund prospectuses also state that the "Distribution and/or Service (12b-1)

Fees" are paid "from <u>fund</u> assets" (<u>see</u> Addendum B hereto) (emphasis supplied).

3. *as to brokerage commissions* — The SAI states that the payments to brokers for

executing transactions for the Funds' portfolios are made by the Funds (<u>see</u> Addendum A

hereto)[16]:

> Brokerage commissions <u>paid by each of the Funds</u> during the last
> three fiscal years ended October 31 are found in Appendix G.
> (emphasis supplied)

and (<u>see</u> Appendix G thereof):

> Brokerage commissions <u>paid by each of the Funds</u> listed below
> during the last three fiscal years or period ended October 31, were as
> follows ... (emphasis supplied).

and (<u>see</u> Addendum A hereto):

> Directed brokerage (research services) <u>paid by each of the Funds</u>
> during the last fiscal year ended October 31, 2001 are found in
> Appendix H.  (emphasis supplied)

and (<u>see</u> Appendix H thereto):

> During the last fiscal year ended October 31, 2001, <u>each Fund</u>
> <u>allocated the following amount of transactions to broker-dealers</u> that

---

[16] The SEC has likewise stated, in 2004 Releases, that "[f]und brokerage is an asset of the fund" and "[b]rokerage commissions are assets of the fund." 2004 SEC LEXIS 418 at *12 and n.17; 2004 SEC LEXIS 2027 at *5 and n.8.

provided AIM with certain research, statistics and other infor-
mation.... (emphasis supplied)

In short, the commissions and fees at issue in this action were paid by the Funds, <u>not</u> by

any individual shareholder of the Funds.

As the Fifth Circuit held in <u>Smith</u>, 407 F.3d at 384-85, applying Delaware law, the fact

that plaintiffs' Complaint speaks of alleged omissions and non-disclosures about the misuse of

Fund assets (Cplt. ¶¶ 157-80) does not alter the fact that plaintiffs' claims are derivative:

> Applying the principles set forth in <u>Tooley</u> to the present case, it is
> clear that Smith's claims are derivative, not direct.   The
> misrepresentations that allegedly caused Smith's losses injured not
> just Smith but the corporation as a whole.

and, as to applicable Delaware law (<u>id</u>.):

> [W]hen a corporation, through its officers, misstates its financial
> condition, thereby causing a decline in the company's share price
> when the truth is revealed, the corporation itself has been injured.
> Here, the harm that befell Smith -- the drop in share price caused by
> the untimely disclosure of unfavorable financial data -- was a harm
> that befell all of Waste Management's stockholders equally. Stated
> differently, the misconduct alleged by Smith did not injure Smith or
> any other shareholders directly, but instead only injured them
> indirectly as a result of their ownership of Waste Management
> shares. As such, Smith cannot prove his injury without also
> simultaneously proving an injury to the corporation. Accordingly,
> in light of <u>Tooley</u>, we find that Smith's claims are derivative under
> Delaware law.   See <u>Tooley</u>, 845 A.2d at 1033, 1035, 1039.
> (emphasis supplied)

## B.   the demand rule

Plaintiffs admittedly did not make a pre-litigation demand on the Board of Trustees of

any of the Funds, as required by Rule 23.1, Fed. R. Civ. P. and Delaware law.[17]  <u>Kamen</u>, 500

---

[17] Delaware law controls as to the substantive demand requirements since the AIM Funds were organized under
Delaware law.  <u>Kamen</u>, 500 U.S. at 96-101. But, Rule 23.1, Fed. R. Civ. P., controls the pleading aspect of this
issue.  <u>In re Kauffman Mutual Fund Actions</u>, 479 F.2d 257, 263 (1st Cir.), cert. den., 414 U.S. 857 (1973); <u>Beneville</u>
v. <u>York</u>, 769 A.2d 80, 82 (Del.Ch. 2000).  Rule 23.1 requires that the plaintiff's complaint "allege with particularity

U.S. at 95-96 (it is a "'precondition for the suit' that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions"). The failure to make such a demand requires dismissal of all the claims, other than the claim under § 36(b) for which demand is not required. Eaton Vance, 380 F.Supp.2d at 239; Franklin, 388 F.Supp.2d at 471; Davis, 2005 U.S. Dist. LEXIS 23203 at *16; Hogan, 2005 U.S. Dist. LEXIS 16888, at *15.

