UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RICHARD TIM BOYCE, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 04cv2587 (Consolidated) |
| Plaintiff, | |
| | Judge Keith P. Ellison |
| vs. | |
| AIM MANAGEMENT GROUP, INC., et al., | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**SUSMAN GODFREY L.L.P.**
Stephen D. Susman
Carolyn P. Courville
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone (713) 651-9366
Facsimile (713) 654-6666

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone (212) 594-5300
Facsimile (212) 868-1229

**BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP**
Alan Schulman
Robert S. Gans
Jerald D. Bien-Willner
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone (858) 793-0070
Facsimile (858) 793-0323

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT..........................................................................................................................3

I.     PLAINTIFFS' §36(b) CLAIM IS DIRECT RATHER THAN
DERIVATIVE ..........................................................................................................3

II.    PLAINTIFFS HAVE STATED A CLAIM UNDER §36(b)..................................6

    A.    Defendants Have Waived Any Substantive Challenge to Plaintiffs'
§36(b) Claim, Which Plaintiffs Have Properly Pleaded............................6

    B.    Recent Authority Confirms the Sufficiency of Plaintiffs' §36(b)
Allegations ...............................................................................................7

III.   PLAINTIFFS HAVE PROPERLY PLEADED DIRECT CLAIMS
UNDER STATE LAW AND ICA §§34(b), 36(a) AND 48(a) ...........................14

    A.    Fees Paid from "Fund" Assets Are Borne Directly by Mutual Fund
Investors..................................................................................................15

    B.    Plaintiffs' Omission Claim Under ICA §34(b) Is Direct...........................18

    C.    The Director Defendants' Improper Transfer of Fund Investor
Assets to the Investment Adviser and Distributor Defendants Gave
Rise to a Direct Cause of Action, and Pre-Suit Demand on the
Directors Was Not Required.....................................................................20

IV.   PLAINTIFFS HAVE STANDING TO ASSERT ALL OF THEIR
CLAIMS ...............................................................................................................23

V.    THE STATE LAW CLAIMS, BROUGHT BY A SUBCLASS OF
"HOLDER" PLAINTIFFS, ARE NOT PREEMPTED BY SLUSA AND
THIS COURT SHOULD RETAIN JURISDICTION OVER THEM..................30

VI.   A PRIVATE RIGHT OF ACTION EXISTS UNDER INVESTMENT
COMPANY ACT §§34(b), 36(a) AND 48(a) .......................................................33

    A.    An Implied Right Exists Under §34(b)......................................................34

    B.    An Implied Right Exists Under §36(a)......................................................34

    C.    The Express Private Right in §36(b) Does Not Impact §§ 34(b) and
36(a) ......................................................................................................35

i

D.     *Jackson*, the Most Recent Supreme Court Decision on this Issue, Supports a Private Right of Action under §§34(b), 36(a) and 48(a)..........37

VII.    PLAINTIFFS HAVE ADEQUATELY ALLEGED A VIOLATION OF INVESTMENT COMPANY ACT §48(a).............................................................37

VIII.   DEMAND SHOULD BE EXCUSED AS FUTILE FOR PLAINTIFFS' SOLE DERIVATIVE CLAIM ...........................................................................38

CONCLUSION.............................................................................................................................40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)............................................................33, 34

*In re Alger, Columbia, Janus, MFS, One Group and Putnam Mut. Fund Litig.,*
    320 F. Supp. 2d 352 (D. Md. 2004)...........................................33

*Alves v. Harvard Pilgrim Health Care, Inc.,*
    204 F. Supp. 2d 198 (D. Mass. 2002)........................................28

*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.,*
    794 F. Supp. 1424 (D. Ariz. 1992) ...........................................27

*Atencio v. Smith Barney,*
    2005 U.S. Dist. LEXIS 1526 (S.D.N.Y. Feb. 2, 2005).................31

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)...............................................................34

*Batra v. Investors Res. Corp.,*
    1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct 4, 1991)..............29

*Baum v. Inv. Diversified Servs., Inc.,*
    409 F.2d 872 (7th Cir. 1969) ..................................................16

*Bingham v. Zolt,*
    66 F.3d 553 (2d Cir. 1995).....................................................17

*Booth v. Greer Inv. Co.,*
    52 F.2d 857 (N.D. Okla. 1931), *aff'd sub nom.*, 62 F.2d 321 (10th Cir. 1932) ...........21

*Brown v. Bullock,*
    194 F. Supp. 207 (S.D.N.Y. 1961)...........................................36

*Burks v. Lasker,*
    441 U.S. 471 (1979)...........................................................6, 15

*Burstein v. State Bar of California,*
    693 F.2d 511 (5th Cir. 1982) ....................................................6

*CIA. Petrolera Caribe, Inc. v. ARCO Caribbean, Inc.,*
    754 F.2d 404 (1st Cir. 1985).....................................................7

*Cannon v. University of Chicago,*
    441 U.S. 677 (U.S. 1979)........................................................34

*Chamberlain v. Aberdeen Asset Mgmt. Ltd.*,
   2005 U.S. Dist. LEXIS 2023 (S.D.N.Y. Jan, 21, 2005) ............................................36

*Chesbrough v. Woodworth*,
   244 U.S. 72 (1917)..................................................................................................19

*Chinn v. Belfer*,
   2002 U.S. Dist. LEXIS 20343 (D. Or. June 19, 2002) .................................................31

*In re Columbia Entities Litig.*,
   2005 U.S. Dist. LEXIS 33439 (D. Mass. Nov. 30, 2005) .......................................5, 38

*Cross v. Oneida Paper Prods. Co.*,
   117 F. Supp. 919 (D.N.J. 1954) ..................................................................................29

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   395 F.3d 25 (2d Cir. 2005)...................................................................................31, 32

*Daily Income Fund, Inc. v. Fox*,
   464 U.S. 523 (1984)........................................................................................2, 3, 4, 5

*In re Davis Selected Mut. Funds Litig.*,
   2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. Oct. 11, 2005) ......................................18, 36

*Davis v. Bailey*,
   2005 U.S. Dist. LEXIS 38204 (D. Col. Dec. 22, 2005)........................................24, 28

*Davis v. Kozlowski*,
   2005 U.S. Dist. LEXIS 4481 (D.N.H. Mar. 17, 2005) ................................................31

*Dopp v. American Elec. Labs., Inc.*,
   55 F.R.D. 151 (S.D.N.Y. 1972) ...................................................................................39

*Dorchester Investors v. Peak Int'l Ltd.*,
   134 F. Supp. 2d 569 (S.D.N.Y. 2001)........................................................................36

*In re Dreyfus Mut. Funds Fee Litig.*,
   2005 U.S. Dist. LEXIS 29152 (W.D. Pa. Sept. 30, 2005)................................. *passim*

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
   2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000)............................................25

*Dull v. Arch*,
   2005 U.S. Dist. LEXIS 14988 (N.D. Ill. July 27, 2005)..............................................36

*Dumond v. Mass. Fin'l Servs. Co.*,
   2006 U.S. Dist. LEXIS 1933 (D. Mass. Jan. 19, 2006) ..............................................12

*In re Eaton Vance Mut. Funds Fee Litig.*,
    380 F. Supp. 2d 222 (S.D.N.Y. 2005)..............................................................19, 33, 36

*In re Eaton Vance Mut. Funds Fee Litig.*,
    2005 U.S. Dist. LEXIS 32094 (S.D.N.Y. Dec. 6, 2005) ............................................6

*In re Enron Corp. Secs., Deriv. & "ERISA" Litig.*,
    2004 U.S. Dist. LEXIS 8158 (S.D. Tex. Feb. 24, 2004) ......................................28, 30

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    125 S. Ct. 2611 (2005)..............................................................................................37

*Falkowski v. Imation Corp.*,
    309 F.3d 1123 (9th Cir. 2002) ..................................................................................31

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ....................................................................................28

*Feitelberg v. Credit Suisse First Boston LLC*,
    2003 U.S. Dist. LEXIS 19116 (N.D. Cal. Oct. 21, 2003).....................................31, 32

*Fogel v. Chestnutt*,
    668 F.2d 100 (2d Cir. 1981)......................................................................................36

*Foman v. Davis*,
    371 U.S. 178 (1962)..................................................................................................40

*Forsythe v. Sun Life Fin'l, Inc.*,
    2006 U.S. Dist. LEXIS 1948 (D. Mass. Jan. 19, 2006) ......................................5, 9, 10

*In re Franklin Mut. Funds Fee Litig.*,
    388 F. Supp. 2d 451 (D.N.J. 2005) ..........................................................4, 18, 26, 36

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
    694 F.2d 923 (2d Cir. 1982)..................................................................................9, 13

*Goldberger v. Bear Stearns & Co.*,
    2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000) ...........................................24

*Gollust v. Mendell*,
    501 U.S. 115 (1991)..................................................................................................29

*Goodman v. Lukens Steel Co.*,
    777 F.2d 113 (3d Cir. 1985), *aff'd on other grounds*, 482 U.S. 656 (1987) ...............24

*Grabow v. PriceWaterhouseCoopers LLP*,
    313 F. Supp. 2d 1152 (N.D. Okla. 2004)....................................................................31

*Gratz v. Bollinger*,
    539 U.S. 244 (2003)....................................................................................24

*Green v. Ameritrade, Inc.*,
    279 F.3d at 597-99 ....................................................................................31

*Green v. Fund Asset Mgmt., L.P.*,
    19 F. Supp. 2d 227 (D.N.J. 1998) ............................................................12

*Gutierrez v. Deloitte & Touche, L.L.P.*,
    147 F. Supp. 2d 584 (W.D. Tex 2001)......................................................31

*Haas v. Pittsburgh Nat'l Bank*,
    526 F.2d 1083 (3d Cir. 1975)....................................................................26

*Halligan v. Standard & Poor's/Intercapital, Inc.*,
    434 F. Supp. 1082 (E.D.N.Y. 1977) .........................................................13

*Hamilton v. Allen*,
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ........................................................36

*Harris Bank Naperville v. Pachaly*,
    902 F. Supp. 156 (N.D. Ill. 1995) ...............................................................7

*Hogan v. Baker*,
    2005 U.S. Dist. LEXIS 16888 (N.D. Tex. Aug. 12, 2005)........................18

*Jackson v. Birmingham Bd. of Ed.*,
    125 S. Ct. 1497 (2005)...........................................................................3, 37

*Jones v. Harris Assocs., L.P.*,
    Civ. No. 04 C 8305, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005) .........................10, 11

*K.U. by & Through Michael U. v. Alvin Independent Sch. Dist.*,
    991 F. Supp. 599 (S.D. Tex. Jan. 5, 1998)..................................................3

*Kamen v. Kemper Fin'l Servs., Inc.*,
    500 U.S. 90 (1991)............................................................................ *passim*

*Kauffman v. The Dreyfus Fund, Inc.*,
    434 F.2d 727 (3d Cir. 1970).......................................................................28

*King v. Douglass*,
    973 F. Supp. 707 (S.D. Tex. 1996) ..............................................................5

*Kircher v. Putnam Funds Trust*,
    403 F.3d 478 (7th Cir. 2005) ....................................................................33

vi

*Kitchens v. U.S. Shelter Corp.*,
  1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) ................................27

*Krantz v. Fidelity Mgmt. & Res., Co.*,
  98 F. Supp. 2d 150 (D. Mass. 2000) .....................................................5, 39

*Krinsk v. Fund Asset Mgmt., Inc.*,
  875 F.2d 404 (2d Cir. 1989)...................................................................12

*Lewis v. Anderson*,
  477 A.2d 1040 (3d Cir. 1970) ................................................................28

*Lewis v. Casey*,
  518 U.S. 343 (1996)...............................................................................28

*In re Lord Abbett Mut. Funds Fee Litig.*,
  385 F. Supp. 2d 471, *as amended*,
  2005 U.S. Dist. LEXIS 37492 (D.N.J. Dec. 28, 2005) ................4, 26, 33, 36

*In re ML-Lee Acquisition Fund II L.P.*,
  848 F. Supp. 527 (D. Del. 1994)........................................................25, 37

*Malmros v. Jones*,
  2004 U.S. Dist. LEXIS 4371 (E.D. Pa. Feb. 27, 2004) ............................16

*Maywalt v. Parker & Parsley Petroleum Co.*,
  147 F.R.D. 51 (S.D.N.Y. 1993) ..............................................................27

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................36

*Miller v. Nationwide Life Ins. Co.*,
  391 F.3d 698 (5th Cir. 2004) .................................................................33

*In re MobileMedia Sec. Litig.*,
  28 F. Supp. 2d 901 (D.N.J. 1998) ..........................................................27

*Moore v. Comfed Sav. Bank*,
  908 F.2d 834 (11th Cir. 1990) ...............................................................28

*In re Mut. Funds Inv. Litig. (In re Janus Subtrack)*,
  384 F. Supp. 2d 845 (D. Md. 2005).....................................................5, 25

*In re Nuveen Fund Litig.*,
  1996 U.S. Dist. LEXIS 8071 (N.D. Ill. June 11, 1996).........................33, 36

*O'Shea v. Littleton,*
  414 U.S. 488 (1974)......................................................................................................24

*Olesh v. Dreyfus Corp,*
  1995 U.S. Dist. LEXIS 21421 (E.D.N.Y. Aug. 18, 1995)..........................................39

*Olmsted v. Pruco Life Insurance Co.,*
  283 F.3d 429 (2d Cir. 2002)................................................................................6, 35, 36

*In re Oxford Health Plans, Inc.,*
  192 F.R.D. 111 (S.D.N.Y. 2000) ...............................................................................40

*Penrod Drilling Co. v. Johnson,*
  414 F.2d 1217 (5th Cir. 1969) ....................................................................................29

*Pfeiffer v. Bjurman, Barry & Assocs.,*
  2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 26, 2004)......................................12, 13

*Prof'l Management Associates Empl. Profit Sharing Plan,*
  335 F.3d 800 (8th Cir. 2003) ......................................................................................33

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................................27

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  292 F.3d 1334 (11th Cir. 2002) ..................................................................................31

*Rowinski v. Salomon Smith Barney, Inc.,*
  398 F.3d 294 (3d Cir. 2005).........................................................................................33

*Shaev v. Claflin,*
  2001 U.S. Dist. LEXIS 6677 (N.D. Cal. May 17, 2001) ............................................31

*Smith v. Waste Management,*
  407 F.3d 381 (5th Cir. 2005) .....................................................................................19

*Sosna v. Iowa,*
  419 U.S. 393 (1975)......................................................................................................24

*Stegall v. Ladner,*
  394 F. Supp. 2d 358 (D. Mass. 2005) .....................................................................5, 36

*Strigliabotti v. Franklin Res., Inc.,*
  2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005)..............................5, 10, 16, 33

*Strigliabotti v. Franklin Res., Inc.,*
  398 F. Supp. 2d 1094 (N.D. Cal. 2005) .....................................................................32

*Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*,
    964 F. Supp. 783 (S.D.N.Y. 1997)..................................................................3, 33, 39

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002).........................................................................17, 33, 35

*Sutton v. Medical Serv. Assoc.*,
    1993 U.S. Dist. LEXIS 9763 (E.D. Pa. July 20, 1993)................................................24

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)....................................................................................................7

