UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| RICHARD TIM **BOYCE**, individually and on behalf of all others similarly situated, | : : : : | Civil Action No. 04cv2587 (Consolidated) |
| Plaintiff, | : : | Judge Keith P. Ellison |
| vs. | : : |  |
| **A I M  MANAGEMENT GROUP, INC.**, et al., | : : |  |
| Defendants. | : : |  |

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE THIRD DERIVATIVE CONSOLIDATED AMENDED COMPLAINT

POLLACK & KAMINSKY
114 West 47th Street, Suite 1900
New York, New York 10036
Tel.  (212) 575-4700

MAYER, BROWN, ROWE & MAW LLP
700 Louisiana, Suite 3400
Houston, Texas 77002
Tel.  (713) 238-2634

GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.  (713) 751-5268

*Attorneys for Defendants A I M Management Group Inc., INVESCO Funds Group Inc., A I M Advisors, Inc., A I M Distributors, Inc., and INVESCO Distributors, Inc.*

# TABLE OF CONTENTS

**Page**

Preliminary:  an abusive "amendment"……………………………………………………  1

POINT I –  SLUSA bars this entire action…………………………………………………...  2

POINT II –  The Third Amended Complaint fails to state a legally
cognizable claim under § 36(b) because there are no facts
alleged in the relevant one-year "look-back" period of
December 7, 2005 – December 7, 2006……………………………………  4

POINT III –  In any event, the Third Amended Complaint fails to state
a legally cognizable claim under § 36(b) because there
are no *facts* pleaded which, if proved, would show
disproportionality of fees charged to services rendered…………………  6

   a.  The Pleading Standard for a § 36(b) Claim……………………………  6

   b.  The Application of the Pleading Standard to
   Plaintiffs' Claims Under § 36(b)…………………………………………  8

      1.  Nature and Quality of Services  (¶¶ 57-58)…………………...  8

      2.  Profitability of the Fund to Adviser  (¶¶ 32-34)……………  9

      3.  "Fall-out Benefits"  (¶¶ 80-91)……………………………………  11

      4.  Economies of Scale  (¶¶ 35-36)……………………………………  11

      5.  Fees of Comparable Mutual Funds  (¶¶ 59-60)………………  13

      6.  Directors' Independence and Conscientiousness
      (¶¶ 98-124)………………………………………………………  16

Conclusion…………………………………………………………………………………...  19

# TABLE OF AUTHORITIES

## CASES

<u>Admiralty Fund v. Hugh Johnson & Co.</u>,
    677 F.2d 1301 (9th Cir. 1982) ..........................................................................5

<u>AllianceBernstein Mut. Funds Excessive Fee Litig.</u>,
    No. 04-CIV-4885 (SWK), 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ...........................15, 16

<u>In re Am. Mut. Funds Fee Litig.</u>,
    No. CV-04-5593 (C.D.Ca Jan. 17, 2007) .................................................................3

<u>Amron v. Morgan Stanley Inv. Advisors Inc.</u>,
    464 F.3d 338 (2d Cir. 2006)................................................................... *passim*

<u>Boyce v. AIM Mgmt. Group, Inc.</u>,
    No. 04-2587, 2006 U.S. Dist. LEXIS 71062 (S.D. Tex. Sept. 2006) .....................1, 3

<u>In re Davis Selected Mut. Funds Litig.</u>,
    No. 04-CIV-4181 (MGC), 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005)...............................18

<u>Dove v. Fordham Univ.</u>,
    56 F. Supp. 2d 330 (S.D.N.Y. 1999), *aff'd without op* 210 F.3d 354 (2d Cir. 2000) ...............1

<u>In re  Eaton Vance Mut. Funds Fee Litig.</u>,
    380 F. Supp. 2d 222 (S.D.N.Y. 2005) *adhered to on reconsideration*
    403 F. Supp. 2d 310 (S.D.N.Y. Dec. 6, 2005) .......................................................18

<u>Forsythe v. Sun Life Fin. Inc.</u>,
    No. 04-10584-GAO, 2005 WL  81576 (D.Mass. Jan. 13, 2005)...............................................5

<u>Gartenberg v. Merrill Lynch Asset Mgmt., Inc.</u>,
    694 F.2d 923 (2d Cir. 1982), *cert. den.,* 461 U.S. 906 (1983).........................8, 11, 17

<u>Gilliam v. Fidelity Mgmt & Research Co.</u>,
    No. 04-11600-NG, 2005 WL 1288105 (D.Mass. May 3, 2005)...............................................4

<u>In re Goldman Sachs Mut. Funds Fee Litig.</u>,
    No. 04-CIV-2567 (NRB), 2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 13, 2006) .........12, 18

<u>Green v. Fund Asset Mgmt., L.P.</u>,
    286 F.3d 682 (3d Cir. 2001), *cert. den.*, 537 U.S. 884 (2002)................................19

<u>Kalish v. Franklin Advisors, Inc.</u>,
    742 F. Supp. 1222 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir.), *cert. den.,* 502 U.S.
    818 (1991).........................................................................................13

<u>Krantz v. Prudential Inves. Fund Mgmt., LLC</u>,
    305 F.3d 140 (3d Cir. 2002)...............................................................6, 7, 17

Krinsk v. Fund Asset Mgmt., Inc.,
    875 F.2d 404 (2d Cir. 1989)...............................................................................10, 11, 12

LaSala v. Bordier,
    452 F.Supp.2d 575 (D.N.J. 2006) ..........................................................................3

In re Lord Abbett Mut. Funds Fee Litig.,
    No. 04-CV-0559, 2006 WL 3483946 (D.N.J. Dec. 4, 2006)..................................2, 4

Mayle v. Felix,
    545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005)..........................................5