Demand in a derivative action is necessary because the authority of the board of directors to manage the affairs of a corporation includes the authority to decide whether "to bring a law suit or refrain from litigating a claim on behalf of a corporation." Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990). See also Daily Income Fund v. Fox, 464 U.S. 523, 530 (1984) ("the decision to initiate litigation ... should be made by the board of directors"). Indeed, the "directors are entitled to a presumption that they were faithful to their fiduciary duties." Beam v. Stewart, 845 A.2d 1040, 1048, 1050 (Del. 2004).

The only circumstance in which a failure to make a demand is excused is where the plaintiff shows that a demand would have been futile because the directors were disabled from deciding whether such an action should proceed on behalf of the corporation. Aronson v. Lewis, 473 A.2d 805, 817 (Del. 1984). But, to establish that a demand would be futile, a plaintiff must show "with particularity" why the directors could not make an informed and independent decision as to whether such a claim should be asserted for the corporation. That requires a showing, with particularized facts, that directors were not disinterested and were dominated by the alleged wrongdoers. In re UJB Fin. Corp. Shareholder Litig., 1991 U.S. Dist. LEXIS 20710 at **19-20 (D.N.J. Jan. 22, 1991), aff'd in part and rev'd in part o.g., 964 F.2d 272 (3d Cir.),

the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

11

cert. den., 506 U.S. 934 (1992) (Rule 23.1 requires pleading of "particularized facts to back up the assertions" of futility); Geer v. Cox, 242 F.Supp.2d 1009, 1019 (D.Kan. 2003); Grossman v. Johnson, 89 F.R.D. 656, 659 (D.Mass. 1981), aff'd, 674 F.2d 115 (1ˢᵗ Cir.), cert. den., 459 U.S. 838 (1982); Atkins v. Tony Lama Co., Inc., 624 F. Supp. 250, 255-56 (S.D.Ind. 1985); Kaufman v. Safeguard Scientifics, Inc., 587 F.Supp. 486, 489 (E.D.Pa. 1984) (Rule 23.1 requires "meticulous specification" of the facts). Plaintiffs have failed to provide any such particulars here, and that failure requires dismissal of their claims.

The Funds at issue here are Delaware statutory trusts. Under the Delaware Statutory Trusts Act, 12 Del. C. § 3801(h):

> "Independent trustee" means … any trustee who is not an "interested person" … An independent trustee as defined hereunder shall be deemed to be independent and disinterested for all purposes. For purposes of this definition, the terms "affiliated person" and "interested person" have the meanings set forth in the 1940 Act [i.e. the ICA] or any rule adopted thereunder. (emphasis supplied)

Thus, a trustee of a mutual fund is independent and disinterested unless he falls within the definition of "interested person" in ICA § 2(a)(19), 15 U.S.C. § 80a-2(a)(19). The non-management trustees (i.e. all but Messrs. Graham and Williamson) do not fall within any of the categories of that definition. Eaton Vance, 380 F.Supp.2d at 239. Accord: In re ING Principal Prot. Funds Deriv. Litig., 369 F.Supp.2d 163, 171 (D.Mass. 2005) (holding, under a statute virtually identical to the Delaware statute, that the kind of allegations made at bar do not render the trustees "interested" so as to excuse demand).