*Tedesco v. Mishkin*,
    689 F. Supp. 1327 (S.D.N.Y. 1988)............................................................................27

*Tittle v. Enron Corp. (In re Enron Corp. Sec. Deriv. & ERISA Litig.)*,
    284 F. Supp. 2d 511 (S.D. Tex. Sept. 30, 2003) ......................................................30

*In re Trump Hotels S'holder Deriv. Litig.*,
    2000 U.S. Dist. LEXIS 13550 (S.D.N.Y. Sept. 21, 2000)..........................................39

*In re United States Abatement Corp.*,
    39 F.3d 556 (5th Cir. 1994) ........................................................................................3

*United States v. Cartwright*,
    411 U.S. 546 (1973)...................................................................................................16

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ....................................................................36

*White v. Heartland High-Yield Municipal Bond Fund*,
    237 F. Supp. 2d 982 (E.D. Wis. 2002)......................................................................36

*Wicks v. Putnam Inv. Mgmt. LLP*,
    2005 U.S. Dist. LEXIS 4892 (D. Mass. Mar. 28, 2005)........................................9, 11

*Young v. Nationwide Life Ins. Co.*,
    2 F. Supp. 2d 914 (S.D. Tex. 1998) ..........................................................................35

*Zimmerman v. Bell*,
    585 F. Supp. 512 (D. Md. 1984) ...............................................................................39

### STATE CASES

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)..............................................................38, 40

*Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) ..................................................................38

ix

*Cal. Public Employees Retirement System v. Coulter,*
    2002 Del. Ch. LEXIS 144 (Del. Ch. May 28, 2002) ................................38

*In re J.P. Morgan Chase & Co. S'holder Litig.,*
    2005 Del. Ch. LEXIS 51 (Del. Ch. Apr. 29, 2005) ....................................18

*Kramer v. Western Pac. Industrial, Inc.,*
    546 A.2d 348 (Del. 1988) ...........................................................................28

*Parfi Holding AB v. Mirror Image Internet, Inc.,*
    794 A.2d 1211 (Del. Ch. 2001)...................................................................38

*In re Ply Gem Indus., Inc., S'holder Litigation,*
    2001 Del. Ch. LEXIS 84 (June 26, 2001)...................................................39

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) ......................................................................38, 39

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) ....................................................................14, 22

*In re Tri-Star Pictures, Inc., Litig.,*
    634 A.2d 319 (Del. 1993) ...........................................................................18

*Williams v. Bank One Corp.,*
    2003 WL. 22964376 (N.D. Ill. Dec. 15, 2003)...........................................28

*Zirn v. VLI Corp.,*
    681 A.2d 1050 (Del. 1996) .........................................................................18

## DOCKETED CASES

*Hunt, et al. v. Invesco Funds Group, et al.,* Civ. No. 04-2555 (S.D. Tex.) .........................1

## FEDERAL STATUTES

15 U.S.C. §80a-1..............................................................................................34

15 U.S.C. §80a-1(b)..........................................................................................34

15 U.S.C. §80a-1(b)(2) .....................................................................................14

15 U.S.C. §80a-2(a)(9)......................................................................................38

15 U.S.C. §80a-2(a)(12)....................................................................................20

15 U.S.C. §80a-2(a)(32)....................................................................................16

15 U.S.C. §80a-8(a) ..................................................................................34

15 U.S.C. §80a-30(a) ................................................................................34

15 U.S.C. §80a-30(b) ................................................................................34

15 U.S.C. §80a-33(b) ................................................................................34

15 U.S.C. §80a-35(a) ................................................................................34

15 U.S.C. §80a-47(a) ................................................................................37

**STATE STATUTES**

12 Del. C. §3302 ......................................................................................22

12 Del. C. §3581(a) ..................................................................................22

12 Del. C. §3581(b) ..................................................................................22

12 Del. C. §3801(h) ..................................................................................38

12 Del. C. §3809 ......................................................................................22

12 Del. C. §3816(a) ..................................................................................38

**FEDERAL RULES AND LEGISLATIVE MATERIALS**

Fed. R. Civ. P. 8 .........................................................................................3

Fed. R. Civ. P. 12(g) ...................................................................................6

Fed. R. Civ. P. 15(a) .................................................................................40

Fed. R. Civ. P. 23.1 ..................................................................................29

H.R. 1341, 96th Cong. (1980) ..................................................................35

S. Rep. No. 91-184 (1969) ........................................................................35

**MISCELLANEOUS**

Moore's Federal Practice 3d, §12.21 ...........................................................7

Restatement 2d of Trusts, §288 ................................................................21

Restatement 2d of Trusts, §289 ................................................................21

Restatement 2d of Trusts, §292(1)........................................................................23

Robert H. Sitkoff, *Symposium: Uncorporation: A New Age?: Trust as
    "Uncorporation": A Research Agenda,* 2005 U. Ill. L. Rev. 31 ..................................22

Austin W. Scott, The Law Of Trusts - Fourth Edition (Aspen 2001) ...................20, 21, 23

## PRELIMINARY STATEMENT

Plaintiffs submit this opposition to the motion to dismiss their Second Consolidated Amended Complaint ("Complaint") filed by Defendants AIM Management Group, et al. ("Def. Br."), in which the Independent Trustees have joined ("Tr. Br.") (collectively "Defendants").

This is a class action on behalf of holders of AIM and INVESCO mutual funds (the "Funds" or "AIM Funds") during the period March 11, 1999 to May 10, 2004 (the "Class") arising from Defendants' receipt of excessive compensation and fees. Defendants are liable because the compensation and fees they collected from Fund investors were disproportionate to the value of services provided, and were not within the bounds of what would have been negotiated at arm's-length. During the relevant time frame, these fees rose even though Defendants provided no corresponding increase in services or benefits.[1]

A major reason for the dramatic increase in compensation and fees to Defendants was the growth in the size of the Funds resulting from Defendants' use of Fund investor assets to promote the sale of Fund shares -- *i.e.*, buying "shelf space" at broker-dealer firms.[2] Defendants secretly agreed to use millions of dollars in excessive fees and brokerage commissions to provide kickbacks to compensate brokerages for pushing AIM Funds onto investors. *See, e.g.,* ¶¶106-

---

[1] Also pending in this district is *Hunt, et al. v. Invesco Funds Group, et al.*, Civ. No. 04-2555 (S.D. Tex.) (Ellison, J.) (formerly *Berdat, et al. v. Invesco Funds Group, et al.*, Civ. No. 04-2555) (hereinafter, "*Berdat*"). Defendants boldly claim that, "[a]ll parties, and (we believe) the Court, understood that advisory fee claims were going to be litigated in *Berdat* and directed brokerage claims were going to be litigated in *Boyce*." Def. Br. at 1 n.3. Plaintiffs here (the *Boyce* Plaintiffs), never agreed to this arrangement and have consistently raised in their initial and amended complaints, *inter alia*, allegations that Defendants charged shareholders excessive advisory fees. As such, the instant action pertains to allegations currently raised in the Complaint, and shall not be limited as Defendants unilaterally and erroneously suggest.

[2] Contrary to Defendants' arguments (Def. Br. at 1-2), this action alleges more than the "misuse of mutual fund assets" through "shelf space" payments. The Complaint alleges that Defendants used payments from Fund investor assets to grow the Funds, resulting in an increase in asset-based fees paid to Defendants, who did not pass on to shareholders the benefits of economies of scale or otherwise reduce their fees or increase the services provided. This resulted in a windfall for Defendants, which they cannot legally retain.

1

116.[3]  These agreements resulted in the growth of the Funds, but benefited only Defendants because they allowed Defendants' management fees and other asset-based fees to increase, while Defendants did not increase services provided to investors. This increase in fees with no corresponding benefit to investors resulted in Plaintiffs paying, and Defendants receiving, "something for nothing."[4]

Defendants have moved to dismiss the Complaint on numerous unavailing grounds:

- Defendants challenge Plaintiffs' claim under §36(b) of the Investment Company Act of 1940 ("ICA") solely on the grounds that such claim may only be brought derivatively, and only on behalf of Funds in which Plaintiffs invested. Def. Br. at 14, 18. However, the Supreme Court and numerous district courts have held that an ICA §36(b) claim is direct. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 528-29 (1984). Plaintiffs also properly bring their §36(b) claim regarding all AIM Funds by setting forth complex-wide and fund-specific allegations that meet the Rule 8 pleading requirements, as other courts have held.

- Defendants incorrectly argue that Plaintiffs may only bring their other ICA and state law claims derivatively. Def. Br. at 6. However, Plaintiffs allege breaches of duties from excessive fees charged directly to investors. The Funds were not harmed by Defendants' misconduct, but in fact grew in asset size. Moreover, Plaintiffs' ICA §34(b) claim alleges harms arising from omissions made directly to fundholders. Additionally, under trust law, the Directors' improper transfer of Fund investor assets to the Investment Adviser and Distributor Defendants gave rise to a direct cause of action, and pre-suit demand was not required.

- Defendants also generally argue that Plaintiffs do not have standing to bring any claims regarding Funds in which they did not invest. Def. Br. at 18. Courts, however, have framed this issue as one of compliance with Federal Rule of Civil Procedure 23, not Article III standing, and substantial authority supports Plaintiffs' ability to assert class claims on behalf of investors in the other Funds in the complex.

---

[3]  All references to "¶ __" are to the Complaint, unless otherwise noted.

[4]  These programs were also in violation of, *inter alia*, Securities and Exchange Commission ("SEC") and National Association of Securities Dealers ("NASD") rules and regulations. In parallel proceedings against mutual fund companies Massachusetts Financial Services, PA Distributors ("PIMCO"), Franklin-Templeton Distributors, American Funds Distributors, Lord Abbett Distributor LLC, and OppenheimerFunds, Inc., the SEC and other regulators have repeatedly made clear that these undisclosed kickback schemes are illegal. The SEC and/or the NASD and New York Stock Exchange have also settled actions against broker-dealer firms Morgan Stanley, Citigroup Global Markets, Inc. and Edward D. Jones & Co., L.P. for their receipt of undisclosed kickbacks from mutual funds.

- Defendants' argument that Plaintiffs' state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") (Def. Br. at 16-18), runs counter to the statute's plain language and the weight of authority permitting "holder" claims.

- Defendants argue that there is no implied right of action for Plaintiffs' §§34(b), 36(a) and 48(a) claims. Def. Br. at 3-6. To the contrary, the existence of implied rights of action under these sections has a long, established history. *See Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783 (S.D.N.Y. 1997). Supreme Court authority compels the conclusion that private rights of action exist under these claims. *See Jackson v. Birmingham Bd. of Educ.*, 125 S. Ct. 1497 (2005).

Accordingly, Defendants' motion to dismiss should be denied in its entirety.

## ARGUMENT

In the words of the Fifth Circuit, "dismissal for failure to state a claim is disfavored in the law and justified only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *In re United States Abatement Corp.*, 39 F.3d 556, 559 (5th Cir. 1994); *see also See K.U. by & Through Michael U. v. Alvin Indep. Sch. Dist.*, 991 F. Supp. 599, 602 (S.D. Tex. Jan. 5, 1998) (a "[c]ourt accepts as true all well-pleaded allegations . . . , and views them in the light most favorable to the plaintiff"). Plaintiffs have satisfied the governing pleading standard by setting forth a "short and plain statement of the claim." Fed. R. Civ. P. 8. All of Plaintiffs' claims should therefore be upheld.

## I.    PLAINTIFFS' §36(b) CLAIM IS DIRECT RATHER THAN DERIVATIVE

Defendants' sole challenge to the §36(b) claim is that no court has certified a class for a §36(b) claim because, according to Defendants, the claim is derivative. Def. Br. at 14. However, according to the Supreme Court and numerous lower courts, the claim is direct.

The Supreme Court has held that a §36(b) claim is "direct rather than derivative." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108 (1991); *see also Daily Income*, 464 U.S. at 528-29. In *Daily Income*, the Supreme Court reviewed its prior decisions and concluded that it had always used the term "derivative action" to refer to a situation in which the corporation was entitled to assert the claim in court on its own behalf. Specifically, the Court stated:

3

> [T]he term "derivative action," which defines the scope of Rule 23.1, has long been understood to apply only to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court.

464 U.S. at 529. Thus, conversely, where the right to bring suit does not lie with the corporation, the lawsuit is not "derivative," and Rule 23.1 and its demand requirement do not apply. As the Supreme Court explained, "Congress intended the unique right created by §36(b) to be enforced solely by the [SEC] and *security holders* of the investment company." *Id.* at 536 (emphasis added). The direct right to bring such claim is thus held by the security holder, not the mutual fund. The Supreme Court confirmed this conclusion in *Kamen*, where it stated: *"a shareholder action 'on behalf of' the company under §36(b) is direct rather than derivative ..."* 500 U.S. at 108 (emphasis added).

Ignoring this Supreme Court precedent, Defendants premise their entire argument on the district court decision in *In re Franklin Mutual Funds Fee Litigation*, 388 F. Supp. 2d 451 (D.N.J. 2005). Def. Br. at 14-15.[5] *Franklin*, which is not in accord with such precedent, found that the §36(b) language providing that a claim may be brought "by a security holder of [a] registered investment company *on behalf of such company*," necessarily means that the claim is derivative. 388 F. Supp. 2d at 468 (emphasis in original).[6] In so holding, *Franklin* relied on the comment in *Daily Income* that a §36(b) claim, which is brought "on behalf of" a mutual fund, is "'derivative' in the broad sense of the word." *Id.* In holding that all claims "on behalf of" a fund are derivative,

---

[5] Defendants also cite *In re Lord Abbett Mutual Funds Fee Litigation*, 385 F. Supp. 2d 471 (D.N.J. 2005), *as amended*, 2005 U.S. Dist. LEXIS 37492, at *33 (D.N.J. Dec. 28, 2005), Def. Br. at 15, which was decided by the same judge as *Franklin*, and should not be followed for the same reasons discussed herein. Judge Martini in *Franklin* and *Lord Abbett* dismissed the plaintiffs' §36(b) claims without prejudice and with leave to replead those claims derivatively.

[6] Defendants rely upon the language in *Franklin* stating that the Supreme Court in *Kamen*, 500 U.S. at 180, in finding that a §36(b) claim was direct, simply held that "a shareholder may bring a derivative claim under §36(b) directly, meaning without making a precomplaint demand pursuant to Rule 23.1." Def. Br. at 15 n.19 (quoting *Franklin*, 388 F. Supp. 2d at 468 n.12). The *Franklin* court's use of the term "direct" to mean those situations where plaintiffs need not make a demand prior to instituting a derivative suit ignores
Continued on next page

4

*Franklin* ignored the Supreme Court's statement in *Daily Income* that, "[t]he fact that derivative suits are brought on behalf of a corporation does not mean . . . that all suits brought on behalf of a corporation are derivative." 464 U.S. at 535. The *Daily Income* Court's characterization of a §36(b) claim as "'derivative' in the broad sense of the word" does not change that Court's central holding that a direct claim exists where the proper plaintiff is a shareholder and not the corporation. As the *Daily Income* Court stated in the context of a §36(b) claim, "a shareholder action that the corporation cannot control raises no proper party concerns." *Id.* at 533 n.9.[7]

Recent decisions have either found a §36(b) claim to be direct at the motion to dismiss stage, or have deferred the issue.[8] In *In re Dreyfus Mutual Funds Fee Litigation*, for example, where the plaintiffs brought claims similar to those asserted here, the Western District of Pennsylvania found that, "a section 36(b) claim is not brought derivatively." 2005 U.S. Dist. LEXIS 29152, at *28, n.7 (W.D. Pa. Sept. 30, 2005); *accord King v. Douglass*, 973 F. Supp. 707,

---

and/or misinterprets Supreme Court precedent, turns the distinction between "direct" and "derivative" suits on its head, and is not controlling here.