Migdal v. Rowe Price-Fleming Int'l,
    2000 WL 350400 (D.Md. March 20, 2000), *aff'd,* 248 F.3d 321 (4th Cir. 2001)............ *passim*

Morgan Distrib. Co. v. Unidynamic Corp.,
    868 F.2d 992 (8th Cir. 1989) ..................................................................................5

In re Morgan Stanley and Van Kampen Mut. Funds Sec. Litig.,
    No. 03-CV-8208 (RO), 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. April 14, 2006) ....12, 14, 18

In re Salomon Smith Barney Mut. Fund Fees Litig.,
    441 F.Supp.2d 579 (S.D.N.Y. 2006)....................................................................9, 18

Siepel v. Bank of Am., N.A.,
    No. 05-2393 (PAM), 2006 U.S. Dist. LEXIS 93602 (E.D.Mo. Dec. 27, 2006).......................3

Superior Partners v. Chang,
    No. 06-CV-3966, 2007 U.S. Dist. LEXIS 1457 (S.D.Tex. Jan. 8, 2007)..................................3

## STATUTES

15 U.S.C. §§ 78bb(f)(1) ......................................................................................................2

15 U.S.C. § 80a-35(b)(3) ....................................................................................................5

15 U.S.C. § 80a-36(b) .........................................................................................................7

## PRELIMINARY:  an abusive "amendment"

Defendants A I M Management Group, Inc.[1], A I M Advisors, Inc., INVESCO Funds Group, Inc., AIM Distributors, Inc. and INVESCO Distributors, Inc. ("Defendants") move to dismiss the Third Derivative Consolidated Amended Complaint ("Third Amended Complaint"), pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P.

In the Memorandum and Order, dated September 29, 2006, granting Defendants' motion to dismiss the § 36(b) claims in the Second Consolidated Amended Complaint, this Court stated:

> [T]his Court joins those courts to have analyzed this issue and holds that a claim under § 36(b) is a derivative claim and must be pled as such.  Count III is therefore dismissed with leave to amend.

*Boyce v. A I M Mgmt. Group, Inc.,* No. 04-2587, 2006 U.S. Dist. LEXIS 71062, at *15 (S.D.Tex. Sept. 29, 2006).

Plaintiffs, in the guise of an "amendment", have changed the essential core of the case: they have converted it from a "shelf-space" brokerage case to an advisory fee case.  This is not an "amendment" but an abuse of the limited permission granted by this Court to amend the claim about "shelf-space" brokerage from a class claim to a derivative claim.  The "amendment" should be disallowed.

In any event, this entire action is barred by SLUSA.  *See* Point I, *infra,* pp. 2 to 3.

Further, the Third Amended Complaint fails to state a legally cognizable claim under § 36(b) on behalf of any of the seven AIM Funds involved herein[2] because it fails to allege facts

---

[1] A I M Management Group, Inc. is the first-named defendant in the caption.  However, there are no allegations in the Third Amended Complaint as to A I M Management Group, Inc.  Thus, the Court should dismiss the Third Amended Complaint as to A I M Management Group, Inc.  *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999) ("where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law" motion to dismiss granted), *aff'd without op.,* 210 F.3d 354 (2d Cir. 2000).

[2] AIM Basic Value Fund, AIM Technology Fund, AIM Constellation Fund, AIM Basic Balanced Fund, AIM Large Cap Growth Fund, AIM Financial Services Fund and AIM Leisure Fund.

in the relevant one-year "look-back" period and/or because it fails to allege facts which, if proved, would demonstrate that the fee was "**so disproportionately large** that it bears **no reasonable relationship** to the services rendered" to that <u>particular</u> Fund "and **could not have been** the product of arm's-length bargaining." *See* Points II and III, *infra,* pp. 4-19.

For any or all of these reasons, the Motion to Dismiss should be granted.

## POINT I –
## SLUSA bars this entire action

SLUSA (15 U.S.C. §§ 78bb(f)(1), 77p(b)) bars entire actions, not claims. SLUSA required dismissal of this entire action, not just the state law claims.

As Judge William J. Martini, of the District of New Jersey, held on December 4, 2006, in withdrawing his prior Opinion in a virtually identical action brought by these very same plaintiffs' counsel (Messrs. Milberg Weiss):

> Each count was contained in a class action complaint and each count pled claims on behalf of the class … As such, once we found [the state law counts] preempted by SLUSA, we were required to dismiss the entire class action, including [the counts under §§ 36(b) and 48(a) of the Investment Company Act], and not grant Plaintiffs leave to file a new complaint alleging an entirely new and different action. This is clear not only from the statutory text of SLUSA, but also from the considered dicta by the Third Circuit in *Rowinski*. **Therefore, because the Court erred in allowing Plaintiffs leave to amend [the counts under §§ 36(b) and 48(a)] and file an entirely new non-class action, the Court will now vacate its prior decision allowing Plaintiffs to replead those Counts. Instead the Court will dismiss the entire action under SLUSA.** (emphasis supplied)

*In re Lord Abbett Mutual Funds Fee Litigation*, No. 04-CV-0559, 2006 WL 3483946, at *2 (D.N.J. Dec. 4, 2006) (attached hereto as Addendum A).[3]

---

[3] For the Court's convenience, Defendants have concurrently filed Appendix I to the Motion which includes copies of all unpublished decisions and court orders cited in Defendants' Motion to Dismiss.

Thereafter, Judge Paul Magnuson, of the Eastern District of Missouri, held likewise in *Siepel* v. *Bank of Am., N.A.*, No. 05-2393 (PAM), 2006 U.S.Dist. LEXIS 93602 (E.D.Mo. Dec. 27, 2006) stating:

> SLUSA preemption mandates dismissal of the entire action — not just individual claims … Thus, in addition to the reasons provided above, the federal law securities law claims fail for this reason as well.