Conclusory allegations that trustees permitted, disregarded or even participated in the challenged transactions (such as those in Cplt., ¶ 203(b)-(e)) do not transform a mutual fund trustee into an "interested person", since such allegations do not necessarily show that the trustee was dominated by the investment advisor. Migdal v. Price-Fleming Int'l, Inc., 248 F.3d 321,

329-31 (4th Cir. 2001); <u>Verkouteren</u> v. <u>Blackrock Fin. Mgmt.</u>, 37 F.Supp.2d 256, 258-61 (S.D.N.Y. 1999), aff'd, 208 F.3d 204 (2d Cir. 2000); <u>Krantz</u> v. <u>Fidelity Mgmt. & Research Co.</u>, 98 F.Supp.2d 150, 156-57 (D.Mass. 2000) (directors' alleged permission of challenged "soft-dollar" payments did not make directors "interested persons' under the ICA). <u>See also</u>: <u>Eaton Vance</u>, 380 F.Supp.2d at 240 ("the threat of personal liability for approving a transaction ... is insufficient to demonstrate that a board is interested for purposes of excusing the demand requirement").[18]

The allegation that the trustees were appointed by the Funds' adviser (Cplt., ¶ 203(a)), even if true (which it is not), also does not make them "interested persons", and thus does not obviate the requirement of demand. <u>Eaton Vance</u>, 380 F.Supp.2d at 240 ("[t]he fact that a defendant appointed a board member is insufficient to establish that the board member is interested, even if the position provides the board member with compensation"); <u>Verkouteren</u>, 37 F.Supp.2d at 260 (that "merely states a fact common to all funds which has not been deemed problematic by the bodies regulating the industry"). Accord: <u>Aronson</u>, 473 A.2d at 816 (same under Delaware law); <u>Andreae</u> v. <u>Andreae</u>, 1992 Del. Ch. LEXIS 44 at **13-14 (Del. Ch. Mar. 3, revised Mar. 5, 1992) (Delaware courts have "consistently rejected" the argument that a director lacks independence from the person who nominated or appointed him as a director).

Likewise, the fact that the trustees received compensation, even substantial compensation, for their service on the Funds' boards (<u>see</u> Cplt. ¶ 203(a) and (g)) does not obviate the requirement of demand. <u>Eaton Vance</u>, 380 F.Supp.2d at 240; <u>Krantz</u> v. <u>Prudential Investments Fund Mgmt.</u>, 305 F.3d 140, 143-44 (3d Cir. 2002), cert. den., 537 U.S. 1113 (2003);

---

[18] Delaware common law also so holds. <u>Spector</u> v. <u>Sidhu</u>, 2004 U.S. Dist. LEXIS 876 at **9-15 (N.D.Tex. Jan. 26, 2004) (demand required even though plaintiffs alleged that directors had approved the allegedly false financial reports and had received credible evidence about the alleged wrongdoing); <u>In re Baxter Int'l, Inc. Shareholders Litig.</u>, 654 A.2d 1268, 1270 (Del.Ch. 1995); <u>Mieuli</u> v. <u>DeBartolo</u>, 2001 WL 777447 at *12 (N.D.Cal. Jan. 16, 2001).

Migdal, 248 F.3d at 329-31; Verkouteren, 37 F.Supp.2d at 259-61; Krantz, 98 F.Supp.2d at 157 (rejecting contention that overlapping service on 237 boards with compensation up to $273,500 rendered directors "interested"). Accord: Goodwin v. Live Entertainment, Inc., 1999 Del. Ch. LEXIS 5 at **73-74 (Del. Ch. Jan. 22, 1999), aff'd, 741 A.2d 16 (Del. 1999) (officer/directors' long-term employment contracts are merely "evidence of economic security that undercuts mere rhetoric about their impending motives").