[7] Even if this Court finds that the §36(b) claim is derivative, Plaintiffs would be entitled to go forward on their current Complaint, because pre-suit demand on the trustees is not required prior to bringing a §36(b) claim, *Daily Income*, 464 U.S. at 542, and Defendants have not otherwise challenged the sufficiency of the §36(b) allegations.

[8] *See, e.g., Forsythe v. Sun Life Fin'l, Inc.*, 2006 U.S. Dist. LEXIS 1948, at *43-44 (D. Mass. Jan. 19, 2006) (upholding the plaintiffs' §36(b) direct claim); *In re Columbia Entities Litig.*, 2005 U.S. Dist. LEXIS 33439, at *18-19 (D. Mass. Nov. 30, 2005) (citing *Daily Income* for the propositions that § 36(b) provides "for a direct action to be brought by a shareholder, rather than for a derivative action to be brought on behalf of the corporation," and that "regardless of state law, Section 36(b) did not provide for a derivative action because the right of action was not one that could be asserted by the corporation itself"); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 373 n.16 (D. Mass. 2005) ("As the Supreme Court determined in *Daily Income* [...], a shareholder's §36(b) 'suit on the fund's behalf was not a derivative' one in the sense that the shareholder was seeking to enforce a cause of action that the fund had but refused to enforce on its own.'"); *Strigliabotti v. Franklin Res., Inc.*, 2005 U.S. Dist. LEXIS 9625, at *25 (N.D. Cal. Mar. 7, 2005) (finding under *Daily Income* that the Rule 23.1 derivative action requirements do not apply to a §36(b) claim); *In re Mut. Funds Inv. Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d 845, 867 n.22 (D. Md. 2005) (hereinafter "*Janus*") (noting, in a coordinated action involving class and derivative tracks, a disagreement between class and derivative counsels' positions regarding the proper party to pursue the §36(b) claim, and deferring resolution of the issue, but assigning responsibility for taking discovery on, and otherwise pursuing, the §36(b) claim to class counsel; *Krantz v. Fidelity Mgmt. & Research, Co.*, 98 F. Supp. 2d 150, 157-58 (D. Mass. 2000) ("A shareholder has a direct private cause of action under §36(b) . . .").

725 (S.D. Tex. 1996) ("[A §36(b)] claim can only be brought by a shareholder in a direct action.") (citing *Daily Income*).[9]

## II.   PLAINTIFFS HAVE STATED A CLAIM UNDER §36(b)

### A.   Defendants Have Waived Any Substantive Challenge to Plaintiffs' §36(b) Claim, Which Plaintiffs Have Properly Pleaded

Defendants do not challenge the underlying substance of Plaintiffs' §36(b) claim in their motion. Instead, they state that they will "seek leave to supplement" their motion in order to assert any such substantive challenge should the Court find that Plaintiffs' §36(b) claim is direct rather than derivative. Def. Br. at 16. In other words, if Plaintiffs prevail on this motion to dismiss, Defendants want another bite at the apple. However, this is procedurally improper, not to mention unfair. Fed. R. Civ. P. 12(g) expressly prohibits Defendants from filing a second pre-answer motion to raise any such defense.[10]

---

[9] Defendants' reliance on *In re Eaton Vance Mutual Funds Fee Litigation,* 2005 U.S. Dist. LEXIS 32094 (S.D.N.Y. Dec. 6, 2005) (Def. Br. at 15), is misplaced because the defendants had conceded that a §36(b) claim was direct, and the court noted during oral argument that the issue was not in dispute. *See* 2005 U.S. Dist. LEXIS 32094, at *29 ("the [c]ourt did not rule on this argument"). Defendants also rely on *Burks v. Lasker,* 441 U.S. 471 (1979), and *Olmsted v. Pruco Life Insurance Co.*, 283 F.3d 429 (2d Cir. 2002). Def. Br. at 15. *Burks* does not discuss whether §36(b) is direct or derivative, and *Olmsted* dealt with different sections of the ICA.

[10] *See Burstein v. State Bar of Ca.*, 693 F.2d 511, 513 n.2 (5th Cir. 1982) ("Fed. R. Civ. P. 12(g) provides that a party may only make one rule 12(b) motion (with exceptions in rule 12(h)(2) which are not relevant here). Failure to raise all possible grounds in the first motion waives those not mentioned."). Federal Rule of Civil Procedure 12(g) provides that, "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a) [*e.g.*, an answer], or by motion for judgment on the pleadings, or at the trial on the merits."

Defendants are not permitted serial opportunities to attack the same complaint.[11]  *See*

Moore's Federal Practice 3d, § 12.21 ("Often possible or alternative defenses may seem

inconsistent or mutually exclusive, but that does not entitle a party to advance them piecemeal.").

If Defendants wished to challenge the §36(b) claim on substantive grounds, they should have done

so in the instant motion.  They cannot, in violation of Rule 12(g), simply proclaim that they

reserved for themselves the ability to file another Rule 12(b)(6) challenge.  In fact, permitting

Defendants to submit an additional motion would only serve to further prolong these proceedings

and waste the Court's and the parties' time and resources.[12]  Accordingly, the Court should hold

that Defendants have waived any and all opportunities to challenge the substance of Plaintiffs'

§36(b) claim, and are prohibited from filing an additional Rule 12(b)(6) motion.[13]

**B.    Recent Authority Confirms the Sufficiency of Plaintiffs' §36(b) Allegations**

Defendants do not challenge the sufficiency of Plaintiffs' §36(b) claim because Plaintiffs'

allegations satisfy the Rule 8 pleading requirements by setting forth "a short and plain statement of

the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 512 (2002).  Plaintiffs allege that Defendants charged and received increased fees and

compensation due to the growth in the Funds' assets through their asset-based fees, even

---

[11]  Even if the Court ruled the §36(b) claim is derivative, it would not necessarily mean that Plaintiffs would need to file an amended complaint since there is no demand requirement.  Nonetheless, even if the Court were to require an amended complaint under these circumstances, this would not permit Defendants to raise any defenses that were potentially available to them, but they chose not to raise. *See Harris Bank Naperville v. Pachaly*, 902 F. Supp. 156, 157 (N.D. Ill. 1995) ("[T]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment.").

[12]  Moreover, fundamental fairness dictates that Defendants cannot raise a new issue on reply. *See CIA. Petrolera Caribe, Inc. v. ARCO Caribbean, Inc.*, 754 F.2d 404, 409-10 (1st Cir. 1985) (summary judgment context).

[13]  Defendants' oblique reference to an August 2005 Order in *Berdat* grossly misstates what that Order held.  Def. Br. at 15-16.  The decision upon which Defendants rely made no ruling on the sufficiency of the *Berdat* plaintiffs' complaint, but simply allowed them to *replead* their allegations of excessive fees, without giving reasons for granting such leave.  It therefore provides no support for dismissal here.  In fact, the *Berdat* defendants only recently, on January 18, 2006, filed a motion to dismiss the amended complaint.

though Defendants *provided no corresponding increase in services or benefits*, leading to a disparity between the fees paid and services rendered. Defendants grew the Funds through shelf space agreements with brokers, including: (a) cash payments to brokers in return for the brokers' agreement to promote sales of Fund shares;[14] (b) the directing of Fund portfolio brokerage to brokerage firms in return for agreements by the brokers to promote the shares of the Funds; and (c) excessive Soft Dollar commission arrangements with brokers designed to compensate them for promoting shares of the Funds, all of which benefited Defendants rather than Fund owners.

Although an increase in mutual fund assets can benefit investors through economies of scale that decrease the expenses of operating such funds on a per share basis, Defendants failed to reduce their fees to pass on the economies of scale to the Fund investors. Instead, they retained the windfall of the economies of scale for their own benefit. In other words, Plaintiffs paid and Defendants received "something for nothing," and the fees were thus disproportionate to the services rendered under §36(b). *See, e.g.,* ¶¶3-5, 77, 80, 82, 88, 128, 143, 172(f), 174(f) & (h), 201, 229-232.

Numerous courts have sustained similar allegations that the defendants were growing the funds (through kickbacks, etc.) without reducing their fees from the benefits of economies of scale

---

[14] Defendants incorrectly state that "[t]he SEC has recognized that [such so-called] revenue sharing arrangements are permissible and legal." Def. Br. at 2 n.6. On the contrary, on March 23, 2005, the SEC fined and censured Citigroup for kickbacks its subsidiary Smith Barney had received from AIM (*i.e.*, the Defendants herein) and other mutual fund companies. The SEC stated in its Cease-and-Desist Order that customers "*were not provided with sufficient information to appreciate the dimension of the conflict of interest* the revenue sharing program created." http://www.sec.gov/litigation/admin/33-8557.pdf, at ¶13 (emphasis added) (emphasis added). Moreover, revenue sharing payments are not permissible or legal if investment advisers cover such payments by shifting expenses to shareholders through management fees that are excessive under ICA §36(b), which Plaintiffs have alleged here. *See* Memorandum of Paul F. Roye, SEC Division of Investment Management, to SEC Chairman William H. Donaldson, at 66 (June 9, 2003), available at http://financialservices.house.gov/media/pdf/061803kanememo.pdf ("[R]evenue-sharing payments do not involve an indirect use of a fund's assets for distribution if the fund's investment adviser makes the payments from the profits of its investment advisory fee that are 'legitimate' or '*not excessive,*' *i.e.*, if they are derived from an investment advisory contract that *does not result in a breach of the investment adviser's fiduciary under section 36(b) of the 1940 Act.*") (emphasis added).

or otherwise providing additional services, making the fees excessive under §36(b).  In *Forsythe*,

the District of Massachusetts just last week upheld a §36(b) claim with allegations nearly identical

to those in this case.  *See* 2006 U.S. Dist. LEXIS 1948, at *44.[15]  Judge O'Toole concluded that

the plaintiffs' §36(b) claim satisfied the pleading standards of Rule 8:[16]

> I conclude that [the plaintiffs' §36(b) claim] sufficiently comports with Rule 8's
> pleading standard.  It alleges . . . that the defendants have caused the MFS Funds
> to pay improper "kickbacks" to brokers in exchange for steering clients into MFS
> Funds via "shelf space arrangements," to pay excessive commissions under the
> guise of "soft dollars," to engage in improper "directed brokerage" arrangements,
> and to make improper "hard dollar" revenue sharing payments that were then
> reimbursed out of MFS Fund assets.  There are also illustrating allegations
> regarding these types of arrangements with one particular broker-dealer, as well as
> allegations that a large number of other broker-dealers were similarly involved.
> The plaintiffs also give adequate notice of how these arrangements are alleged to
> have benefited the defendants while at the same time harming the MFS Funds and
> their investors.  The plaintiffs allege that as the MFS Funds grew the defendants
> failed to pass on economies of scale from that growth by failing to reduce fees
> accordingly [and] that the advisory fees MFS Company received were wrongfully
> inflated by shifting to the MFS Funds and their investors costs that should
> rightfully have been borne by the MFS Company.

*Id.* at *42-43 (citations omitted).  These precise allegations which the *Forsythe* court upheld also

appear in Plaintiffs' Complaint. *See, e.g.*, ¶¶91-116 (kickbacks paid to brokers); ¶¶2, 75, 91-92,

117, 126 (financing the kickbacks to brokers with payments from Fund investor assets); ¶144-45

(soft dollars); ¶¶125-43 (directed brokerage arrangements); ¶¶3, 4, 8, 67, 79, 92, 120, 120-24, 128-

29, 143, 201, 216, 229 (no benefit to Fund investors); ¶3, 4, 75-88 (economies of scale); ¶67, 117,

214(f) (inflated advisory fees).[17]

---

[15]  Plaintiffs disagree with the remainder of the *Forsythe* decision, in which the court dismissed the rest of the plaintiffs' claims, which are similar to those asserted here.

[16]  Judge O'Toole acknowledged the factors established by the Second Circuit in *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982), for analyzing a §36(b) claim but held that *Gartenberg* "does not establish a heightened pleading standard for §36(b) claims and the plaintiffs' failure to plead facts that specifically address the *Gartenberg* factors is not in itself a ground for dismissal." 2006 U.S. Dist. LEXIS 1948, at *36 (citing *Wicks v. Putnam Inv. Mgmt. LLP*, 2005 U.S. Dist. LEXIS 4892, at *13 (D. Mass. Mar. 28, 2005)).

[17]  The *Forsythe* court agreed with the plaintiffs that they could challenge the lawfulness of payments financed from fund investor assets, such as 12b-1 fees, soft dollar payments, and excessive broker

Continued on next page

The *Forsythe* court further stated:

> The plaintiffs' contention is that the fees were excessive because they were
> unauthorized and taken from fund assets to the benefit of the defendants only, not
> the fund. The plaintiffs' theory is that fees that amount to "something for nothing"
> are inherently excessive. At least one court concluded [that fees] that were in
> essence "something for nothing" could represent a disproportional relationship
> between fees and services. *See Jones v. Harris Assocs., L.P.*, Civ. No. 04 C 8305,
> 2005 WL 831301, at *3 (N.D. Ill. Apr. 7, 2005). For present purposes, the
> plaintiffs' pleading of this claim is sufficient to survive a motion to dismiss.

*Id.* at *43-44. In this case, as in *Forsythe*, Plaintiffs allege that Defendants kept for their sole

benefit the windfall of increased fees as the Fund assets grew (which was due to Defendants'

kickbacks to brokers financed through Fund investor assets) but failed to reduce their fees or

perform more services. This amounts to receiving "something for nothing," rendering the fees

disproportionate to the services rendered.

In *Dreyfus*, 2005 U.S. Dist. LEXIS 29152, another mutual fund case factually similar to

the instant action, the court upheld the §36(b) claim where the plaintiffs alleged that savings

realized from economies of scale were not passed on to investors where growth of the funds was

due to kickbacks for shelf space paid to brokers. *Id.* at *27. In *Strigliabotti*, also a mutual fund

excessive fee case, the court upheld the plaintiffs' §36(b) claim, alleging that the funds grew

dramatically in size without any accompanying change in the nature of services rendered and that

defendants retained excess profits resulting from economies of scale. 2005 U.S. Dist. LEXIS

9625, at *4. The court concluded that these facts were sufficient to allege a disproportionate

relationship between fees and services rendered, and were therefore sufficient under the "liberal

pleading standard" of Rule 8. *Id.* at *12.

---

commissions, as part of their §36(b) claim even though these payments might "not be 'advisory fees' in the
most literal sense." *Forsythe*, 2006 U.S. Dist. LEXIS 1948, at *40 (citing, *inter alia*, *Meyer v.
Oppenheimer Mgmt. Corp.* 895 F. 2d. 76, 82-83 (2d. Cir. 1985)).