*Id.* at *36 n.11.

And, finally,  Judge Gray Miller, of this Court, relying explicitly on *Lord Abbett,* in *Superior Partners* v. *Chang*, No. 06-CV-3966, 2007 U.S. Dist. LEXIS 1457, at *22 (S.D.Tex. Jan. 8, 2007), held that "SLUSA applies to 'actions' rather than individual 'claims'."  Although *Superior* concerned the remand of an action removed to federal court pursuant to SLUSA, Judge Miller's reasoning is directly on point.

Judge Joel Pisano, of the District of New Jersey, had earlier held, in *LaSala* v. *Bordier*, 452 F.Supp.2d 575, 588-89 (D.N.J. 2006), that "SLUSA does preempt Plaintiffs' Swiss law claims [because] the Third Circuit has indicated that SLUSA preempts actions, not claims." *But see In re Am. Mut. Funds Fee Litig.*, No. CV-04-5593, Chambers Order (C.D.Ca. Jan. 17, 2007) (decided by Judge Gary Feess, of the Central District of California, the sole decision to the contrary).

This Court has previously ruled that the state law claims in the Second Consolidated Amended Complaint (Counts VI through VIII) were preempted by SLUSA, and thereupon dismissed those claims, as well as all other claims, but allowed plaintiffs to attempt to amend the § 36(b) claim. *See* Memorandum and Order dated September 29, 2006; *Boyce v. AIM Management Group, Inc.*, No. 04-2587, 2006 U.S. Dist. LEXIS 71062 (S.D.Tex. Sept. 29, 2006).

3

In fact, what this Court was obliged to do, we respectfully submit, was to dismiss the entire action, precluding a Third Amended Complaint.

This Court, we respectfully submit, should vacate its prior Memorandum and Order dated September 29, 2006 (as Judge Martini did) and now dismiss the entire action on the ground of the SLUSA bar.

If this Court agrees with Point I, it need go no further with this Memorandum.

### POINT II –
**The Third Amended Complaint fails to state a legally cognizable claim under § 36(b) because there are no facts alleged in the relevant one-year "look-back" period of December 7, 2005 – December 7, 2006**

The core facts of the prior § 36(b) claims about misuse of shelf-space arrangements are, as noted in the Preliminary, materially and dramatically different from the core facts of the new § 36(b) claims about excessive advisory fees.  The prior Complaint focused on the Defendants' relationships with brokers.  As this Court's Memorandum and Order dated September 29, 2006 recited:

> … Plaintiffs claim that Defendants made excessive payments to brokers out of Fund investor assets so that the brokers would aggressively promote the sale of AIM mutual funds to new investors.  This practice is described as acquiring "shelf-space" at brokerage firms.

*Id.* at *5.

The Third Amended Complaint focuses on the AIM Funds' relationships with their advisors.  *See, e.g., Lord Abbett Mut. Funds Fee Litig.*, 2006 WL 3483946, at *2 (the "new" derivative complaint for excessive fees under § 36(b) was "an entirely new and different action" from the prior complaint which was about an alleged "kickback scheme" concerning shelf-space arrangements); *see also Gilliam v. Fidelity Mgmt. & Research Co.*, No. 04-11600-NG, 2005 WL 1288105, at *2 (D.Mass. May 3, 2005) (denying consolidation of a § 36(b) excessive fee case

with a case about portfolio brokerage on the ground that these allegations are "in striking contrast" to each other, and each has a different "gravamen"); *Forsythe v. Sun Life Fin. Inc.*, No. 04-10584-GAO, 2005 WL 81576, at *1 (D.Mass. Jan. 13, 2005) (denying consolidation because "there are significant differences" between such claims).[4]

Since the new § 36(b) claims involve advisory fees, a wholly different subject from use of portfolio brokerage, they do not "ar[i]se out of the [same] conduct, transaction or occurrence" which formed the basis for the claims in the prior complaint. Accordingly, there is no "relation back" under Rule 15(c), Fed.R.Civ.P. *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 2574-75, 162 L.Ed.2d 582, 598-99 (2005) (relation back applies when claims added by an amendment arise from the same core facts as the timely filed claims). *See, e.g., Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1304-05, 1314 (9th Cir. 1982) (core facts different where original claim was for manipulation and amended claim was for misrepresentation); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989) (no relation-back where amended complaint stated a set of facts involving a different breach of a different contract and occurring in a different year).

It follows that, since the new § 36(b) claims do not "relate back", the one-year "look-back" period[5] for the new § 36(b) claims starts with the date the Third Amended Complaint was filed — December 7, 2006.  However, the Third Amended Complaint is devoid of any factual allegations about the fees paid by any of the AIM Funds for that period, *i.e.* December 7, 2005 through December 7, 2006.  Nor does it allege any facts about the specific services rendered in

---

[4] The material factual differences between the two claims are demonstrated further by the different time periods for the allegedly wrongful conduct in the two complaints.  The prior Complaint (at ¶ 2) sought damages for alleged misconduct in the period 1999 to 2004.  In contrast, the Third Amended Complaint (at ¶ 1) challenges the fees paid in the period 2003 to 2007.

[5] Section 36(b)(3) permits recovery of fees paid by a Fund only for the one-year period prior to the commencement of the § 36(b) action on behalf of such Fund. 15 U.S.C. § 80a-35(b)(3).

that period. For example, the charts listing fees and financial returns (Third Am. Cplt., ¶¶ 47, 57 and 60 & Exhibit A thereto) address only the years 2003 and 2004 — not the relevant year of December 7, 2005 through December 7, 2006. Given the absence of any factual allegations about the relationship between fees charged to a particular Fund to services rendered to that Fund between December 7, 2005 and December 7, 2006, the Third Amended Complaint fails to plead a legally cognizable § 36(b) claim, and should be dismissed.