The supposed fear of trustees that they will lose their posts as trustees if they act against the alleged wrongdoing (Cplt. ¶ 203 (f) and (h)) also does not excuse demand. Eaton Vance, 380 F.Supp.2d at 239-40; Verkouteren, 37 F.Supp.2d at 259-60; In re UJB, 1991 U.S. Dist. LEXIS 20710 at **19-20; Grobow v. Perot, 526 A.2d 914, 922-23 (Del.Ch. 1987), aff'd, 539 A.2d 180 (Del. 1988). See also Green v. Phillips, 1996 Del. Ch. LEXIS 76 at **13-15 (Del.Ch. June 19, 1996). Neither does the allegation that they would have to sue themselves (Cplt. ¶ 203(i)). Aronson, 473 A.2d at 818; Eaton Vance, 380 F.Supp.2d at 240. The failure of plaintiffs to make demand is therefore fatal to all of their claims, other than the § 36(b) claim.

**POINT III –**
**THE § 36(b) CLAIM (COUNT III) IS DERIVATIVE, NOT INDIVIDUAL,**
**AND CANNOT BE THE BASIS OF A CLASS ACTION**

In the 35 years that § 36(b) has been law, there has never once been a class action certified. For good reason: the claim is derivative.

Section 36(b), by its express terms, permits a shareholder to bring an action for alleged violation of § 36(b) only "on behalf of" the mutual fund in which the shareholder owns shares; and the claim it allows is to achieve a recovery for the fund. Thus, § 36(b) provides for a derivative claim, not an individual claim. Franklin, 388 F.Supp.2d at 468, dismissing the same type of purported individual class claim alleged by plaintiffs here, since:

14

[T]he Court concludes that shareholders do not have a primary or direct right of action under § 36(b) of the ICA. . . In *Daily Income Fund, Inc.* v. *Fox*, 464 U.S. 523 (1984), the Supreme Court addressed the "on behalf of" language, stating unequivocally that § 36(b) confers only a derivative right....

To the extent that *Fox* distinguished a derivative claim under § 36(b) from a typical derivative claim, the Court did so to explain why Fed. R. Civ. P. 23.1 is inapplicable to § 36(b) actions. Thus, given the plain language of § 36(b) and the Supreme Court's elucidation of that provision in *Fox*, only derivative claims may be maintained under § 36(b). (emphasis supplied)

Accord: Eaton Vance, 2005 U.S. Dist. LEXIS 32094 at **28-29 (same); Lord Abbett, 385 F.Supp.2d at 488 (the plaintiffs "may not maintain [a § 36(b) claim] as a class action claim, given the derivative nature of the claim"). See also: Burks v. Lasker, 441 U.S. 471, 484 (1979); Olmsted, 283 F.3d at 433. This is, of course, consistent with the general rule as to when a claim is derivative, as opposed to individual, detailed above (pp. 6-10, supra).[19]   Accordingly, plaintiffs' § 36(b) claim should be dismissed.

\*   \*   \*

Finally, even if the § 36(b) claim is not derivative, it would have to be dismissed as legally insufficient for the reasons this Court rejected the Complaint in Berdat in August 2005:

---

[19] As explained in Franklin, 388 F.Supp.2d at 468, n.12:

> The Supreme Court's decision Kamen v. Kemper Financial Services, 500 U.S. 90 (1991) does not change this conclusion. In dicta, the Court, relying on Fox, imprecisely stated that "a shareholder action 'on behalf of' the company under § 36(b) is direct rather than derivative and can therefore be maintained without *any* precomplaint demand on the directors." 500 U.S. at 108 (emphasis in original). However, neither Kamen nor Fox, the authority relied on for that statement, stand for the broad proposition that an action under § 36(b) is direct, in every sense of the word. Indeed, if that statement is examined in its context, the very next sentence clarifies that "[u]nder these circumstances, it can hardly be maintained that a shareholder's exercise of his state-created prerogative to initiate a *derivative suit* without the consent of the directors frustrates the broader policy objectives of the ICA." Kamen, 500 U.S. at 108 (emphasis added). Thus, the statement appears to state no more than the incontestable proposition that a shareholder may bring a derivative claim under § 36(b) directly, meaning without making a precomplaint demand pursuant to Rule 23.1. However, that suit remains a derivative action brought on behalf of the company.