In *Wicks*, 2005 U.S. Dist. LEXIS 4892, the plaintiff's §36(b) claim included the allegation that "[t]he defendants . . . direct the payment of excessive commissions to securities broker-dealers to execute trades for the Funds in exchange for 'soft dollars' (said to be a form of kickback) that benefit the defendants and not the Funds." *Id.* at *3 (emphasis added). The plaintiff alleged that, despite the fact that the nature and quality of the services the defendants rendered had not changed, "defendants continue[d] to receive larger fees . . ., capturing all benefits from the economies of scale for themselves." *Id.* Such allegations were sufficient to survive the defendants' motion to dismiss.[18] *Id.* at *13. As in *Wicks*, Plaintiffs have alleged that Defendants violated §36(b) because the increasing asset-based fees Defendants collected due to the growth in assets were not accompanied by increased services or decreased fees. Defendants captured a windfall for themselves -- a classic § 36(b) violation. *See, e.g.*, ¶¶4, 8, 76-80, 92, 201, 229 (alleging inflated fees were charged without any corresponding benefit to investors); ¶¶120-124 (economies of scale).

In *Jones v. Harris Assocs.*, the court upheld similar §36(b) allegations, stating:

> [While §36(b)] does not explicitly refer to excess profits, the scenario described in the complaint could indicate a setting in which [the defendant] is retaining unearned fees. *In other words, if the money [the defendant] is receiving can be fairly characterized as a fee and it is in essence something for nothing, clearly that would represent an actionably disproportional relationship between the fees paid and the services rendered …*

2005 WL 831301, at *3 (emphasis added). In denying the defendants' motion to dismiss the plaintiffs' §36(b) claim, the *Jones* court noted that it was "in no position based on the allegations of the complaint to determine what services Plaintiffs received from [the defendant] or how much

---

[18] Plaintiffs also allege that Defendants charged higher sub-advisory fees to unaffiliated fund investors than they charged the AIM Funds investors for advisory fees. *See* ¶¶89-90 (describing how Defendants' fees regarding the AIM Funds, such as the Aggressive Growth Fund, the Basic Value Fund and the Blue Chip Fund, were higher than fees charged by the investment advisers for sub-advisory fees for unaffiliated funds).

11

they can fairly be worth." *Id.* at *2. The court stated that it was "not inconceivable that the fees charged ... were so disproportionate to the value of the services rendered that a violation of §36(b) would lie." *Id.* As such, the court found that the allegations were "sufficient to allow Plaintiffs' case to progress beyond the pleading stage." *Id.* at *3. As in *Jones*, Plaintiffs here have adequately alleged how the fees charged were excessive (*i.e.*, "something for nothing") which "would represent an actionably disproportional relationship between the fees paid and the services rendered," *id.*, thereby stating a claim under §36(b).

In *Pfeiffer v. Bjurman, Barry & Associates*, 2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 26, 2004), another mutual fund case, the plaintiffs' §36(b) claim was upheld where they alleged that the defendants violated their fiduciary duty by receiving excessive promotion, distribution and servicing fees. As further explained in *Pfeiffer*:

> To prevail in this [§36(b)] action, the plaintiff will have to demonstrate that the fees were in fact excessive ... ***Whether the plaintiff can meet this burden will be decided at a later stage of this action. The plaintiff's failure to do so in his pleading is not a ground for dismissal.***

*Id.* at *18 (emphasis added).[19]

Additionally, courts have found that §36(b) claims are further supported by allegations that the directors were not independent or conscientious. *See Dreyfus,* 2005 U.S. Dist. LEXIS 29152, at *27-28; *Dumond v. Mass. Fin'l Servs. Co.*, 2006 U.S. Dist. LEXIS 1933, at *10-11 (D. Mass. Jan. 19, 2006) (upholding §36(b) claim based in part on allegations that trustees did not receive or request from defendants enough information to properly evaluate defendants' fees); *Krinsk v.*

---

[19]  Other courts have condoned an even more liberal standard than *Pfeiffer*. In *Green v. Fund Asset Management, L.P.*, 19 F. Supp. 2d 227, 234 (D.N.J. 1998), the court sustained a § 36(b) claim where plaintiffs did not allege that the advisory fees were "excessive" or "disproportionate."  The court found that § 36(b) "is ***not expressly limited to situations in which the advisory fees received by an investment adviser were excessive, disproportionate or otherwise unreasonable.***" *Id.* (emphasis added). Thus, "[t]he statute encompasses the receipt of fees by an investment adviser in violation of the adviser's fiduciary duty." *Id.*

12

*Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989). As explained in *Pfeiffer,* whether the

trustees were independent or conscientious is "of particular importance" because:

> The expertise of the trustees, whether they are fully informed, and the extent of care
> and conscientiousness with which they perform their duties are ***among the most***
> ***important factors*** to be examined in evaluating the reasonableness of compensation
> under section 36(b).

2004 U.S. Dist. LEXIS 16924, at *14 (emphasis added; quotation omitted); *see also Gartenberg*,

694 F.2d at 930 (trustees' expertise, care and conscientiousness and "whether they are fully

informed about all facts bearing on the adviser-manager's service and fee" are important factors in

deciding whether they and the adviser breached their fiduciary duty under §36(b)). The Complaint

contains similar allegations regarding the AIM trustees' lack of independence and

conscientiousness that support Plaintiffs' §36(b) claim. *See, e.g.,* ¶¶63-64, 199-203(a)-(i). These

allegations support a §36(b) claim against the Investment Adviser and Distributor Defendants as

well as the Director Defendants.[20]

---

[20] The Independent Trustee Defendants argue that they are not liable under §36(b) because they allegedly
were not the recipients of the fees at issue here. Tr. Br. at 1-2. As explained in *Gartenberg*, a mutual fund
trustee is an appropriate defendant in a §36(b) claim:

> [T]he expertise of the independent trustees of a fund, whether they are fully informed about
> all facts bearing on the adviser-manager's service and fee, and the extent of care and
> conscientiousness with which they perform their duties are important factors to be
> considered in deciding whether ***they* and the adviser-manager are guilty of a breach of**
> **fiduciary duty in violation of §36(b).**

*Gartenberg*, 694 F.2d 923, 930 (2d Cir. 1982) (emphasis added). Other courts have confirmed that, at the
pleading stage, an allegation that "the defendants have directly ***or indirectly*** received ... compensation or
payments of a material nature" states a claim under §36(b) within the requirement of §36(b)(3) that the
action be against "the recipient of . . . compensation or payments [for investment advisory services]."
*Halligan v. Standard & Poor's/Intercapital, Inc.*, 434 F. Supp. 1082, 1084 (E.D.N.Y. 1977) (upholding
§36(b) claim against fund directors). Here, Plaintiffs have satisfied this standard by alleging that the
Director Defendants violated §36(b) because they had a fiduciary duty concerning compensation or
payments paid by AIM Funds investors to the Investment Adviser and Distributor Defendants, which they
breached by approving the excessive fees charged to Fund investors. The duties of the Director Defendants
-- the approval of the advisory contract, the supervision of the advisers' management, review of distribution
arrangements, and providing information regarding these advisory services to shareholders -- are part of
what shareholders pay for in obtaining advisory services. *See* ¶¶69-70, 188-202; *see also, e.g.,* ¶¶8, 203,
230 ("the [Trustee] defendants themselves received material compensation or payment for their duties in
being the appointed watchdogs over the other Defendants, which they breached"). The Director
Defendants' substantial compensation is for these advisory services provided to shareholders. The Director

Continued on next page

All of these recent decisions demonstrate that Plaintiffs' §36(b) claim should be upheld. Defendants' failure to challenge the sufficiency of these allegations under Rule 12(b)(6) compels the conclusion that Plaintiffs have adequately pleaded this claim.

## III.     PLAINTIFFS HAVE PROPERLY PLEADED DIRECT CLAIMS UNDER STATE LAW AND ICA §§34(b), 36(a) AND 48(a)

Relying entirely upon language in Fund Prospectuses, Defendants argue that Plaintiffs' state law and ICA §§34(b), 36(a) and 48(a) claims are derivative because the "contested commissions, fees, etc. were paid by *the Funds* out of *the Funds'* assets." Def. Br. at 6-7 (emphasis added). However, for the reasons discusses below, Defendants are wrong.

Whether claims under the ICA (other than §36(b)[21]) are direct or derivative is decided by the fund's state of organization, unless application of those rules would frustrate the specific federal policy objectives underlying the ICA. *See Kamen*, 500 U.S. at 108.[22] The Funds in this case are all Delaware statutory trusts, and Delaware law most likely applies. *Accord* Def. Br. at 6 n.13. Although the Funds are statutory trusts, should this Court choose to apply Delaware corporate law by analogy, whether an action is direct or derivative would turn solely on: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

---

Defendants, however, breached their fiduciary duties by, *inter alia*, approving and implementing the payment by shareholders of excessive advisory and Rule 12b-1 distribution fees, despite the lack of any benefit to Fund investors from payment of those fees. *See, e.g.*, ¶¶69, 81, 118, 120. Accordingly, a §36(b) claim is appropriately brought against the Director Defendants.

[21] Defendants argue that Plaintiffs' §36(b) claim is "derivative" (Def. Br. at 14) but, as discussed above, the Supreme Court has held otherwise.

[22] As stated by ICA §1, the federal policy underlying the ICA is the protection of mutual fund investors from fund directors, investment advisers, distributors, brokers and others who organize, operate and manage mutual funds in their own, rather than the shareholders', best interests. *See* 15 U.S.C. § 80a-1(b)(2). Under Supreme Court authority, this Court cannot determine whether Plaintiffs' claims are direct or derivative under state law in a manner that "is inconsistent with the policies underlying the federal statute." *Kamen*, 500 U.S. at 108.

Moreover, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039.

Consistent with *Tooley*, Plaintiffs have stated direct claims. Plaintiffs suffered the harm because, as the Funds' public filings actually state, the redeemable nature of Fund securities means that fees are borne directly by investors. Defendants breached duties owed directly to Plaintiffs -- *i.e.*, the duty of full and accurate disclosure in the Funds' public filings, and the duty to prudently invest and manage the investors' assets. The Funds were also not harmed by, but benefited from, Defendants' conduct through increased assets in the aggregate.

**A.    Fees Paid from "Fund" Assets Are Borne Directly by Mutual Fund Investors**

Despite Defendants' contention that the language in their public filings demonstrates that the fees were paid by the Funds, such filings actually support Plaintiffs' contention that, in reality, a mutual fund is a pure pooling of assets owned by the investors. For example, one filing states that: "[b]ecause the [AIM Small Cap Growth Fund] pays these fees out of its assets on an ongoing basis, over time these fees will increase the cost of *your* investment and may cost *you* more than paying other types of sales charges." ¶184 (emphasis added).[23] This language confirms that the excessive fees are borne directly by investors and Defendants are not entitled to the contrary inference in their favor on this motion.

A mutual fund such as an AIM Fund "is a pool of assets … belonging to the individual investors holding shares in the fund." *Burks v. Lasker*, 441 U.S. 471, 480 (1979) (citation omitted); *Kamen*, 500 U.S. at 93. Such investment differs from investing in a traditional corporation because:

---

[23]  As Defendants admit, the public filings for each and every Fund "contain the same statements with no material differences" (Def. Br. at 8 n.14), thus demonstrating Defendants' common course of conduct across all Funds.

It is, in essence, a service contract between the investor and the investment company whereby the investor places his money in the hands of the investment company in expectation of realizing a financial gain.

*Baum v. Investors Diversified Services, Inc.*, 409 F.2d 872, 874 (7th Cir. 1969).

In *Strigliabotti*, a similar mutual fund excessive fee case directly on point, the court found that numerous state claims (including those asserted by Plaintiffs here) alleging excessive mutual fund fees were direct.[24] 2005 U.S. Dist. LEXIS 9625, at *25. The *Strigliabotti* court held that the unique nature and structure of mutual funds demonstrates that "financial harm from overcharges is harm to the individual investors, who own the Funds' assets and bear its expenses directly on a pro rata basis." *Id.* Citing *United States v. Cartwright*, 411 U.S. 546 (1973), the court noted that a mutual fund issues redeemable securities, and the value of mutual fund shares is computed daily "by taking the market value at the time of all portfolio securities, adding the value of other assets and [subtracting] liabilities, and dividing the result by the number of shares outstanding." *Id.* at *24; *see* ¶¶10, 183 (describing how the AIM Funds issue "redeemable securities"); *see also* 15 U.S.C. § 80a-2(a)(32) (defining "redeemable security"). The court thus found that "[f]ees . . . are paid by individual investors." *Id.* As a result, the court held that "plaintiffs do not allege injury to the Funds themselves, but rather individual injury." *Id.* at *25.

In sum, mutual fund shares do not trade at a price set by a public market. ¶183. Rather, as "redeemable securities," they are bought from the fund and sold back to the fund at the Net Asset Value ("NAV") of the fund per share. *Id.* The value of an investor's mutual fund is determined by subtracting a fund's liabilities from its assets to arrive at the fund's NAV. *Id.* Here, the

---

[24] In *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, at *5-6, although the state law claims upheld as direct were brought under California law, the court stated that the result would be the same under Delaware law, where certain of the Franklin funds at issue in that case were also organized, and which applies here. *Id.* at *25. Plaintiffs here bring two types of state law claims upheld as direct in *Strigliabotti*: breach of fiduciary duty and unjust enrichment. *See* ¶¶248-58. Moreover, it is well-settled that a plaintiff's allegations of a breach of fiduciary duty to the shareholders allow that plaintiff to bring a direct cause of action. *Malmros*

Continued on next page

excessive fees about which Plaintiffs complain immediately reduced the Funds' NAV's,

decreasing the amount by which each shareholder is entitled to redeem his or her shares. This has

a direct impact on shareholders. *See* ¶¶181-85.

     In *Strougo*, the court upheld direct claims (under §§36(a) and 48) where there had been a

"reduction in the net equity value of the shares," but an overall increase in assets, as is alleged

here. *See* 282 F.3d at 174. *Strougo* also makes clear that shareholders may bring a direct action

even when all shareholders were injured in the same manner:

> There may be acts that injure shareholders equally but do not injure the corporation
> at all; indeed they might be seen as benefitting [sic] the corporation in the sense
> that they might increase its assets. The shareholders, despite their undifferentiated
> harm, could not bring a derivative suit -- nor could the corporation recover for them
> -- because no such suit could succeed without a showing of injury to the
> corporation. In such circumstances, only a direct suit by shareholders can redress
> the harm to them, even though the harm was suffered by the shareholders equally.

*Id.* at 172. The *Strougo* court stated that a direct claim exists where, as here, shareholders suffered

injury, although the misconduct might have actually increased the funds' assets:

> ... ***the acts that allegedly harmed the shareholders increased the Fund's assets.***
> And as for the non-participating shareholders, the reduced value of their equity did
> not derive from a reduction in the value of the Fund's assets, but rather from a
> reallocation of equity value to those shareholders who did participate.
>
> Thus ... it would appear that the alleged injuries were to the shareholders alone and
> not to the Fund. These harms therefore constitute "distinct" injuries supporting
> direct shareholder claims under Maryland law. ***The corporation cannot bring the
> action seeking compensation for these injuries because they were suffered by its
> shareholders, not itself.***

*Id.* at 175 (emphasis added). Here, Defendants' activities benefited the Funds as the Funds grew

in size, but harmed individual shareholders through excessive fees, the effect of which was to

reduce the redemption value of their shares. *See, e.g.,* ¶77 (alleging, by example, the significant

---

v. Jones, 2004 U.S. Dist. LEXIS 4371, at *12 (E.D. Pa. Feb. 27, 2004); *Bingham v. Zolt*, 66 F.3d 553, 562
(2d Cir. 1995).

growth of the AIM Large Cap Growth Fund without any corresponding benefits to shareholders).