If the Court agrees with this Point II, it need proceed no further with this Memorandum.

**POINT III –**
**In any event, the Third Amended Complaint fails to state**
**a legally cognizable claim under § 36(b) because there are**
**no *facts* pleaded which, if proved, would show**
**<u>disproportionality of fees charged to services rendered.</u>**

**a.   <u>The Pleading Standard for a § 36(b) Claim</u>**

Three Courts of Appeal (the Second, Third and Fourth Circuits) have ruled on the standard for pleading a legally cognizable claim under § 36(b). They unanimously agree that the allegations must demonstrate "fees so disproportionately large that they bore no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 340 (2d Cir. 2006); *Krantz v. Prudential Inves. Fund Mgmt., LLC*, 305 F.3d 140, 143 (3d Cir. 2002); *Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001).

All three Courts of Appeal have rejected complaints with conclusory and bald allegations and conclusions of law as insufficient to plead a legally cognizable claim under § 36(b). *See, e.g., Amron*, 464 F.3d at 344; *Migdal*, 248 F.3d at 327-28.

As the Second Circuit stated in *Amron*:

> A plaintiff must allege, as the Supreme Court has held, those facts *necessary* to a finding of liability…. [A] plaintiff must "*allege* these requirements" at the pleading stage…. In other words, a plaintiff's

6

allegations, accepted as true, must be sufficient to establish liability. ... **As this Court has held, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." ... We apply this standard when assessing Plaintiffs' claims under section 36(b) of the '40 act.**

*Amron,* 464 F.3d at 343-44 (emphasis in original and supplied).

All three Courts of Appeal affirmed the dismissal of complaints under § 36(b) because, as noted in *Migdal:*

> Plaintiffs have failed to allege any **facts** pertinent to this relationship between fees and services. Specifically, while plaintiffs have challenged the fees that defendants charged, they have failed to allege sufficient **facts** about the services that defendants offered in return for those fees. For example, plaintiffs' comparison between the two underlying funds and three other mutual funds is not particularly meaningful precisely because it does not address the particular services offered by the defendants in this case.

*Migdal,* 248 F 3d at 327 (emphasis supplied); *see also Amron,* 464 F.3d at 344; *Krantz,* 305 F.3d at 143.

These pleading requirements for § 36(b) claims are especially pertinent here because the AIM Funds have different investment objectives, different fee schedules, and different performances. As we have previously argued (successfully) to this Court: "Each tub on its own bottom." (*See* Motion for Judgment and Memorandum of Law (Rule 12(c)) filed March 31, 2005 in *Berdat v. INVESCO Funds Group, Inc.,* No. 04-CV-2555.) In short, there must be facts pleaded as to each <u>particular</u> Fund showing disproportionality of the fee charged to that <u>particular</u> Fund for the services rendered to that <u>particular</u> Fund. The statute, itself, requires nothing less:

> An action may be brought under this subsection [§ 36(b)] by the Commission, or by a security holder of **such** registered investment company on behalf of **such** company ... for breach of fiduciary duty in respect of **such** compensation or payments paid by **such** registered investment company....

15 U.S.C. § 80a-35(b) (emphasis supplied).

The Third Amended Complaint is totally devoid of the requisite Fund-by-Fund particularity and thus fails to meet the requirements of the text of § 36(b).

**b.  The Application of the Pleading Standard
to Plaintiffs' Claims Under § 36(b)**

The plaintiffs attempt to satisfy the pleading requirements by reciting the talismanic "*Gartenberg* factors"[6] — **factors** are no substitute for *facts*.

**1.  <u>Nature and Quality of Services</u>** (¶¶ 57-58)

In *Amron*, the Second Circuit stated:

> Regarding the nature and quality of the services provided, the Yampolsky Complaint alleges that the AO Fund has lost money, but it fails to allege the Fund's performance is appreciably worse than comparable funds.  In comparing AO Fund share returns to gains and losses of the S&P 500 Index, the Yampolsky Complaint demonstrates little, if anything, about the nature or quality of the specific services offered to AO Fund customers. The Amron Complaint is less deficient, in part because it notes that over 80% of the S&P Fund's peers outperformed it and because the nature of the services the S&P Fund are not so demanding on advisers' expertise because the Fund seeks merely to mimic the return of the S&P 500 Index.  **But "allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive,"** *Migdal*, 248 F.3d at 327, and Plaintiffs make scant additional showing as to the first factor in the Complaints.

*Amron*, 464 F.3d at 344 (emphasis added).

---

[6] Those factors are:

> (1) the nature and quality of services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees.

*Amron*, 464 F.3d at 344; *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 929-30 (2d Cir. 1982), *cert. den.*, 461 U.S. 906 (1983).

At bar, the allegations about the nature and quality of the services rendered to the AIM Funds are not legally sufficient.  The principal allegations as to services are found in the chart (¶ 57) which purports to compare the performances of the various AIM Funds with the performances of various "averages" of unidentified funds.[7]  Like the Yampolsky Complaint in *Amron,* that comparison "demonstrates little, if anything, about the nature or quality of the **specific** services offered" to the AIM Funds.  *Amron,* 464 F.3d at 344.  Furthermore, the chart says nothing about the fees paid by those unidentified funds which allegedly performed better than the AIM Funds.  It does not even suggest that those unidentified funds paid fees lower than or equal to what the comparable AIM Fund paid.  Consequently, the chart on comparative performances does not support a claim that the AIM Funds' advisory fees were unreasonably disproportionate to the services rendered for those fees.[8]

The allegations in the Third Amended Complaint (¶¶ 57-58 and 91-97) do not point to any defect in the 12b-1 services rendered to any particular AIM Fund and, as such, are legally insufficient.  *See In re Salomon Smith Barney Mut. Funds Fees Litig.,* 441 F.Supp.2d 579, 600 (S.D.N.Y. 2006).