"each tub on its own bottom."  Rather than burdening the Court by fully briefing that argument here, we will seek leave to supplement our motion if the Court is not inclined to dismiss on the basis that the § 36(b) claim is derivative, not individual.

## POINT IV --
## THE STATE LAW CLAIMS (COUNTS VI-VIII)
## MUST BE DISMISSED UNDER PRINCIPLES OF
## SUPPLEMENTAL JURISDICTION AND PREEMPTION

### A.  the Court should decline to exercise supplemental jurisdiction

If the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(c)(3); Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir.), cert. den., 516 U.S. 818 (1995); Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992); Summit Properties, Inc. v. Hoechst-Celanese Corp., 125 F.Supp.2d 205, 208 (S.D.Tex. 1999).

### B.  in any event, the state law claims are preempted by SLUSA

SLUSA, 15 U.S.C. § 77p and § 78bb(f), preempt plaintiffs' state law claims (Counts VI-VIII).[20]  Given the broad application intended for SLUSA by Congress, SLUSA requires dismissal of state law claims when "(1) the suit is a 'covered class action,' (2) the plaintiffs' claims are based on state law, (3) one or more 'covered securities' has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact [or used or employed any manipulative or deceptive device or contrivance] 'in connection with the purchase or sale of such security."  G.F. Thomas Investments, L.P. v. Cleco Corp., 317 F.Supp.2d 673, 679 (W.D.La.

---

[20] Counts VI through VIII fail as a matter of law because those claims are derivative in nature and plaintiffs have failed to satisfy the "demand rule".  See Point II above.  However, if the Court rules otherwise, SLUSA nevertheless bars those state law claims.

2004), aff'd, 123 Fed. Appx. 155 (5th Cir. 2005); In re Alger, Columbia, Janus, MFS, One Group, and Putnam Mutual Fund Litig., 320 F.Supp.2d 352, 354 (D.Md. 2004).[21]

This action meets all of the criteria for SLUSA pre-emption. This action is a "covered class action" since it involves more than 50 shareholders (15 U.S.C. §78bb(f)(5)(B)); and a "covered security" (i.e. shares of a mutual fund) is involved in the claims. Alger, 320 F. Supp. 2d at 354. Further, defendants are alleged to have omitted material facts "in connection with" the purchases of covered securities. As the Court in Lord Abbett, 385 F.Supp.2d at 484, held:

> The gravamen of Plaintiffs' Complaint in this case is that Lord Abbett made improper, undisclosed, and excessive payments to brokers to induce them to aggressively market the Funds, which practices caused Fund shareholders to suffer a decline in net asset value per share despite also causing overall Fund growth (which growth, coincidently, boosted Lort Abbett's management fees). For this scheme to work and cause harm to Plaintiffs, however, new investors must purchase shares of the Fund. This scheme, therefore, like the scheme in *Rowinski*, necessarily "coincides" with the purchase or sale of securities.

See also Rowinski, 398 F.3d at 302.

Under these circumstances, even though the putative class includes "holders" of fund shares, SLUSA preempts the state law claims. Kircher v. Putnam Funds Trust, 403 F.3d 478,

---

[21] As explained by the Fifth Circuit in Miller v. Nationwide Life Ins. Co., 391 F.3d 698, 702 (5th Cir. 2004), SLUSA applies "if the complaint alleges … an untrue statement or omission," regardless of the label given to the claim by the plaintiff (at p.702):

> [Plaintiff] Miller, however, contends that 15 U.S.C. § 77p(b)(1) does not mandate dismissal of his state law claim because, regardless of the specific allegations it contains, he has styled it a claim for "breach of contract". We do not agree. The interpretation of SLUSA that Miller proposes would circumvent both the plain meaning of the statutory text and Congress' clearly expressed purpose in enacting it. SLUSA prevents a securities class action from proceeding on the basis of state law if the complaint "alleges … an untrue statement or omission." 15 U.S.C. § 77p(b)(1). The issue of preemption thus hinges on the content of the allegations – not on the label affixed to the cause of action.