Consistent with Delaware law, Plaintiffs have plainly alleged direct harm.[25]

**B.    Plaintiffs' Omission Claim Under ICA §34(b) Is Direct**

Plaintiffs have alleged that the Funds' public filings did not properly "disclose to investors

material information about the mutual funds and the fees and costs associated with them." ¶159;

*see also* ¶¶3, 81, 82-90, 117-145, 157-180 (alleging omission regarding excessive fees, including

specific examples of disproportionate increases in fees without corresponding increases in

services).  Claims arising from alleged omissions are direct in nature.  *See* ¶¶216-17.

In *Eaton Vance*, although the court dismissed the §34(b) claim for lack of a private right of

action, the court recognized that claims for material omissions allege a direct harm:

> Count One [(the §34(b) claim)] alleges an injury directly to the investors who,
> based on the alleged misrepresentations and omissions, continued to invest in the
> Eaton Vance Funds and were thereby injured.  Count One alleges an injury to the
> investors separate and distinct from any injury to the Eaton Vance Funds and it is
> properly brought as a direct claim rather than a derivative claim.

---

[25]  Defendants rely upon *Hogan v. Baker*, 2005 U.S. Dist. LEXIS 16888, at **6-15 (N.D. Tex. Aug. 12,
2005), to argue that, where investors seek recovery of Fund assets, such claims are derivative.  Def. Br. at
7.  Unlike the instant case, *Hogan* did not involve the growth of Fund assets, resulting in an aggregate
benefit to the Funds but harm to shareholders individually.  Instead, in *Hogan*, AIM Funds investors had
claimed that the defendants had failed to recover class action settlement payments for the Funds' benefit,
resulting in an overall *decrease* in Fund assets.  *Id.* at *4.  Defendants also cite *Franklin*, 388 F. Supp. 2d
451, and *In re Davis Selected Mutual Funds Litigation*, 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. Oct. 11,
2005), to argue that claims based upon the allegedly improper use of fund assets for "shelf space"
arrangements are derivative.  Def. Br. 7.  Those courts did not adequately consider the overall benefit to
the mutual funds from their asset growth resulting from "shelf space" payments from fund investors' assets,
resulting in increased fees but no increased services or other benefits for investors.  Plaintiffs believe that
*Franklin* was wrongly decided in that regard and should not be followed here, and note that the plaintiffs in
*Davis* have appealed that decision.  Defendants also cite without discussion *In re J.P. Morgan Chase & Co.
Shareholder Litigation*, 2005 Del. Ch. LEXIS 51, at *22-23 (Del. Ch. Apr. 29, 2005).  Def. Br. at 7.  *JP
Morgan* did not involve mutual funds, but the alleged breach of directors' fiduciary duty of disclosure in
connection with the merger of Bank One and JP Morgan Chase, and is thus factually inapplicable here.  On
appeal, the *JP Morgan* plaintiffs have argued that a derivative award on behalf of the combined entity
would unjustly enrich former BankOne shareholders and not provide an adequate remedy for former JP
Morgan Chase shareholders, and that Delaware courts have consistently found claims for the breach of
fiduciary duty of disclosure in connection with a shareholder vote to be direct.  *See, e.g., In re Tri-Star
Pictures, Inc., Litig.*, 634 A.2d 319 (Del. 1993); *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996).

380 F. Supp. 2d at 235; *see also Chesbrough v. Woodworth*, 244 U.S. 72, 77 (1917) ("The damages in such a case are personal to the plaintiff. He sues in his own right, not for the association."). Plaintiffs' §34(b) claim is therefore direct. *See* ¶¶211-218.

Defendants rely on *Smith v. Waste Management*, 407 F.3d 381, 385 (5th Cir. 2005), which is clearly distinguishable. Def. Br. at 7, 10. *Smith* concerned a drop in the price of the defendant's stock following the revelation of lowered earnings. *Smith* did not deal with mutual funds or the ICA. Moreover, upon finding the plaintiff's claims to be derivative, the *Smith* court expressed concern that, if Smith's claims were direct, "Smith would be allowed to benefit (by obtaining a judgment against Waste Management) at the expense of all other shareholders who are similarly situated." 407 F.3d at 385. Unlike *Smith*, Plaintiffs here are not suing to recover assets *from the Funds*. Instead, they are seeking recovery from the Investment Adviser Defendants and their affiliates. Success on a direct claim would thus not injure any current shareholders of the Funds. This fact clearly distinguishes *Smith* from the facts in this case.[26]

---

[26] Additionally, relying upon *Tooley*, the court in *Smith* held that because "the harm that befell Smith...was a harm that befell all...stockholders equally," the corporation rather than the plaintiff had been injured, and the claim was derivative. 407 F.3d at 385. However, in *Tooley*, the Delaware Supreme Court expressly rejected prior case law requiring that a shareholder must have suffered a "special injury" -- *i.e.*, an injury distinct from that suffered by other shareholders -- in order to bring a direct action. *Id.* at 1038 n.21. *Tooley* also rejected precedent holding that "an action cannot be direct if all stockholders are equally affected or unless the stockholder's injury is separate and distinct from that suffered by other stockholders." *Id.* at 1038-39. As such, in *Smith*, the fact that all Waste Management shareholders suffered the same harm, which is not entirely clear, should not have formed a basis for the *Smith* court's decision that the alleged harm was derivative.

**C.**     **The Director Defendants' Improper Transfer of Fund Investor Assets to the Investment Adviser and Distributor Defendants Gave Rise to a Direct Cause of Action, and Pre-Suit Demand on the Directors Was Not Required**

Under Delaware law, where trustees,[27] in breach of trust, transfer property held in trust to a third party (here, the Investment Adviser and Distributor Defendants) in return for no consideration, or where the third party has notice of the breach of trust, this is a direct harm to the trust's beneficiaries (here, Plaintiffs and other members of the Class). Scott, The Law Of Trusts - Fourth Edition, §294.1 (Aspen 2001) ("Scott on Trusts"). Accordingly, Plaintiffs may maintain a direct action against the Investment Adviser and Distributor Defendants without having first made a demand on the Fund trustees.

The AIM Funds are organized as Delaware statutory trusts, yet Defendants ignore a distinction between two general fact patterns in trust law: *in the first*, a third party improperly takes assets held in trust without the authorization of the trustees; and *in the second*, the trustees themselves make the improper transfer of trust property to the third party. Austin W. Scott, the leading commentator on trust law, has summarized in the following terms the need for a demand on the trustees in the first fact pattern, which does not apply here:

> [I]f a third person commits a tort with respect to the trust property, the trustee and not the beneficiary is ordinarily the proper party to bring an action against him. *The beneficiary can maintain a suit in equity against the tortfeasor only if the trustee improperly refuses or neglects to bring an action, or if the trustee cannot be subjected to the jurisdiction of the court, or if there is a vacancy in the office of trustee.*

Scott on Trusts, §294.1 (emphasis added).

---

[27] Although Plaintiffs have referred in the Complaint to the Director Defendants as "directors of the AIM Funds and/or the trusts or entities that consisted of the AIM Funds during the Class Period" (¶69), they acted as trustees of the AIM Funds, which are organized as Delaware statutory trusts. The ICA uses the term "director" to mean either a director or a trustee. *See* 15 U.S.C. § 80a-2(a)(12); *see also* ¶2, n.1.

By contrast, where, under the second fact pattern, as here, plaintiffs allege that the trustees have improperly authorized the transfer of trust (*i.e.*, investor) assets to the third party in return for no consideration, the harm to the beneficiaries is direct:

> In this situation the third person is not acting adversely to the trustee . . . The wrong that he commits is a wrong to the beneficiaries in taking or retaining the property after he has notice of the breach of trust, and he thereby incurs a liability to them unless, indeed, he is a bona fide purchaser. In this situation, therefore, the beneficiaries can maintain a suit in equity against the transferee, if he took ***with notice of the breach of trust or paid no value*. . . . *Primarily the liability of the transferee is to the beneficiaries rather than to the trustee, and the right of the beneficiaries against the transferee is a direct right and not one that is derivative through the trustee***.

Scott on Trusts, §294.1 (emphasis added). Thus, where a third party has "paid no value" for the receipt of trust property from trustees who have breached their duties to the beneficiaries in making such transfer, or with knowledge of such breach, an action by the beneficiaries to regain such property is direct in nature, and a pre-suit demand on the trustees is not required.[28]

In his analysis, Scott cites to *Booth v. Greer Investment Co.*, 52 F.2d 857 (N.D. Okla. 1931), *aff'd sub nom.*, 62 F.2d 321 (10th Cir. 1932), where trustees of a ***business trust*** in breach of trust transferred the assets of the trust estate to a corporation, and the beneficiaries brought suit against the corporation and the trustees to restore the trust property. *Id.* at 859. The defendants in *Booth* argued that the plaintiff shareholders of the trust estate could not maintain the action without a pre-suit demand on the trustees to bring an action against the third party corporation. *Id.* at 860. Holding such demand to be unnecessary, the court stated:

> [T]his action is against the corporation and the trustees to have the trust property restored to the trust, and for an accounting against the trustees for alleged mismanagement of the trust estate. ***The contention that the complainants should***

---

[28] *See* Restatement 2d of Trusts, §289 ("If the trustee in breach of trust transfers trust property ***and no value is given for the transfer, the transferee does not hold the property free of the trust***, although he had no notice of the trust.") (emphasis added); *see also* Restatement 2d of Trusts, §288 ("If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of the trust, although he paid value for the transfer.").

21

> *have made demand upon the trustees to bring the action against the corporation*
> *is without merit.*

*Id.* (emphasis added).

Delaware trust law has been expressly incorporated into the law governing Delaware statutory trusts, such as the AIM Funds. *See* 12 Del. C. § 3809 ("the laws of this State pertaining to trusts are hereby made applicable to statutory trusts"). In interpreting the duties that trustees of a statutory trust owe to the trust's beneficiaries, the courts should thus look to trust, rather than corporate, law.[29]  Under Delaware law, trustees such as the Director Defendants charged with investing beneficiaries' assets owe a fiduciary duty to the beneficiaries. *See* 12 Del. C. § 3302 ("When investing . . . and managing property for the benefit of another, a fiduciary shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use . . ."). Thus, under *Tooley*, "the duty breached was owed to the stockholder." 845 A.2d at 1039.

Delaware law recognizes the beneficiaries' right to reclaim trust property from third parties to whom it was transferred in breach of trust. The Delaware code provides that, "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." 12 Del. C. § 3581(a). Remedies for breach of trust include "[c]ompelling the trustee to redress a breach of trust by . . . restoring property" or "voiding an act of the trustee, imposing a lien or a constructive trust on trust property or tracing trust property wrongfully disposed of and recover the property or its proceeds." 12 Del. C. §3581(b).

---

[29] "The general point is that, by providing for trust law to fill the gaps, the modern [statutory business trust] statutes appear to incorporate the *stricter fiduciary standards of trust law instead of corporate law's more relaxed approach*." Robert H. Sitkoff, Symposium: Uncorporation: A New Age?: Trust as "Uncorporation": A Research Agenda, 2005 U. Ill. L. Rev. 31, 37 (emphasis added).

Plaintiffs seek to recover trust (and investor) property. The Director Defendants have authorized payments to the Investment Adviser and Distributor Defendants in breach of trust,[30] and the Investment Adviser and Distributor Defendants have given no value in return. *See, e.g.,* ¶201;[31] *see also* ¶¶4, 8, 76-78, 92, 201, 229 (alleging inflated fees were charged to Fund investors without any corresponding benefit to investors). Such recipients therefore hold the assets for the benefit of the trust beneficiaries -- *i.e.,* Plaintiffs and Class members -- and must return them. *See* Restatement 2d of Trusts, § 292(1) ("If the trustee in breach of trust transfers trust property and no value is paid for the transfer, the transferee can be compelled to restore the property to the trust if he has not disposed of it . . .").

As Scott writes, under these circumstances, pre-suit demand is not required:

> *[I]n a suit brought by the beneficiaries against the transferee to compel him to restore the property to the trust, it is unnecessary to allege or prove that the trustee has improperly neglected or refused to sue the transferee.* There are, indeed, a few cases in which the court speaks as though the beneficiaries could not maintain the suit without such allegations and proof. *In these cases the court failed to notice the distinction between suits brought against a person acting adversely to the trustee, and suits brought against persons to whom the trustee in breach of trust had transferred trust property. In the latter case, because the trustee has already committed a breach of trust in making the transfer, it is unnecessary for the beneficiaries to call on him to undo what he has done.*

Scott on Trusts, §294.1 (emphasis added; footnotes omitted).

## IV.  PLAINTIFFS HAVE STANDING TO ASSERT ALL OF THEIR CLAIMS

As Defendants admit, Plaintiffs have standing to assert their individual claims for damages regarding the nine AIM Funds they own. Def. Br. at 18. Plaintiffs' ability to assert claims as class

---

[30] *See, e.g.,* ¶123 (escalating fees were a red flag to Directors, and Directors failed to terminate plans for excessive 12b-1 fees); ¶172(h) (Directors' abdication of duties), ¶¶8, 118-20 190-96 (Directors' approval of advisory compensation and distribution fees); ¶¶8, 199, 255 (Directors' breach of fiduciary duties).

[31] Here, the Director Defendants were responsible for approving the advisory compensation and distribution fees, and "as a result of the Director Defendants' dependence on the Investment Adviser Defendants for their position and their failure to properly manage the investment advisers, millions of dollars in AIM/INVESCO Funds assets were transferred through fees payable from AIM/INVESCO Funds assets to the Investment Adviser Defendants that were of no benefit to fund shareholders." ¶201.

representatives of shareholders in all of the AIM Funds is not an issue of standing but an issue for

class certification pursuant to Rule 23 and therefore premature to address prior to full briefing on

that motion.[32]  Nevertheless, considerable authority supports Plaintiffs' ability to assert direct,

class claims on behalf of shareholders in the other AIM Funds.

Standing is a prerequisite in any action, *see O'Shea v. Littleton*, 414 U.S. 488, 494 (1974),

and a potential class representative must possess standing to assert an individual claim.  *See Gratz

v. Bollinger*, 539 U.S. 244, 285 (2003).  Once standing has been established, the plaintiff's ability

to represent the class depends solely on whether the requirements of Rule 23 are met.  As stated by

the Supreme Court in *Sosna v. Iowa*:

> A named plaintiff in a class action must show that the threat of injury [in a case
> such as this] is "real and immediate," not "conjectural" or "hypothetical." . . . This
> conclusion does not automatically establish that appellant is entitled to litigate the
> interests of the class she seeks to represent, *but it does shift the focus of
> examination from the elements of justiciability to the ability of the named
> representative to "fairly and adequately protect the interests of the class*."