### 2.  <u>Profitability of the Fund to Adviser</u>  (¶¶ 32-34)

In *Amron* the Second Circuit noted:

> Regarding the second factor, profitability of the fund to the adviser-manager, the *Amron* Complaint, like the *Yampolsky* Complaint, pleads no facts, but speculates that fees are high.

*Amron,* 464 F.3d at 342, and:

---

[7] The chart (¶ 57) actually shows that the return of AIM Basic Value Fund surpassed the "benchmark" selected by plaintiffs.

[8] These comparisons still amount to nothing more than what the Court of Appeals in *Migdal,* 248 F.3d at 327, found insufficient for pleading a legally cognizable § 36(b) claim:  "allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive."

> Regarding the profitability of the fund to the advisers …, the Complaints allege nothing…. Their assertions regarding the size of 12b-1 and advisory fees, moreover, are irrelevant to a showing of profitability without some allegation of the corresponding costs incurred in operating the funds. *Cf. Krinsk,* 875 F.2d at 410 (discussing district court's treatment of 12b-1 plan fees "as a wash, offset by the cost of payments to the personnel"). Instead, the Complaints merely pray for discovery on these points. Plaintiffs thus fail to make a showing…."

*Amron,* 464 F.3d at 344-45 (citing *Krinsk v. Fund Asset Mgmt. Inc.*, 875 F.2d 404, 410 (2d Cir. 1989)).

At bar, the Third Amended Complaint alleges no facts about the profitability of any AIM Fund to its adviser. The allegations about the financial results of the industry and of Defendants' parent, an international financial service corporation based in London (Cplt. ¶¶ 32-34), are irrelevant to the profitability of any of the seven AIM Funds to its advisor.

Such complex-wide generalities were explicitly alleged and rejected as bases for a § 36(b) claim in *Migdal.* There, the complaint alleged:

> … defendant T. Rowe Price had a banner year in 1998, with revenues of $886 million, a $131 million increase over 1997 revenues. Earnings in 1998 grew 20% over 1997 earnings. Assets under management in the T. Rowe Complex swelled to $94.4 billion. In 1998, net cash inflows to the Funds was $3.7 billion. Despite these huge increases for T. Rowe Price … the "outside directors" have continually permitted defendants to charge excessive advisory fees.

(*Migdal* Complaint at ¶ 31.) In dismissing the complaint, the district court held:

> As to the "direct" violation [of § 36(b)], plaintiffs allege, *inter alia,* the following … (4) that defendants' earnings increased by more than 20%. I am constrained to reject these allegations of "circumstantial" indicia of excessiveness as legally insufficient … because the level of generality remains too high and (more importantly) because these allegations do not remotely touch on the issue of what, if any *relation* exists between the disputed fees on the one hand, and the services provided in consideration for their payment, on the other hand. *See Gartenberg,* 694 F2d at 928. (emphasis in original)

10

*Migdal v. Rowe Price-Fleming Int'l,* No. AMD 98-2162, 2000 WL 350400, at *3 (D. Md. March 20, 2000), *aff'd,* 248 F.3d 321 (4th Cir. 2001).

### 3. **"Fall-out Benefits"** (¶¶ 80-90)

In *Amron,* the Second Circuit noted:

> Regarding the third factor, fall-out benefits,[9] the *Amron* Complaint, like the *Yampolsky* Complaint, pleads no facts.

*Amron,* 464 F.3d at 342; *see also id.* at 344.  Here, too, the Third Amended Complaint pleads no facts showing fall-out benefits to Defendants.  Those "benefits" that Plaintiffs do identify are not "fall-out" benefits because they arose from services to the AIM Funds, not from non-Fund business.

In any event, contrary to plaintiffs' contention that Defendants had an obligation to "reduce" their fees to reflect so-called "fall-out" benefits, no case has ever so held.  At most, courts have noted that fall-out benefits are <u>a</u> factor to be considered in evaluating advisory fees under § 36(b).  *See, e.g. Gartenberg,* 694 F.2d at 932.

### 4. **Economies of Scale** (¶¶ 35-56)

In *Amron*, the Second Circuit found the allegations about economies of scale inadequate for § 36(b) purposes, stating:

> [T]he Complaints allege no facts related to the Funds regarding the question of economies of scale. The Complaints again point to the

---

[9] As the *Amron* court noted:

> Fall-out benefits are benefits to the adviser "in the form of commissions on <u>non-Fund securities business</u> generated by Fund customers and interest income on funds (known as the 'float') held by the Broker from the date when a redemption check is issued by the Fund to its customer until the date it clears." *Gartenberg,* 694 F.2d at 932. (emphasis supplied)

*Amron*, 464 F.3d at 341, n.1; *see also Krinsk,*, 875 F.2d at 411, where the Second Circuit held that float and free credit balances in the Funds were not fall-out benefits because they "are generated directly by the money market funds" which were involved in that case.

> size of the 12b-l and advisory fees, but make no allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed. *Krinsk,* 875 F.2d at 411 ("[T]o show economies of scale, plaintiff bore the burden of proving that the per unit cost of performing Fund transactions decreased as the number of transactions increased."). Plaintiffs thus make no showing for the fourth factor. (emphasis supplied)

*Amron,* 464 F.3d at 345.