Accord: Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 300 (3d Cir. 2005); Dudek v. Prudential Secs., Inc., 295 F.3d 875, 879 (8th Cir. 2002); Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002); Dacey v. Morgan Stanley Dean Witter & Co., 263 F.Supp.2d 706, 710 (S.D.N.Y. 2003).

484 (7th Cir. 2005); Rowinski, 398 F.3d at 300; Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 47 (2d Cir. 2005), cert. granted, ___ U.S. ____ (2005); Prof'l Mgmt. Assocs. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 802-03 (8th Cir. 2003), cert. den., 540 U.S. 1162 (2004); Eaton Vance, 380 F.Supp.2d at 241-42; Alger, 320 F.Supp.2d at 354 (same).[22]

## POINT V --
### IN ANY AND ALL EVENTS, PLAINTIFFS LACK STANDING TO SUE
### ON BEHALF OF ANY FUNDS IN WHICH THEY DO NOT OWN SHARES

If, contrary to our arguments in Points I – IV, any part of this case survives, then, in any event, plaintiffs have standing to sue only on behalf of those Funds in which they own shares and owned shares at the time of the alleged wrongdoing — namely, only nine of the 94 funds for whom they purport to sue. Kauffman v. Dreyfus Fund, 434 F.2d 727, 734-37 (3rd Cir. 1970), cert. den., 401 U.S. 974 (1971); Lewis v. Anderson, 477 A.2d 1040, 1049 (Del. 1984); Kramer v. Western Pac. Indus., Inc., 546 A.2d 348, 354 (Del. 1988); Williams v. Bank One Corp., 2003 WL 22964376 at *1 (N.D.Ill. Dec. 15, 2003); Stegall, 2005 U.S. Dist. LEXIS 24453 at **8-10.

As explained in Kauffman, 434 F.2d at 735-36, dismissing an action under the ICA by a plaintiff who sought to sue on behalf of mutual funds in which he did not own shares:

> [Plaintiff] has not complied with . . . [the] unambiguous requirement — amounting to a legal principle — that one who does not own shares in a corporation is not qualified to bring a derivative action in his behalf.

The Court of Appeals there further explained (at 735-36):

---

[22] SLUSA bars the claims even though they are for aiding and abetting or breach of state law duties and the elements of such claims differ from those of the federal claims. Miller, 391 F.3d at 702; Prager v. Knight/Trimark Group, Inc., 124 F.Supp.2d 230, 235 (D.N.J. 2000); Rowinski, 398 F.3d 296 and at 303; Prof'l Mgmt. Assocs. Employees' Profit Sharing Plan, 335 F.3d at 802. That is particularly so since the state law claims incorporate the express allegations in the federal claims, including the alleged omissions (see, e.g., Cplt. ¶¶ 248, 253, 257). In re Enron Corp. Sec. Derivative & ERISA Litig., 284 F.Supp.2d 511, 638-39 (S.D.Tex. 2003).

> The timber of sound reason forms the conceptual underpinning of the rule requiring stock ownership in a corporation as the prerequisite for bringing a derivative action in its behalf. Only by virtue of the shareholder's interest, which has been described as "a proprietary interest in the corporate enterprise which is subject to injury through breaches of trust or duty on the part of the directors"... does equity permit him "to step into the corporation shoes and seek in its right the restitution he could not demand in his own." Standing is justified only by this proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest. <u>Without this relationship, there can be no standing</u>, "no right in himself to prosecute this suit" [citations and footnotes omitted]. (emphasis supplied).