419 U.S. 393, 402-03 (1975) (emphasis added); *see also Goodman v. Lukens Steel Co.*, 777 F.2d

113, 122 (3d Cir. 1985) ("the issue here is one of compliance with the provisions of Rule 23, not

one of Article III standing"), *aff'd on other grounds*, 482 U.S. 656 (1987).[33]

In *Dreyfus*, plaintiffs who only held two Dreyfus funds were permitted to pursue claims

regarding the entire complex.  As Judge Lancaster explained:

> We do not decide at this stage of the case [*i.e.*, the motion to dismiss stage] how the
> fact that the named plaintiffs are only "security holders" (as required by statute) in

---

[32] *See, e.g., Davis v. Bailey*, 2005 U.S. Dist. LEXIS 38204, at *7 (D. Col. Dec. 22, 2005) ("it is not proper at [the motion to dismiss stage] to determine whether the requirements of [Rule 23] can be satisfied [since t]here has been no briefing on this issue"); *Goldberger v. Bear Stearns & Co.*, 2000 U.S. Dist. LEXIS 18714, at *4 n.1 (S.D.N.Y. Dec. 28, 2000) (whether a purchaser of a certain security may represent purchasers of other securities regarding the same course of conduct is a "question [that] is not presently before the Court because Plaintiffs have not moved for class certification").

[33] Even where courts have addressed this issue in terms of standing, the outcome has been the same, permitting a plaintiff to represent other securities, ERISA plans and mutual funds in addition to his or her own. *See, e.g., Sutton v. Med. Serv. Ass'n*, 1993 U.S. Dist. LEXIS 9763, at *13 (E.D. Pa. July 20, 1993).

24

two of the Dreyfus Funds might affect this case.  To be clear, *we do not find that this is an issue of Constitutional standing.*

2005 U.S. Dist. LEXIS 29152, at *28, n.7 (emphasis added).

In *Janus*, the "[d]efendants contend[ed] that plaintiffs who own shares in a particular fund lack Article III standing to assert claims in connection with other funds in the same family." *Janus*, 384 F. Supp. 2d, at 853 n.4.  However, the District of Maryland deferred ruling on the standing issue instead of addressing it at the motion to dismiss stage, and broadly upheld the plaintiffs' §36(b) claim.  *See id.*

In *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000), in granting the plaintiffs' motion for class certification, the court certified plaintiffs who invested in one mutual fund to represent purchasers in another fund:

> Courts have repeatedly held that on allegations such as these, class representatives need not have invested in each security so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security.  Courts have not addressed this concern vis a vis the doctrine of standing, but rather have examined such concerns pursuant to Rule 23(a)(3)'s typicality requirement.

*Id.* at *8.  In *Dreyfus Aggressive Growth*, certification was supported by allegations that "both Funds made similar misrepresentations and omissions in…[filings] used to sell the Funds" and "the claims of the named plaintiffs and prospective class members [were] based on the same legal theories." *Id.* at *14.  Here, Plaintiffs' omission claim arises from public filings that are all substantially identical to one another across the entire Fund complex. *See, e.g.*, ¶¶157-180.[34]

Thus, in a class action, a plaintiff may assert claims on behalf of shareholders of all the mutual funds in a complex even though that plaintiff lacks individual standing to assert those claims, as long as the claims are closely related, and the plaintiff and class members have

---

[34]  Similarly, in *In re ML-Lee Acquisition Fund II L.P.*, 848 F. Supp. 527 (D. Del. 1994), the defendants opposed class certification on the ground that the proposed class representatives could not represent investors in a mutual fund that they did not own.  The court, however, certified the class upon finding that

Continued on next page

25

individual claims against the same defendants. In *Lord Abbett*, a recent action alleging excessive mutual fund fees, the plaintiffs only held seven of the 50 Lord Abbett funds at issue. 2005 U.S. Dist. LEXIS 37492, at *22. The defendants argued that the plaintiffs did not have standing to assert claims regarding funds in which the named plaintiffs lacked an ownership interest. *Id.* at *17. The court held, "Plaintiffs' lack of any ownership interest in certain Funds on whose shareholders' behalf they purport to assert class claims does not warrant dismissal of any claims at this time." *Id.* The *Lord Abbett* court relied upon *Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1088-89 (3d Cir. 1975), where a defendant argued for summary judgment against two plaintiffs because they lacked standing to assert some but not all of their putative class claims. The court in *Haas* rejected this argument because the plaintiffs had standing to bring some (even if not all) of their claims against the defendant and because the claims over which they lacked individual standing were closely related. *Id.*[35]

Here, Plaintiffs have linked each of the §36(b) Defendants (against whom Defendants do not dispute Plaintiffs individually have standing) to all Funds in the complex. *See* ¶¶49-53 (alleging both Investment Adviser Defendants advised all AIM Funds); ¶¶54-55 (alleging the Distributor Defendant distributed and marketed all AIM Funds). Plaintiffs have alleged a common course of conduct by all Defendants across all Funds and, thus, closely-related claims. *See, e.g.,* ¶¶1-15 (Defendants' common course of conduct across all AIM Funds); ¶¶57-62 (juridical links between and among all §36(b) Defendants and the Funds). For example, according

---

the fund securities were "substantially identical" and "marketed pursuant to the same Prospectus which [was] the subject of many of Plaintiffs' allegations of wrongdoing." *Id.* at 561.

[35] In *Franklin*, an excessive mutual fund fee case similar to *Lord Abbett* and the present action, the court also adopted the *Haas* rationale. Although the named plaintiffs only held certain Franklin funds, Judge Martini found that, "plaintiffs may assert claims on behalf of investors in the ***one hundred other funds***, but only to the extent that the named plaintiffs properly pleaded direct claims against those defendants." 388 F. Supp. 2d at 461. Although the *Franklin* plaintiffs did not demonstrate their individual standing because they did not link each defendant to the funds they held, the court stated the plaintiffs would be able to "amend their Complaint with relative ease to satisfy the standing requirement." *See id.* at 462.

26

to an internal AIM memorandum, Defendants entered into arrangements with brokers whereby commissions generated on one Fund such as the Total Return Fund might be used to reward sales of other Funds in the complex, such as the Equity Income Fund, and vice versa. ¶62. As such, should the Court hold that it must decide the standing issue now, it can easily find that Plaintiffs have standing to bring their individual claims and that as a pleading matter they can also bring the closely-related claims against the very same Defendants for investors in other Funds. At the class certification stage, the Court will decide if the criteria of Rule 23 are satisfied and Plaintiffs can be certified as class representatives to represent investors in all of the AIM Funds.

In addition to such case law in the mutual funds context, other relevant decisions support Plaintiffs' ability to represent investors in the other Funds.[36] In *Fallick v. Nationwide Mutual Insurance Company*, 162 F.3d 410 (6th Cir. 1998), the plaintiff alleged that Nationwide breached its fiduciary duties with respect to his ERISA plan, as well as other ERISA plans. The district court dismissed the claims as to all ERISA plans other than the plaintiff's plan on standing grounds. *Id.* at 411-12. The Sixth Circuit found the district court's reasoning "fundamentally flawed" for confusing Article III standing with a plaintiff's ability to bring a class action under Rule 23. *Id.* at 422. The court concluded that, "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of

---

[36] *See, e.g., In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (plaintiffs could represent investors in other limited partnerships because of the "uniform course of improper conduct and standardized sales approach applied by defendants"); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (same); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1335-36 (S.D.N.Y. 1988) (same); *Kitchens v. U.S. Shelter Corp.*, 1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) (same); *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1461 (D. Ariz. 1992) (corporate securities); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 n.7 (D.N.J. 1998) (same).

members of other plans to which he does not belong."[37]  *Id.* at 424; *see also Bailey,* 2005 U.S.

Dist. LEXIS 38204, at \*5 (following *Fallick* to find "Defendants' argument that Plaintiffs lack

standing as to the other [Janus mutual] funds confuses the issue of Article III standing with the

requirements of class certification under [Rule] 23.").[38]

      Defendants cite *Kauffman v. The Dreyfus Fund, Inc.*, 434 F.2d 727, 734-37 (3d Cir. 1970),

Def. Br. at 18, where the court rejected class certification because the plaintiff was seeking to use

a derivative claim on behalf of a fund as a basis to bring a class action on behalf of other funds --

*i.e.*, a "derivative class" claim.  *Id.* at 735.  Plaintiffs here are asserting direct claims, and

*Kauffman* is thus inapplicable.  The fact that *Kauffman* dealt with a class certification motion, not

a motion to dismiss, also underscores that it is premature for this Court to rule on the issue now.

*Kauffman*'s analysis is also clearly erroneous with respect to Plaintiffs' §36(b) claim because the

Supreme Court subsequently held that §36(b) claims are direct.  *Kamen*, 500 U.S. at 108.[39]

---

[37]  The *Fallick* court also cited with approval authority holding that when a single defendant offers a range of ERISA plans, an individual in one plan can represent a class of plaintiffs – including some belonging to other plans – as long as "the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans." 162 F.3d at 422.  This reasoning applies here.

[38]  Alternatively, Plaintiffs have standing pursuant to the juridical link doctrine, which allows a plaintiff to bring a class claim against a defendant as to which he or she lacks standing if there exists "some legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions."  *In re Enron Corp. Secs., Derivative & "ERISA" Litig.,* 2004 U.S. Dist. LEXIS 8158, at \*107 (S.D. Tex. Feb. 24, 2004); *see also Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 205 (D. Mass. 2002); *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990); *see also* ¶¶57-62 (alleging numerous juridical links between the Funds, including shared investment advisers, distributors, fees, expenses, commissions, disclosures, common directors and employees); ¶207 (relying on the juridical link doctrine).

[39]  Defendants' other citations are similarly unhelpful to them. Def. Br. at 18, 20.  Like *Kauffman, Lewis v. Anderson*, 477 A.2d 1040 (3d Cir. 1970), *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348 (Del. 1988) and *Williams v. Bank One Corp.*, 2003 U.S. Dist. LEXIS 23522 (N.D. Ill. Dec. 15, 2003), are all derivative actions and therefore inapplicable for the same reasons as *Kauffman*.  *Stegall* was brought against (or was misunderstood as having been brought against) the mutual funds at issue in those cases, and is therefore inapplicable to the standing issue here, where Plaintiffs are not seeking recovery from the Funds.  Finally, *Lewis v. Casey*, 518 U.S. 343 (1996) is a case involving prisoner rights, an issue not even remotely close to the issues here.

Defendants also argue that, under *Gollust v. Mendell*, 501 U.S. 115 (1991), standing is grounded in a plaintiff's "distinct and palpable injury to himself" and his or her ability to "maintain a 'personal stake' in the outcome of the litigation …" Def. Br. at 19. However, as the Western District of Missouri pointed out in *Batra v. Investors Research Corp.*, 1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct 4, 1991), in the mutual funds context, *Gollust* does not prevent a fundholder from asserting claims regarding funds in which he did not invest if he has some financial interest in the claims involving the other funds:

> [T]he *Gollust* holding nullifies the defendants' contention that the plaintiff cannot maintain an action on behalf of other funds where he held solely Cash Reserve securities. *Gollust* provides that where a plaintiff satisfies the statutory requirements, he need not continue to hold shares *so long as he holds some financial interest in the outcome of the litigation … As a shareholder in … any other series, he benefits from any recovery of excessive fees by [the defendant].*

*Id.* at *10 (emphasis added). Here investors in all the Funds are alleged to have shared expenses at issue in the litigation, and an accounting with respect to all Funds is necessary to award relief regarding any. ¶¶60-61; p. 101 ¶E. Therefore, Plaintiffs have a financial interest in the outcome with respect to all the Funds.[40]

---

[40] Plaintiffs also have standing to bring their claims "on behalf of" all of the AIM Funds -- *i.e.*, under IAA §§ 206/215 and § 36(b) -- as members of an unincorporated association pursuant to Fed. R. Civ. P. 23.1 and 23.2 respectively. An unincorporated association is defined as a body of persons acting together pursuant to a common purpose and/or enterprise. *See, e.g., Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1222 (5th Cir. 1969). Plaintiffs allege that the individual Funds comprising the AIM Fund complex acted with a common purpose and/or as a common enterprise, and function as components of one unitary organization. ¶¶57-61. The goodwill of the AIM Funds has been diminished and impaired by the wrongful acts described in the Complaint. *See Cross v. Oneida Paper Products Co.*, 117 F. Supp. 919, 921 (D.N.J. 1954) (recognizing that "members of a[n] . . . unincorporated association[] clearly have a joint or common right in its trade-mark"). The AIM Fund family is also commonly known by the brand name "AIM" or "INVESCO." Defendants use this to brand the mutual fund family name to the public and entice people to purchase AIM Funds. *See Brand Name Value Among Mutual Funds*, Morningstar. Defendants' strategy is to treat the entire Fund family as a single, brandable, synergistic unit, in order to maximize the benefits to themselves. The same treatment should apply here.

V.    **THE STATE LAW CLAIMS, BROUGHT BY A SUBCLASS OF "HOLDER" PLAINTIFFS, ARE NOT PREEMPTED BY SLUSA AND THIS COURT SHOULD RETAIN JURISDICTION OVER THEM**

Defendants incorrectly argue that Plaintiffs' state law claims allege misrepresentations or omissions "in connection with" the purchase or sale of securities and are thus preempted by SLUSA. Def. Br. at 16.[41]  Defendants are wrong because Plaintiffs' state claims expressly exclude allegations of fraudulent misrepresentations or omissions (¶¶248, 253, 257), only claim damages in connection with the payment of excessive fees based on their retention of Fund shares (¶¶255, 258), and do not satisfy SLUSA's "in connection with" requirement because they are brought on behalf of a Subclass of Fund "holders" that expressly excludes "any persons with transactions that constitute a 'purchase' within the meaning of SLUSA." *Id.*[42]

District courts in the Fifth Circuit have recognized that claims brought exclusively on behalf of "holders" of securities – *i.e.*, on behalf of non-purchasers and non-sellers – do not fall within the ambit of SLUSA. *See Tittle v. Enron Corp. (In re Enron Corp. Sec. Deriv. & ERISA Litig.)*, 284 F. Supp. 2d 511, 636 (S.D. Tex. Sept. 30, 2003) ("[T]he courts agree that '[SLUSA] does not apply to claims dealing solely with the retention of securities, rather than with purchase or sale.'");[43] *Gutierrez v. Deloitte & Touche, L.L.P.*, 147 F. Supp. 2d 584, 594-95 (W.D. Tex. 2001) (agreeing "with decisions rendering the SLUSA inapplicable to a complaint seeking damages for being fraudulently induced to hold stock.").

---

[41]  Defendants challenge the state breach of fiduciary duty and unjust enrichment claims only under SLUSA, and do not otherwise challenge that Plaintiffs have set forth a substantive violation on these claims.

[42]  Plaintiffs have expressly limited the Subclass to holders by defining it as "all persons or entities who acquired one or more shares, units or like interests of AIM/INVESCO Funds before March 11, 1999 and held during the Class Period and were damaged thereby." ¶204.