Here, the Third Amended Complaint is premised on the same misunderstanding of economies of scale. At the outset of the section entitled "Economies of Scale Were Not Passed on to Investors," the Third Amended Complaint states:

> In theory, as a particular fund's total assets grow, the expenses borne by that fund would be spread out and shared amongst fund investors, so that each investor's *pro rata* share of the fund's expenses is correspondingly diminished. When these savings are not passed on to the funds, excessive fees are, as was the case here, retained by the Investment Advisers and their affiliates.

(Third Amended Complaint at ¶ 35.) For purposes of evaluating § 36(b) claims, courts have repeatedly rejected plaintiff's simplistic misconception that economies of scale necessarily accompany increases in assets. In *In re Goldman Sachs Mut. Funds Fee Litig.,* No. 04-CIV-2567 (NRB), 2006 U.S. Dist. LEXIS 1542, at *34 (S.D.N.Y. Jan. 13, 2006), the Court, dismissing a § 36(b) claim, stated:

> Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors.

*Accord In re Morgan Stanley and Van Kampen Mut. Funds Sec. Litig.,* No. 03-CV-8208 (RO), 2006 U.S. Dist. LEXIS 20758, at *47 (S.D.N.Y. April 14, 2006) (allegation that "[w]ith regard to the Rule 12b-1 plan, plaintiffs simply state in a conclusory manner that 'there was no reasonable likelihood that the plan would benefit the company and its shareholders and that 'economies of scale' created from increasing fees 'were not passed on to Proprietary Funds investors'" fails to

state a legally cognizable claim under § 36(b)); *Kalish v. Franklin Advisors, Inc.*, 742 F.Supp. 1222, 1238 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir.), *cert. den.*, 502 U.S. 818 (1991) ("Plaintiffs in prior cases have argued in substance that since a fund increased dramatically in size, economies of scale must have been realized. The courts reject that argument") (see additional cases cited therein).

Plaintiffs' allegations about several of the seven AIM Funds also provide no support for the generalized allegation that economies of scale were not passed on to shareholders in those Funds. For five of the AIM Funds — AIM Basic Value Fund (¶ 40), AIM Leisure Fund (¶ 41), AIM Large Cap Growth Fund (¶ 42), AIM Constellation Fund (¶ 44), and AIM Financial Services (¶ 45) — the Third Amended Complaint alleges that the expense ratios in the various time periods actually decreased or did not increase. Thus, plaintiffs' generalized attack is contradicted by their own "facts" and should not be accepted as the basis for a § 36(b) claim.[10]

### 5. Fees of Comparable Mutual Funds (¶¶ 59-60)

In *Amron*, the Second Circuit found the allegations comparing certain funds' fees with "benchmark" average fees for other unspecified mutual funds "inadequate" and gave them little weight for § 36(b) purposes, stating:

> [T]he Complaints' allegations regarding the question of comparative fee structures are inadequate. The *Yampolsky* Complaint alleges the AO Fund expense ratio is 1.67% while the industry mean is 1.51%, conveniently omitting where the AO Fund ratio falls on the distribution of fees. The *Amron* Complaint notes the S&P Fund's 1.67% expense ratio, but only compares it to *one* Vanguard fund. That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion under this fifth factor. *Cf. Gartenberg*, 694 F.2d at 929 (noting that because competition between funds does not necessarily imply the existence of competition between advisor-managers for

---

[10] It is worth noting that the SEC study in 2000 cited by plaintiffs (Cplt. ¶ 107), states that one way for funds to share in any economies of scale is "that the adviser provide additional services under the advisory contract." SEC, Division of Investment Management: Report on Mutual Fund Fees and Expenses, Dec. 2000, Conclusions and Recommendations, B.1.

fund business, comparisons of fee structures are of limited value in assessing whether the fees charged by any given fund are excessive; moreover, "[i]f rates charged by the many other advisers were an affirmative competitive criterion, there would be little purpose in § 36(b).").

*Amron,* 464 F.3d at 345.

The court in *In re Morgan Stanley* similarly found that an allegation "that the average expense ratio of Morgan Stanley funds was 'almost 50% higher than the average expense ratio for non-Morgan Stanley Funds'" failed to state a legally cognizable claim under § 36(b). *In re Morgan Stanley,* 2006 U.S. Dist. LEXIS 20758, at **46-47.  At bar, the Third Amended Complaint suffers from that defect as well as others.  First, it does not compare a fee of an AIM Fund with fees of actual funds.  Rather, it compares the AIM Funds' fees only with a composite benchmark of unidentified funds.[11]  Accordingly, like the chart purporting to compare performances of AIM Funds and other mutual funds, it sheds no light on the disproportionality of any fee paid by any AIM Fund to services rendered to that particular Fund.  The other charts on fees (¶¶ 47, 60), separately or together, provide no way of determining whether the unidentified funds which supposedly performed better than the corresponding AIM Fund paid an advisory fee equal to or materially less than what that AIM Fund paid.  In sum, the charts do not show that any fund performing better than a comparable AIM Fund paid advisory fees lower than the particular AIM Fund.  Nor do they show that any AIM Fund performed worse than any fund with fees similar to those of the particular AIM Fund.

---

[11] The Third Amended Complaint (¶ 62) also purports to contest the fee charged to one fund, AIM Basic Value Fund, by alleging that the fee is less than the fee charged by a non-defendant to a non-AIM Fund for sub-advisory services.  That comparison obviously says nothing about any fee paid by any other AIM Fund.  It also states nothing about fees charged by any defendants.  Finally, it sheds no light on the issue of disproportionality of any advisory fee paid by AIM Basic Value Fund since nothing is even alleged about the nature and quality of the services provided by the subadviser (e.g. whether they are as extensive as the services of an adviser).  In sum, the allegations about subadvisory arrangements provide no support to the claim that the advisory fees are excessive.