<u>Accord</u>: <u>Williams</u>, 2003 WL 22964376 at *1, rejecting an effort by a shareholder in two series of funds in a business trust to sue derivatively on behalf of all of the funds in the trust:

> What controls ... is the total separateness of the beneficial interest in the funds, with Williams being a shareholder in only two of them.... [A]s for the other One Group Funds, any notion of Williams being able to bootstrap upstream to the business trust and thence downstream to the other separate funds clearly has nothing at all to commend it.

This is a matter of constitutional law. Article III of the Constitution prohibits a plaintiff from suing derivatively on behalf of funds in which he is not a shareholder. <u>Gollust</u> v. <u>Mendell</u>, 501 U.S. 115, 125-26 (1991) ("'Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself'... the plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course"). <u>Accord</u>: <u>Kauffman</u>, 434 F.2d at 736.[23]

Plaintiffs' lack of standing is not cured by their denominating their action a "class action", or contending that the other Funds in the AIM complex suffered the same kind of injury as the Funds in which plaintiffs own shares. <u>See</u> <u>Kauffman</u>, 434 F.2d at 735-37, dismissing the same kind of argument (made there for a "class derivative action"):

---

[23] A plaintiff lacks a "personal stake" in any Fund in which he does not hold an interest. A recovery here would go to one or more of the nine Funds, not plaintiffs or any other fund.

The fatal defect in this "champion of the industry" approach is that it seeks to equate a corporation's primary right of action with a shareholder's secondary right to bring a derivative action ... But the fund is not the plaintiff in the case at bar, and the only right the individual derivative plaintiff possesses is a secondary one — a right which not only defines his standing to sue but also limits the extent of the possible recovery, i.e., the damage sustained by the corporation in which he is a shareholder ... There may be injuries to the other corporations, but because appellee does not possess the stockholder relationship to them and the proprietary interest which accompanies this relationship, he may not qualify as their representative in a class action.

Accord: Lewis v. Casey, 518 U.S. 343, 357 (1996) ("[t]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").

## CONCLUSION

The Second Consolidated Amended Complaint should be dismissed, with prejudice, as was done in Eaton Vance.

Dated:   December 15, 2005

Respectfully submitted,

POLLACK & KAMINSKY

by:___s/ Daniel A. Pollack_____
Daniel A. Pollack, Esq.
Martin I. Kaminsky, Esq.
Edward T. McDermott, Esq.
Anthony Zaccaria, Esq.
114 West 47th Street, Suite 1900
New York, New York 10036
Tel. (212) 575-4700
Fax: (212) 575-6560

20

MAYER, BROWN, ROWE & MAW LLP  GIBBS & BRUNS, LLP

by: s/ Charles Kelley     by: s/ Michael K. Oldham
  Charles Kelley, Esq.       Michael K. Oldham, Esq.
700 Louisiana, Suite 3600     1100 Louisiana, Suite 5300
Houston, Texas 77002      Houston, Texas 77002
Tel. (713) 547-9634       Tel. (713) 751-5268
Fax: (713) 632-1834       Fax: (713) 750-0903

*Attorneys for Defendants*
*A I M Management Group Inc., INVESCO Funds Group Inc., A I M*
*Advisors, Inc., A I M Distributors, Inc., INVESCO Distributors, Inc.,*
*Robert H. Graham and Mark H. Williamson*

- and -

NICKENS KEETON LAWLESS FARRELL & FLACK LLP

by: s/ Paul D. Flack
  Paul D. Flack, Esq.
 600 Travis, Suite 7500
 Houston, Texas 77002
 Tel. (713) 571-9191
 Fax: (713) 571-9652

*Attorneys for Defendants*
Frank S. Bayley, Bruce L. Crockett, Albert R. Dowden, Edward K.
Dunn, Jack M. Fields, Carl Frischling, Prema Mathai-Davis, Lewis
Pennock, Ruth H. Quigley, Louis Sklar, Fred Deering, Victor
Andrews, Bob Baker, Lawrence Budner, James Bunch, Gerald
Lewis, John McIntyre and Larry Soll