[43]  Although the *Enron* court found that SLUSA would apply to the plaintiffs' claims, 284 F. Supp. 2d at 637, there was "no dispute" that the plaintiffs brought "both holding and purchasing claims" and alleged they "were deceived into both holding and/or purchasing Enron stock in the ERISA-governed plans." *Id.*

30

In *Gutierrez*, 147 F. Supp. 2d at 593, the plaintiffs had included in their complaint "thirty-nine pages of background facts and a statement of the nature of the case which include[d] references to investors being 'duped into investing their savings'" in the relevant securities. The plaintiffs, however, emphasized in the complaint that they alleged on behalf of a subclass "class claims for misrepresentation 'based exclusively upon the purchase of non-covered securities, or the 'holding' of securities,' neither of which invoke the SLUSA." *Id.* at 593-94. Accordingly, Judge Biery held that the plaintiffs did not "state a cause of action for misrepresentation made to purchasers of covered securities" and found that the complaint did not allege misrepresentations made in connection with purchases of covered securities. *Id.* at 594. These holdings within this Circuit accord with the great weight of authority.[44]

In *Dabit*, 395 F.3d at 34-44, *cert. granted*, 126 S. Ct. 34 (2005), the Second Circuit interpreted SLUSA's requirement that the allegations be "in connection with the purchase or sale of a covered security" to mean that claims made by "holders" of covered securities that do not allege purchases or sales are not preempted by SLUSA.[45] *See also id.* at 28. In the portion of the *Dabit* opinion particularly relevant to the claims in the case at bar, the Second Circuit held that

---

[44] As the District of New Hampshire recently stated, "[a]ll of the circuit courts that have ruled on this issue, including panels of the Second, Eighth, Ninth and Eleventh Circuit Courts of Appeals, have concluded that misconduct is committed 'in connection with the purchase or sale of a security,' only if a defendant's malfeasance has induced a class of plaintiffs to actually purchase or sell securities" – *i.e.,* "[c]laims by 'holders' of securities . . . do not qualify." *Davis v. Kozlowski,* 2005 U.S. Dist. LEXIS 4481, at *5 (D.N.H. Mar. 17, 2005) (citing *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 395 F.3d 25, 43 (2d Cir. 2005) (noting that its holding "aligns [it] with every circuit court that has considered the question thus far"); *Green v. Ameritrade,* 279 F.3d 590, 597-99; *Falkowski v. Imation Corp.,* 309 F.3d 1123, 1131 (9th Cir. 2002); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334, 1342-43 (11th Cir. 2002); *Atencio v. Smith Barney,* 2005 U.S. Dist. LEXIS 1526 (S.D.N.Y. Feb. 2, 2005); *Grabow v. PriceWaterhouseCoopers LLP,* 313 F. Supp. 2d 1152, 1156 (N.D. Okla. 2004); *Feitelberg v. Credit Suisse First Boston LLC,* 2003 U.S. Dist. LEXIS 19116, at *15-16 (N.D. Cal. Oct. 21, 2003); *Chinn v. Belfer,* 2002 U.S. Dist. LEXIS 20343 (D. Or. June 19, 2002)); *see also Shaev v. Claflin,* 2001 U.S. Dist. LEXIS 6677, at *17 (N.D. Cal. May 17, 2001) ("[t]his purported injury arose from the mere holding of 3Com stock, and not from any trading of 3Com securities.").

[45] The Supreme Court heard argument in the *Dabit* action on January 18, 2006. *See* http://www.supreme courtus.gov/oral_arguments/argument_calendars/monthlyargumentcaljanuary2006.pdf.

SLUSA did not apply. The Second Circuit held that, although the plaintiff's recovery of

commissions paid in connection with the purchase or sale of securities was preempted by SLUSA,

its claims for flat annual fees were *not* preempted. *Id.* at 47-48. In the words of the Second

Circuit, "[a]n annual fee for services is paid whether or not the customer transacts on the account,

and the misrepresentations inherent in the alleged nonperformance and statutory violations

therefore do not necessarily 'coincide[] with' a securities transaction[.]" *Id.* at 49; *accord Green v.*

*Ameritrade*, 279 F.3d at 598 (finding SLUSA did not apply to claims based on a flat monthly fee).

The recurrent payments complained of here are precisely the type of payments the Second Circuit

held not to be preempted in *Dabit* – payments based on holding the Funds that are made regardless

of the purchase or sale of Fund shares.[46]

In mutual fund excessive fees litigation, courts have reached the same conclusion. In

*Strigliabotti*, the court considered and rejected an argument that the plaintiffs' claims were

preempted by SLUSA. 398 F. Supp. 2d 1094, 1100-03. The court found that the state claims

concerning fees charged to the holders of the mutual funds, even those that involved

misrepresentations, were only tangentially related to the purchase or sale of a security and instead

were based primarily on the funds' improper failure to pass savings on to shareholders. *Id.* at *26-

27. Similarly, any omissions alleged to be the basis of Defendants' liability here have nothing to

do with the purchase or sale of a security but relate instead to excessive fees and commissions paid

as a result of holding mutual fund shares. As the *Feitelberg* court explained, if a "[p]laintiff

expressly limits the class to individuals who held shares during the class period…, [the court can

not] find that th[e] claim arises 'in connection with' the purchase or sale of a covered security."

---

[46] Although the *Dabit* complaint did not "include sufficient information to permit the court to identify and separate preempted and non-preempted subclasses," the Second Circuit upheld the dismissal of the claims without prejudice "in order to allow the plaintiff to plead a claim sounding only in state law if possible." 395 F.3d at 46. The state law holder Subclass here is expressly defined.

2003 U.S. Dist. LEXIS 19116, at *15-16.  Defendants' motion to dismiss Plaintiffs' state claims

(Counts VI -VIII) under SLUSA should therefore be denied.[47]

## VI.     A PRIVATE RIGHT OF ACTION EXISTS UNDER INVESTMENT COMPANY ACT §§34(b), 36(a) AND 48(a)

Defendants argue that private rights of action do not exist under ICA §§34(b), 36(a) or

48(a).  Def. Br. at 3-6.  Defendants stress that §§34(b) and 36(a) must contain "rights-creating"

language, which simply means language sufficient to identify the persons protected by the statute.

*See Alexander v. Sandoval*, 532 U.S. 275, 288-89 (2001).  The "text and structure" of the ICA

indicate that Congress intended §§34(b) and 36(a) to protect "a particular class of persons":

mutual fund investors.[48]  Accordingly, implied rights exist under §§34(b) and 36(a).

---

[47] Defendants' cases are distinguishable.  In *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 699 (5th Cir. 2004), the plaintiff alleged he was misled when he ***purchased*** a variable annuity and was charged for previously undisclosed fees for ***purchasing*** mutual funds within the annuity.  In *Kircher v. Putnam Funds Trust*, 403 F. 3d 478, 483 (7th Cir. 2005), the Seventh Circuit adopted an improperly broad reading of SLUSA that is contrary to the approaches of the Second, Eighth, and Eleventh Circuits; the Supreme Court is presently considering the proper approach in *Dabit*.  In *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 301 (3d Cir. 2005), "the relief sought by plaintiffs" was "the recovery of investment losses or trading fees," which the court found "may be relevant in 'connecting' the allegations to the purchase or sale of securities."  398 F.3d at 301.  Here, the Subclass is ***not*** seeking the recovery of investment losses or trading fees, but excessive advisory fees paid while Subclass members held their AIM Funds.  *See also Strigliabotti*, 2005 U.S. Dist. LEXIS 28410, at *21-24 (distinguishing *Rowinski*).  Defendants' remaining citations did not involve a class or subclass excluding purchasers, and in certain cases the lack of a definable "holder" subclass was the basis for dismissal.  *Lord Abbett*, 2005 U.S. Dist. LEXIS 37492, at *33 ("Like the class in *Rowinski*, this proposed class is not 'limited to non-purchasers and non-sellers'"); *Prof'l Mgmt. Assocs. Empl. Profit Sharing Plan*, 335 F.3d 800 (8th Cir. 2003) (plaintiffs bought stock after misrepresentations were allegedly made); *Eaton Vance*, 380 F. Supp. 2d at 242 (proposed class "plainly includes persons who purchased during the class period"); *In re Alger, Columbia, Janus, MFS, One Group and Putnam Mut. Fund Litig.*, 320 F. Supp. 2d 352, 354 (D. Md. 2004) (noting class not limited to holders).

[48] Moreover, there exists a long history of implied private rights under §§34(b) and 36(a) that predates the Supreme Court's decision in *Sandoval*.  Such pre-*Sandoval* precedent remains persuasive to the extent it relies on the statutes' "text and structure" and Congress' intent to create "not just a private right but also a private remedy."  *Sandoval*, 532 U.S. at 286, 288.  *See In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, at *11-12 (N.D. Ill. June 11, 1996) (implying a §34(b) right of action because "***the language and structure of the statute***" supports it) (emphasis added); *Strougo v. Bassini*, 964 F. Supp. at 796 (stating that an implied right under §36(a) is "supported by the text of [§]36.").

### A.     An Implied Right Exists Under §34(b)

The first sentence of §34(b) makes it "unlawful for any person to make any untrue statement of a material fact in any ***registration statement***…or other document…the keeping of which is required pursuant to ***section 31(a)***." 15 U.S.C. §80a-33(b) (emphasis added). ICA §8 states that the purpose of the registration statement discussed in §34(b) is "for the protection of investors." 15 U.S.C. §80a-8(a). 15 U.S.C. §80a-30(b). ICA §31(a) likewise states that its requirements are intended "for the protection of investors." 15 U.S.C. §80a-30(a).

The second sentence of §34(b) proscribes the omission of facts that would make a public filing "***materially misleading***." 15 U.S.C. §80a-33(b) (emphasis added). The phrase "materially misleading" only has meaning in the context of protecting investors. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (holding a fact is material if "disclosure of the omitted fact would have been viewed by the reasonable ***investor*** as having significantly altered the 'total mix' of information made available") (emphasis added).

### B.     An Implied Right Exists Under §36(a)

Section 36(a) states that if plaintiffs establish a "breach of fiduciary duty" of §36(b), the court may enter reasonable relief against the wrongdoers, "having due regard to the ***protection of investors*** and to the effectuation of the policies declared in ***section 1(b)*** of this title [15 U.S.C. §80a-1(b)]." 15 U.S.C. §80a-35(a) (emphasis added). Section 36(b) refers to a "fiduciary duty,"[49] and like §34(b), §36(a) states that it is for "the protection of investors." Section §36(a) also incorporates §1(b) of the ICA which states that the purpose of sections such as 36(a) is to protect the "interests of investors."[50] 15 U.S.C. §80a-1.

---

[49] *See Cannon v. University of Chicago*, 441 U.S. 677, 690 n.13 (U.S. 1979) ("Not surprisingly, the right- or ***duty-creating language*** of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action."), *cited in Alexander v. Sandoval*, 532 U.S. at 288.

[50] Congress explicitly incorporated ICA §1 by reference into each and every provision of the statute. 15 U.S.C. §80a-1(b) (stating the ICA "shall be interpreted" in accordance with its "policies and purposes").

The Second Circuit upheld an implied right of action under §§36(a) and 48 in *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002). The Second Circuit emphasized that the ICA §1(b) "general policy statement" includes the objectives of "protecting all classes of investment company security holders from the special interests of directors [and] officers ... and preventing investment companies from failing to protect 'the preferences and privileges of the holders of their outstanding securities.'" *Id.* at 176 (citing ICA §1(b)).

Furthermore, "when §36 was amended in 1969 and an express private remedy was added to subsection (b), the legislative history indicates that 'the fact that subsection (b) specifically provides for a private right of action should not be read by implication to affect subsection (a).'" *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 925 (S.D. Tex. 1998) (quoting S. Rep. No. 91-184, at 16 (1969)). Congress subsequently affirmed its previous intent that a private right be implied under §36(a). *Id.* (The legislative history of the ICA "lends strong, *even definitive*, support that Congress did intend courts to infer private causes of action under §36(a)") (quoting H.R. 1341, 96th Cong. at 29 (1980)).

### C.    The Express Private Right in §36(b) Does Not Impact §§ 34(b) and 36(a)

Defendants seek support from "the inclusion of an express private right of action in §36(b)." Def. Br. at 4. This argument, however, is inapplicable to §§34(b) and 36(a).

In *Olmsted v. Pruco Life Insurance Co.*, 283 F.3d 429 (2d Cir. 2002), the Second Circuit found no implied rights under different sections of the ICA than those at issue here -- *i.e.*, §§26(f) and 27(i), which concern variable insurance contracts.[51] The Second Circuit implied that §36(b)'s express private right of action should only impact implied rights for ICA sections added to the

---

[51] Following the logic of the Supreme Court in *Sandoval*, the court in *Olmsted* did not imply a private right of action for §§26(f) and 27(i) because, "[t]he language of these sections only describes actions by insurance companies that are prohibited; *it does not mention* [an intent to protect] investors such as the plaintiffs." *Olmsted*, 283 F.3d at 433 (emphasis added). The same is not true of §§34(b) and 36(a).

statute after §36(b) -- *i.e.*, the addition of §36(b)'s express right in 1970 can say nothing about

Congress' intent when it was enacting ICA provisions predating §36(b).[52]   *See Olmsted*, 283 F.3d

at 433, n.3 (citing *Fogel v. Chestnutt*, 668 F.2d 100, 111 (2d Cir. 1981), which held, "we do not

think §36(b) was intended to negate implied causes of action which the courts *have found* under

sections of the Act other than § 36(b)") (emphasis added).   Courts had implied private rights under

§34(b) before 1970.   As the Southern District of New York stated in *Brown v. Bullock*, where the

plaintiffs challenged a proxy statement under a §34(b) implied right:

> The proxy provisions of the Act are designed for the protection of investors
> (sections 1(b) and 20(a) of the Act).   Plaintiffs, as stockholders of the Fund, are
> such investors.   They are, therefore, entitled to the protection of sections 20(a) and
> 34(b) of the Act through a private right of action against the alleged wrongdoers.

194 F. Supp. 207, 231 (S.D.N.Y. 1961); *see also Stegall*, 394 F. Supp. 2d at 370 (finding that "a

statutory section predating congressional creation of § 36(b)'s private right of action . . . could

permit drawing a different conclusion regarding § 36(a) than regarding later-added sections of the

ICA").   *Brown* is still good law because, consistent with *Sandoval*, it focuses on statutory text to

find that Congress enacted §34(b) to protect investors.