Second, the comparison is not for any specific fee received by any specific defendant.  In effect, the Third Amended Complaint improperly attempts to charge all Defendants with liability even though the particular fee a particular defendant received for its services was proper and lower than a benchmark average.

Third, plaintiffs' charts fail to address all seven of the AIM Funds involved in this case — *e.g.* neither, (¶¶ 47 and 60), state anything about the fees of AIM Financial Services Fund, and one chart, (¶ 47), fails to state anything about the fees of AIM Constellation Fund; (b) the charts do not cover the one-year "look-back" period — they deal with fees for only part of the "look-back" period (albeit the wrong "look-back" period); and (c) one chart, (¶ 60), deals with only part of the fees paid by the AIM Funds; it ignores the fees paid on behalf of non-retail share classes in the AIM Funds.  Faced with allegations about allegedly excessive fees of a mutual fund which did not cover the entire one-year look-back period for a § 36(b) claim, the Court in *AllianceBernstein Mut. Funds Excessive Fee Litig.* dismissed the § 36(b) claim:

> Section 36(b), however, explicitly limits recovery to the one-year period prior to the commencement of litigation. Therefore, because Plaintiffs filed their initial complaint on June 22, 2004, they must plead facts demonstrating the existence of excessive advisory fees between June 22, 2003 and June 22, 2004.  Notably, the statistics in paragraph 143 of the Complaint only cover approximately four months of this time period, posing a serious problem for the survival of Plaintiffs' Section 36(b) claim.  Despite this defect, Plaintiffs maintain that the Court should deny the Investment Adviser Defendants' reconsideration motion.  They argue that while the statistics at issue largely refer to financial trends outside the relevant time period, they may be used demonstrate the existence of excessive advisory fees within the relevant time period.  Accepting this position, however, would require the Court to make a dramatic extrapolation by inferring the existence of excessive fees without adequate supporting evidence in the Complaint.  Though it may be possible in certain circumstances to demonstrate the existence of excessive fees by using statistical trends that do not fall squarely within the applicable one-year time period, the Investment Adviser Defendants are correct in asserting that this approach weakens Plaintiffs' economies of scale argument considerably.

No. 04-CIV-4885 (SWK), 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006).  As noted, the comparisons here are even more deficient.

### 6. <u>Directors' Independence and Conscientiousness</u> (¶¶ 98-124)

In *Amron* the Second Circuit found the Complaint's allegations about the directors insufficient to show any lack of independence and care on their part, stating:

> [W]ith regard to the sixth factor, trustee independence, the *Amron* Complaint and the *Yampolsky* Complaint allege identical facts about the five so-called independent trustees on the S&P Fund's board, who are the same trustees that sit on the AO Fund.

*Amron*, 464 F.3d at 342, and:

> Finally, regarding trustee independence and conscientiousness, the Complaints are also inadequate. They include quotations from the Fund Director's Guidebook, a product of the American Bar Association Section on Business Law, and quotations from industry leaders such as John C. Bogle, the chairman of Vanguard Group, and Warren Buffett, but the *Complaints contain little, if anything about how the five directors of defendants' Funds are controlled.* Plaintiffs further allege that the five directors of the Funds each received compensation in excess of $150,000, retirement benefits, and serve on the boards of many other mutual funds, businesses, and charitable organizations. These allegations, however, are insufficient as a matter of law. *See Midgal,* 248 F.3d at 330-31 (noting the '40 Act's presumption that natural persons are disinterested and explaining that serving on multiple boards does not demonstrate lack of independence).
>
> In drawing this conclusion, we rely on *Scalisi v. Fund Asset Management. L.P.*, 380 F.3d 133 (2d Cir. 2004).... *Scalisi* rejected these [general] assertions: "These allegations are neither specific to the [Fund] directors nor to the purchase of the ... stock at issue. [T]hose generalized allegations do not suffice under Maryland's [derivative suit] standard to justify excusing a demand on this particular board in the case before us on grounds of futility." *Id.* The same holds true here.  (emphasis supplied)

*Id.* at 345-46.

The Third Amended Complaint contains only the following allegations about the directors of the AIM and INVESCO Funds:  (1) the same directors served on the boards of 114 AIM Funds and nine other companies (¶ 115); (2) only one director (Mr. Dunn) had experience managing a mutual fund outside of AIM or INVESCO (¶ 121); and (3) three directors had served as directors for other funds (¶ 121).

None of those allegations supports the conclusion that the fees were excessive because of any lack of independence or conscientiousness on the part of the directors.  None states how the independent directors were allegedly controlled by Defendants to obtain excessive fees.  None states a single fact about any director's role in any Fund board's negotiation or review of any fee.  None states anything about what any particular director did or did not do with respect to approval of any particular fee.  Finally, *Amron*, *Migdal* and *Krantz* all held that service on multiple fund boards did not support an excessive fee claim.  *See Amron*, 464 F.3d at 345; *Migdal*, 248 F.3d at 330-31; *Krantz* 305 F.3d at 143-44; *see also* cases cited therein.

In sum, all of plaintiffs' allegations fail even to approach the § 36(b) pleading standard adopted by every Court of Appeals that has addressed the adequacy of a § 36(b) pleading.  Plaintiffs' allegations about the *Gartenberg* factors are either not about those factors (*i.e.* fund profitability, economies of scale and fall-out benefits), too general to even apply to the seven AIM Funds involved in this action (*e.g.* conduct of directors) or not informative about the core issue of alleged disproportionality (*e.g.* the charts about returns and fees of AIM Funds and a variety of so-called benchmark averages of unidentified funds).