---

[52] The district court decisions cited by Defendants all rely too heavily on *Olmsted*.   *See Eaton Vance*, 380 F. Supp. 2d at 231-33 (relying on *Olmsted*); *Franklin*, 388 F. Supp. 2d at 465-66 (same); *Davis*, 2005 U.S. Dist. LEXIS 23203, at *9 (adopting *Eaton Vance*); *Lord Abbett*, 2005 U.S. Dist. LEXIS 37492, at *37-43 (relying on *Olmsted*); *Stegall*, 394 F. Supp. 2d at 368 (noting *Olmsted* was "not foursquare with the question" before the court; yet following it regardless); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 554-55 (E.D. Pa. 2005) (relying on *Olmsted*); *Dull v. Arch*, 2005 U.S. Dist. LEXIS 14988, at *7 (N.D. Ill. July 27, 2005) (improperly relying on the §36(b) rationale from *Olmsted*); *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, 2005 U.S. Dist. LEXIS 2023, at *4-12 (S.D.N.Y. Jan, 21, 2005) (vacated pursuant to settlement) (same); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 256-59 (S.D.N.Y. 2003) (relying on *Olmsted*); *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1189 (N.D. Cal. 2004) (same); *White v. Heartland High-Yield Mun. Bond Fund*, 237 F. Supp. 2d 982, 986-87 (E.D. Wis. 2002) (same; noting the plaintiffs had not addressed *Olmsted*'s main arguments, which Plaintiffs address here); *Dorchester Investors v. Peak Int'l Ltd.*, 134 F. Supp. 2d 569, 581 (S.D.N.Y. 2001) (relying exclusively on *Olmsted*).   Contrary to Defendants' assertion, the *Dorchester Investors* court did not "criticize" the opinion in *In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, at *25 (Def. Br. at 4 n.7); the court simply chose to follow *Olmsted*.   134 F. Supp. 2d at 581.   These are all district court rulings, and the implication of private rights of action under ICA §§ 34(b) and 36(a) is now an appellate issue.   Notably, the plaintiffs in *Davis*, 2005 U.S. Dist. LEXIS 23203, and *Eaton Vance*, 380 F. Supp. 2d 222, have filed notices to appeal those unfavorable rulings.

**D.** ***Jackson*, the Most Recent Supreme Court Decision on this Issue, Supports a Private Right of Action under §§34(b), 36(a) and 48(a)**

In the recent decision of *Jackson v. Birmingham Bd. of Ed.*, the Supreme Court recognized an implied right of action under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a), and clarified its limited holding in *Sandoval*. The *Jackson* court stated that *Sandoval* stood for the simple proposition that a private right to enforce a ***statute*** does not necessarily include a private right to enforce ***regulations*** promulgated thereunder, especially when the enabling statute explicitly forbids one type of activity (*e.g.*, the intentional misconduct alleged in *Sandoval*) and the private right claimed under the regulations is based upon a different theory absent from the text of the statute (*e.g.*, the "disparate-impact" theory in *Sandoval*). *Jackson*, 125 S. Ct. at 1506. Consistent with *Sandoval* and *Jackson*, Plaintiffs allege ***statutory*** violations for alleged conduct falling squarely within the scope of the ICA §§34(b), 36(a) and 48(a). [53]

**VII.   PLAINTIFFS HAVE ADEQUATELY ALLEGED A VIOLATION OF INVESTMENT COMPANY ACT §48(a)**

Plaintiffs state primary violations of ICA §§34(b), 36(a) and 36(b), which support liability under §48(a). [54] Courts have implied a right of action under §48(a) to impose "control person" liability to fully effectuate the purposes of §§34 and 36, and doing so is appropriate here. *See, e.g., Dreyfus*, 2005 U.S. Dist. LEXIS 29152, at *47 (upholding §48(a) claim); *In re ML-Lee*, 848 F. Supp. at 545-46 (same).

---

[53] Defendants also improperly rely upon *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S. Ct. 2611 (2005). In *Exxon*, even though the Court held that the statute in question was clear on its face, the Court nevertheless reviewed the legislative history and noted that because it was confusing and contradictory it could not provide guidance. *Exxon*, 125 S. Ct. at 2626-28.

[54] Section 48(a) provides: "It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this title or any rule, regulation, or order thereunder." 15 U.S.C. §80a-47(a).

## VIII.  DEMAND SHOULD BE EXCUSED AS FUTILE FOR PLAINTIFFS' SOLE DERIVATIVE CLAIM

Although Defendants treat each of Plaintiffs' demand futility allegations in isolation (Def. Br. at 10-14), when taken together,[55] such allegations excuse pre-suit demand for Plaintiffs' sole derivative claim (Count V) for violation of §§206 and 215 of the Investment Advisers Act of 1940 ("IAA").[56]  *See Columbia*, 2005 U.S. Dist. LEXIS 33439, at \*23 (finding under Oregon law, that very similar allegations "disclose a situation where…demand would likely be nugatory").

Delaware law applies to this issue.  *Kamen*, 500 U.S. at 108-09.  Defendants, however, fail to point out that the standard governing demand on the board of a Delaware statutory trust such as the AIM Funds is not that demand would be "futile," but simply "not likely to succeed."  12 Del. C. §3816(a).  Plaintiffs meet this threshold as well as the "futility" standard.[57]

The futility of demand "turns on whether a majority of the…board can disinterestedly and independently consider a demand." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1230 (Del. Ch. 2001).  "[I]ndependence turns on whether a director is, *for any substantial reason*, incapable of making a decision with only the best interests of the corporation in mind." *Id.* at 1232 (emphasis added).  If "the pleaded facts create a reasonable doubt that a majority of the board could have acted independently in responding to the demand," demand is futile. *Beam v. Stewart,* 845 A.2d 1040, 1048 (Del. 2004).  Plaintiffs have pleaded the following facts, which, as ample authority demonstrates, show that Plaintiffs have met the "reasonable doubt" standard:[58]

---

[55]  See *Cal. Pub. Employees. Ret. Sys. v. Coulter*, 2002 Del. Ch. LEXIS 144, at \*29 (Del. Ch. May 28, 2002) ("On these facts . . . none of the allegations stands alone 'without more.' Taken together, they give this Court reason to doubt that [the director] is disinterested and independent.").

[56]  If the court were to find that any other of Plaintiffs' non-§36(b) claims are derivative, demand would be excused for the same reasons discussed herein in connection with the IAA claim.

[57]  *See Aronson v. Lewis*, 473 A.2d 805 (Del. 1984); *accord Rales v. Blasband*, 634 A.2d 927 (Del. 1993). The standards in *Aronson* and *Rales* are very similar, if not functionally identical.

[58]  For the reasons discussed, Plaintiffs have adequately rebutted the presumption of director independence. *See* 15 U.S.C. §§80a-2(a)(9); 12 Del. Code §3801(h). Def. Br. at 12.

- Each Director Defendant was appointed by, serves at the pleasure of, and is controlled by and beholden to the Investment Adviser Defendants for his/her position and substantial compensation as a director. ¶203(a). The Investment Adviser Defendants also recruited key Director Defendants from the investment adviser companies and paid them excessive salaries for their service as directors [*e.g.*, defendant Graham]. ¶200; *see Strougo*, 964 F. Supp. at 795 (where a director is alleged to be acting in the interests of the adviser, "the receipt of substantial remuneration from a fund complex does call into question the director's independence from the manager of that complex"); *see also Rales*, 634 A.2d at 937 ("alleged substantial financial interest in maintaining" employment positions raised "reasonable doubt" directors not impartial); *In re Trump Hotels Sh'holder Deriv. Litig.*, 2000 U.S. Dist. LEXIS 13550, at *27 (S.D.N.Y. Sept. 21, 2000) (under Delaware law, controlling officers' ability to "affect the compensation or influence of a director is one factor that may support a finding of reasonable doubt" regarding independence);

- Each Director Defendant received substantial payments and benefits by virtue of his or her membership on one of more Boards, and controlling or overseeing dozens of AIM Funds rendered it impracticable for them to properly perform their supervisory and monitoring functions. ¶¶63-64, 203(a)-(i); *see Strougo*, 964 F. Supp. at 794 ("[H]olding multiple paid directorships of funds managed by the same advisor can compromise a director's independence from the advisor sufficiently to excuse demand under some circumstances."); *In re Ply Gem Indus., Inc., S'holder Litig.*, 2001 Del. Ch. LEXIS 84, at *28-29 (June 26, 2001) (substantial compensation raised reasonable doubt as to officer's impartiality); *Trump*, 2000 U.S. Dist. LEXIS 13550, at *26-27 (discussing interlocking board membership as factor weighing against independence);

- The Directors know that the continued support of the Investment Advisers will make it extremely unlikely that they would ever be removed from office by shareholder vote. ¶203(a); *see Olesh v. Dreyfus Corp*, 1995 U.S. Dist. LEXIS 21421, at *24 (E.D.N.Y. Aug. 18, 1995) (finding interest where outcome of lawsuit at issue could cost disinterested directors their board seats or compensation they receive for sitting on those seats);

- Growth of a mutual fund is key to its survival, for if a mutual fund's assets stagnate or decrease, there is a great likelihood that the fund will be disbanded or merged with another fund, in which case, the board members for that fund would lose their positions. ¶203(f). The Director Defendants thus participated in, or allowed the payment of excessive fees as kickbacks to brokers, in order to grow the Funds. ¶203(e). "[D]emand typically is deemed to be futile" when directors are "financially interested in the challenged transactions." *Kamen*, 500 U.S. at 102 (citing *Aronson*);

- Each of the Director Defendants participated in, approved, and/or allowed the wrongs complained of herein. *See Olesh*, 1995 U.S. Dist. LEXIS 21421, at *23 ("if the directors themselves are alleged wrongdoers ... demand is excused"); *Zimmerman v. Bell*, 585 F. Supp. 512, 514 (D. Md. 1984) ("[T]he complaint sufficiently alleges that the defendants as a body actively participated in the alleged wrongdoing in order to perpetuate their control over the corporation."); *Krantz*, 98 F. Supp. 2d at 155 ("allegations that non-employee directors failed to resist a course of action suggested

39

by the investment adviser which prejudiced the funds' shareholders might serve as evidence to rebut the statutory presumption [of non-interest]");

- The Directors' conduct was in breach of their fiduciary duties for the benefit of themselves and the other Defendants, and could not have been an exercise of good faith business judgment. ¶203(c); *see Aronson,* 473 A.2d at 817 ("particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of the directors," is sufficient to excuse demand); and

- The Directors comprise the Boards and in order to bring an action for breaching their fiduciary duties, they would be required to sue themselves and their fellow Directors with whom they have had close business and personal relationships. ¶203(i); *see In re Oxford Health Plans, Inc. Sec. Litig.,* 192 F.R.D. 111, 115-118 (S.D.N.Y. 2000) (applying Delaware law to find that, where directors were highly-placed executives who would be required to investigate and, potentially, take action against themselves; had "personal and financial interest in the subject matter of the claims raised"; had knowledge of the deficiencies identified by the plaintiffs; and owed their loyalty to a third party, this presented a "compelling case" that "the totality of their actions to date suggest most strongly that they will not take action").

These highly specific allegations, taken together, demonstrate "reasonable doubt" that a majority of the Board could have acted independently in responding to a demand.

## CONCLUSION

For the foregoing reasons, the Complaint should be sustained in its entirety.[59]

Dated: February 1, 2006

Respectfully submitted,
**SUSMAN GODFREY L.L.P.**

  /s/ Carolyn P. Courville
Stephen D. Susman
(TX Bar No. 19521000; S.D. Admissions No. 03257)
Carolyn P. Courville
(TX Bar No. 24007042; S.D. Admissions No. 22958)
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone (713) 651-9366
Facsimile (713) 654-6666

*Attorney-In-Charge for Plaintiffs*

---

[59] In the event that all or any portion of Plaintiffs' Complaint is dismissed, Plaintiffs respectfully request leave to replead pursuant to Fed. R. Civ. P. 15(a). Such leave is freely granted. *See Foman v. Davis,* 371 U.S. 178, 182 (1962).

**MILBERG WEISS BERSHAD**
    **& SCHULMAN LLP**
Jerome M. Congress (admitted *pro hac vice*)
Janine L. Pollack (admitted *pro hac vice*)
Kim E. Miller (admitted *pro hac vice*)
Michael R. Reese (S.D. Admissions No. 206773)
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone (212) 594-5300
Facsimile (212) 868-1229

**BERNSTEIN LITOWITZ BERGER &**
    **GROSSMANN, LLP**
Alan Schulman (admitted *pro hac vice*)
Robert S. Gans (admitted *pro hac vice*)
Jerald D. Bien-Willner (admitted *pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone (858) 793-0070
Facsimile (858) 793-0323

***Co-Lead Counsel for Plaintiffs***

***Of Counsel:***

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone (610) 667-7706
Facsimile (610) 667-7056

**STULL, STULL & BRODY**
Jules Brody
Mark Levine
Aaron Brody
6 East 45th Street
New York, New York 10017
Telephone (212) 687-7230
Facsimile (212) 490-2022

41

**WEISS & LURIE**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York 10176
Telephone (212) 682-3025
Facsimile (212) 682-3010

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone (410) 332-0030
Facsimile (410) 685-1300

**HOEFFNER & BILEK**
Thomas E. Bilek
(TX State Bar No. 02313525)
440 Louisiana, Suite 720
Houston, Texas 77002
Telephone (713) 227-7720
Facsimile (713) 227-9404

42

## CERTIFICATE OF SERVICE

I, Carolyn P. Courville, affirm that on the 1st day of February, 2006, I caused a true and correct copy of PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS to be served via the Court's electronic case filing system and/or by regular mail upon the following:

**BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP**
Robert Gans, Esq.
Jerald Bien-Willner, Esq.
12481 High Bluff Drive, Suite 300
San Diego, CA 92130

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Jerome M. Congress, Esq.
Janine L. Pollack, Esq.
Kim E. Miller, Esq.
Michael R. Reese, Esq.
One Pennsylvania Plaza
New York, NY 10119-0165

**POLLACK & KAMINSKY**
Daniel A. Pollack, Esq.
Martin I. Kaminsky, Esq.
Edward T. McDermott, Esq.
Anthony Zaccaria, Esq.
114 W. 47th St.
New York, NY 10036

**MAYER, BROWN ROWE & MAW, LLP**
Charles S. Kelley, Esq.
700 Louisiana St.
Houston, TX 77002

**GIBBS & BRUNS, L.L.P.**
Michael K. Oldham, Esq.
1100 Louisiana
Houston, TX 77002

**NICKENS KEETON LAWLESS FARRELL & FLACK LLP**
Jacks C. Nickens, Esq.
Paul D. Flack, Esq.
600 Travis, Suite 7500
Houston, TX 77002

/s/ Carolyn P. Courville
Carolyn P. Courville

## CERTIFICATE OF SERVICE

I, Carolyn P. Courville, affirm that on the 1st day of February, 2006, I caused a true and correct copy of PLAINTIFFS' APPENDIX TO THE OPPOSITION TO DEFENDANTS' MOTION TO DISMISS to be served via the Court's electronic case filing system and/or by regular mail upon the following:

**BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP**
Robert Gans, Esq.
Jerald Bien-Willner, Esq.
12481 High Bluff Drive, Suite 300
San Diego, CA 92130

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Jerome M. Congress, Esq.
Janine L. Pollack, Esq.
Kim E. Miller, Esq.
Michael R. Reese, Esq.
One Pennsylvania Plaza
New York, NY 10119-0165

**POLLACK & KAMINSKY**
Daniel A. Pollack, Esq.
Martin I. Kaminsky, Esq.
Edward T. McDermott, Esq.
Anthony Zaccaria, Esq.
114 W. 47th St.
New York, NY 10036

**MAYER, BROWN ROWE & MAW, LLP**
Charles S. Kelley, Esq.
700 Louisiana St.
Houston, TX 77002

**GIBBS & BRUNS, L.L.P.**
Michael K. Oldham, Esq.
1100 Louisiana
Houston, TX 77002

**NICKENS KEETON LAWLESS FARRELL & FLACK LLP**
Jacks C. Nickens, Esq.
Paul D. Flack, Esq.
600 Travis, Suite 7500
Houston, TX 77002

/s/ Carolyn P. Courville
Carolyn P. Courville