\* \* \*

17

The allegations that certain defendants[12] participated in so-called "revenue sharing" arrangements (Cplt., ¶¶ 63-79)  fail to state a legally cognizable claim under § 36(b).  Courts have repeatedly dismissed § 36(b) claims based on virtually identical allegations.  *See, e.g. In re Eaton Vance Mut. Funds Fee Litig.,* 380 F.Supp.2d 222, 236-38 (S.D.N.Y. 2005), *adhered to on reconsideration,* 403 F.Supp.2d 310, 314-16 (S.D.N.Y. Dec. 6, 2005) (§ 36(b) does not provide claim arising from use of fees for, *inter alia,* revenue-sharing payments); *In re Davis Selected Mut. Funds Litig.,* No. 04-CIV-4186 (MGC), 2005 WL 2509732, at *3 (S.D.N.Y. Oct. 11, 2005); *In re Goldman Sachs,* 2006 U.S. Dist. LEXIS 1542, at **37-38; *In re Salomon Smith Barney Mut. Fund Fees Litig.,* 441 F.Supp.2d at 602-03 ("[P]ayments to broker-dealers, however, fall outside of § 36(b)").  This Court should do likewise in this action which plaintiffs expressly state is an "action … arising from the payment of excessive compensation and fees to defendants" (Cplt. ¶ 1).  As the court in *Eaton Vance* held: "[t]he allegations that the defendants authorized improper 12b-1 fees, soft dollar payments, and commissions to brokers are insufficient to allege a claim under 36(b), which addresses only the negotiation and enforcement of payment arrangement between investment advisers and funds, not whether investment advisers acted improperly in the use of the funds." 380 F.Supp.2d at 237; *see also In re Morgan Stanley*, 2006 U.S. Dist. LEXIS 20758, at *49.

Here, the role of Defendants in the alleged arrangements with the broker-dealers was as payor, not recipient of the revenue-sharing payments (Cplt., *e.g.* ¶¶ 73-78).  Section 36(b) imposes a duty "with respect to the *receipt* of compensation for services or payments of a material nature" (emphasis supplied).  It also prohibits a claim "against any person other than the

---

[12] None of those allegations states that either INVESCO Defendant had any "revenue-sharing" arrangement with any broker-dealer.  Indeed, the Third Amended Complaint's only reference to INVESCO's relations with brokers indicates that it had no revenue-sharing arrangements with brokers — *i.e.* the allegation that INVESCO organization had "no source other than brokerage" … to encourage brokerage firms to provide INVESCO with favored status" (Cplt., ¶ 88).

recipient of any such compensation or payments." § 36(b)(3); *Green v. Fund Asset Mgmt., L.P.,* 286 F.3d 682, 685 (3d Cir. 2001) ("under § 36(b) a shareholder may only sue the recipient of the fees"), *cert. den.,* 537 U.S. 884 (2002).   It also restricts the recovery under § 36(b) to the "compensation or payments received ... by such recipient" — *i.e.* their fees.   It says nothing about (and thus authorizes no claim for) monies allegedly paid to non-defendants (*i.e.* brokers) by defendants.

Second, no facts are alleged identifying any of the seven AIM Funds as involved in the challenged revenue-sharing arrangements.   The allegations are, at best, generic.[13]

## CONCLUSION

For the foregoing reasons, the Third Derivative Consolidated Amended Complaint should be dismissed, with prejudice.

---

[13] It is worth quoting the Second Circuit in *Amron* on the propensity of plaintiffs' counsel to indulge in the practice of repeating the same or identical generalizations in numerous complaints against very different mutual fund complexes (at 346 n.2):

> We cannot help but observe that the Complaints filed in this case are strikingly similar to prior claims brought—including one in this Circuit—by Plaintiffs' counsel, all of which have been dismissed.   As the Third Circuit noted in affirming dismissal of a virtually identical claim from the same plaintiffs' counsel, "This case is one of five virtually identical actions filed by Plaintiffs' counsel in district courts in four separate circuits.   All of the other courts, including the courts of appeals for the Fourth Circuit and the Second Circuit, have rejected Plaintiff's arguments." *Krantz v. Prudential Invs. Fund Mgmt. LLC,* 305 F.3d 140, 143 (3d Cir. 2002).

The same is true here:   cases by the same counsel have been rejected repeatedly by the Courts.   *See* cases cited at pp. 17-18.

Dated:   February 5, 2007

Respectfully submitted,

POLLACK & KAMINSKY

by:___s/ Daniel A. Pollack_____
Daniel A. Pollack, Esq.
Edward T. McDermott, Esq.
Anthony Zaccaria, Esq.
114 West 47th Street, Suite 1900
New York, New York 10036
Tel. (212) 575-4700
Fax: (212) 575-6560


MAYER, BROWN, ROWE & MAW LLP          GIBBS & BRUNS, LLP

by:___s/  Charles Kelley_____          by:___ s/  Michael K. Oldham_____
    Charles Kelley, Esq.                    Michael K. Oldham, Esq.
700 Louisiana, Suite 3400               1100 Louisiana, Suite 5300
Houston, Texas 77002                    Houston, Texas 77002
Tel.  (713) 238-2634                    Tel.  (713) 751-5268
Fax:  (713) 238-4634                    Fax: (713) 750-0903


*Attorneys for Defendants*
*A I M Management Group Inc., INVESCO Funds Group Inc., A I M*
*Advisors, Inc., A I M Distributors, Inc., and INVESCO Distributors,*
*Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document is being automatically served on all known Filing Users in this matter through the Court's Notice of Electronic Filing Service, on this the 5th day of February, 2007, and all parties or counsel who is not a Filing User by United States first class mail, postage prepaid.

　　　　　　/s/Charles S. Kelley
Charles S. Kelley

24567676